(a)     "With respect to approximately 52.49%, 42.12%, 53.38% and 46.01% of the group 1 mortgage loans, group 2 mortgage loans, group 3 mortgage loans and group 4 mortgage loans (in each case, based on the aggregate stated principal balance of the mortgage loans in the related loan group as of the cut-off date), respectively, at the time of origination of the first lien mortgage loan, the originator of the mortgage loan also originated a second lien mortgage loan that will not be included in the trust fund and is not reflected in the loan-to-value ratio tables included in this prospectus supplement. The weighted average loan-to-value ratio of such mortgage loans is approximately 78.97%, 78.27%, 79.02% and 79.49%, with respect to such group 1 mortgage loans, group 2 mortgage loans, group 3 mortgage loans and group 4 mortgage loans, respectively . . . ." INDX 2005-AR5 Pros. Sup. S-11.

(b)     "At origination, all of the Mortgage Loans had a Loan-to-Value Ratio of 100% or less." INDX 2005-AR21 Pros. Sup. S-17.

(c)     In the section of the prospectus supplement entitled "The Mortgage Pool," Merrill Lynch presented tables of statistics about the mortgage loans in the collateral pool. INDX 2005-AR5 Pros. Sup. S-19 through S-33. Each table focused on a certain characteristic of the loans (for example, current principal balance) and divided the loans into categories based on that characteristic (for example, current principal balances of $50,000.01 to $100,000, $100,000.01 to $150,000, $150,000.01 to $200,000, etc.). Each table then presented various data about the loans in each category. One of the tables, entitled "Original Loan-to-Value Ratios for the Group 1 Mortgage Loans," divided the loans in group 1 into eight categories of original LTV (for example, 10.01% to 20%, 30.01% to 40%, 40.01% to 50%, etc.). The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. INDX 2005-AR5 Pros. Sup. S-19.

-2-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1    (d)    "As of the Cut-off Date, the weighted average original Loan-to-Value Ratio of the

2    group 1 mortgage loans was approximately 77.57%." INDX 2005-AR5 Pros. Sup. S-19.

3    (e)    In "The Mortgage Pool" section, Merrill Lynch presented a table entitled "Original

4    Loan-to-Value Ratios for the Group 2 Mortgage Loans." This table divided the mortgage loans in

5    group 2 into seven categories of original LTV (for example, 30.01% to 40%, 40.01% to 50%,

6    50.01% to 60%, etc.). The table made untrue and misleading statements about the number of

7

8    mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate

9    principal balance outstanding in each of these categories. INDX 2005-AR5 Pros. Sup. S-23.

10    (f)    "As of the Cut-off Date, the weighted average original Loan-to-Value Ratio of the

11    group 2 mortgage loans was approximately 76.28%." INDX 2005-AR21 Pros. Sup. S-23.

12    (g)    In "The Mortgage Pool" section, Merrill Lynch presented a table entitled "Original

13

14    Loan-to-Value Ratios for the Group 3 Mortgage Loans." This table divided the mortgage loans in

15    group 3 into six categories of original LTV (for example, 40.01% to 50%, 50.01% to 60%,

16    60.01% to 70%, etc.). The table made untrue and misleading statements about the number of

17    mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate

18    principal balance outstanding in each of these categories. INDX 2005-AR5 Pros. Sup. S-27.

19    (h)    "As of the Cut-off Date, the weighted average original Loan-to-Value Ratio of the

20    group 3 mortgage loans was approximately 77.07%." INDX 2005-AR5 Pros. Sup. S-27.

21

22    (i)    In "The Mortgage Pool" section, Merrill Lynch presented a table entitled "Original

23    Loan-to-Value Ratios for the Group 4 Mortgage Loans." This table divided the mortgage loans in

24    group 4 into eight categories of original LTV (for example, 20.01% to 30%, 30.01% to 40%,

25    40.01% to 50%, etc.). The table made untrue and misleading statements about the number of

26    mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate

27    principal balance outstanding in each of these categories. INDX 2005-AR5 Pros. Sup. S-31.

28

-3-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1    (j)    "As of the Cut-off Date, the weighted average original Loan-to-Value Ratio of the

2    group 4 mortgage loans was approximately 77.25%." INDX 2005-AR5 Pros. Sup. S-31.

3    **Item 61.    Details of the results of the AVM analysis:**

| | |
|---|---|
| Number of loans | 1,871 |
| Number of properties on which there was enough information for the model to determine a true market value | 933 |
| Number of loans on which the stated value was 105% or more of the true market value as reported by the model | 440 |
| Aggregate amount by which the stated values of those properties exceeded their true market values as reported by the model | $20,000,069 |
| Number of loans on which the stated value was 95% or less of the true market value as reported by the model | 162 |
| Aggregate amount by which the true market values of those properties exceed their stated values | $9,214,000 |
| Number of loans with LTVs over 100%, as stated by Defendants | 0 |
| Number of loans with LTVs over 100%, as determined by the model | 74 |
| Weighted-average LTV, as stated by Defendants (group 2) | 76.28% |
| Weighted-average LTV, as determined by the model (group 2) | 83.25% |

**Item 87.    Untrue or misleading statements about owner-occupancy of the properties that secured the mortgage loans:**

In the prospectus supplement, Merrill Lynch made the following statements about the

occupancy status of the properties that secured the mortgage loans in the collateral pool of this

securitization.

(a)    In "The Mortgage Pool" section of the prospectus supplement, described in Item

51, Merrill Lynch presented a table entitled "Occupancy Types for the Group 1 Mortgage

Loans." The table divided the mortgage loans in group 1 into the categories "Primary Home,"

"Investment," and "Second Home." The table made untrue and misleading statements about the

number of mortgage loans, the aggregate principal balance outstanding, and the percent of

aggregate principal balance outstanding in each of these categories. INDX 2005-AR5 Pros. Sup.

S-21.

-4-

1

(b)     In the "Occupancy Types for the Group 1 Mortgage Loans" table, Merrill Lynch

2

stated that 89.8% of the group 1 loans were secured by a "Primary Home," 7.69% by an

3

"Investment" property, and 2.52% by a "Second Home." INDX 2005-AR5 Pros. Sup. S-21.

4

(c)     In "The Mortgage Pool" section, Merrill Lynch presented a table entitled

5

"Occupancy Types for the Group 2 Mortgage Loans." The table divided the mortgage loans in

6

group 2 into the categories "Primary Home," "Investment," and "Second Home." The table made

7

untrue and misleading statements about the number of mortgage loans, the aggregate principal

8

balance outstanding, and the percent of aggregate principal balance outstanding in each of these

9

categories. INDX 2005-AR5 Pros. Sup. S-24.

10

(d)     In the "Occupancy Types for the Group 2 Mortgage Loans" table, Merrill Lynch

11

stated that 90.06% of the group 2 mortgage loans were secured by a "Primary Home," 6.32% by

12

an "Investment" property, and 3.62% by a "Second Home." INDX 2005-AR5 Pros. Sup. S-24.

13

(e)     In "The Mortgage Pool" section, Merrill Lynch presented a table entitled

14

"Occupancy Types for the Group 3 Mortgage Loans." The table divided the mortgage loans in

15

group 3 into the categories "Primary Home," "Investment," and "Second Home." The table made

16

untrue and misleading statements about the number of mortgage loans, the aggregate principal

17

balance outstanding, and the percent of aggregate principal balance outstanding in each of these

18

categories. INDX 2005-AR5 Pros. Sup. S-28.

19

(f)     In the "Occupancy Types for the Group 3 Mortgage Loans" table, Merrill Lynch

20

stated that 85.49% of the group 3 mortgage loans, were secured by a "Primary Home," 9.72% by

21

an "Investment" property, and 4.79% by a "Second Home." INDX 2005-AR5 Pros. Sup. S-28.

22

(g)     In "The Mortgage Pool" section, Merrill Lynch presented a table entitled

23

"Occupancy Types for the Group 4 Mortgage Loans." The table divided the mortgage loans in

24

group 4 into the categories "Primary Home," "Investment," and "Second Home." The table made

25

26

27

28

-5-

untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. INDX 2005-AR5 Pros. Sup. S-32.

(h)    In the "Occupancy Types for the Group 4 Mortgage Loans" table, Merrill Lynch stated that 85.97% of the group 4 mortgage loans were secured by a "Primary Home," 9.41% by an "Investment" property, and 4.62% by a "Second Home." INDX 2005-AR5 Pros. Sup. S-32.

**Item 95.    Details of properties that were stated to be owner-occupied, but were not:**

**(a)    Number of loans on which the owner of the property instructed tax authorities to send property tax bills to him or her at a different address:** 99

**(b)    Number of loans on which the owner of the property could have, but did not, designate the property as his or her homestead:** 181

**(c)    Number of loans on which the owner of the property owned three or more properties:** 7

**(d)    Number of loans that went straight from current to foreclosure or ownership by lender:** 1

**(e)    Eliminating duplicates, number of loans about which one or more of statements (a) through (d) is true:** 243

**Item 98.    Untrue or misleading statements about the underwriting standards of the originators of the mortgage loans:**

On pages S-35 through S-37 of the prospectus supplement, Merrill Lynch made statements about the underwriting guidelines of IndyMac Bank, F.S.B. All of those statements are incorporated herein by reference. In particular, Merrill Lynch stated that:

(a)    "Exceptions to these underwriting standards are permitted where compensating factors are present . . . ." INDX 2005-AR5 Pros. Sup. S-36.

(b)    "Underwriting standards are applied by or on behalf of a lender to evaluate the borrower's credit standing and repayment ability, and the value and adequacy of the mortgaged property as collateral." INDX 2005-AR5 Pros. Sup. S-25.

-6-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1      (c)      "Some programs place more emphasis on a borrower's credit standing and

2   repayment ability while others emphasize the value and adequacy of the mortgaged property as

3   collateral. The most comprehensive of the programs emphasize both." INDX 2005-AR5 Pros.

4   Sup. S-25.

**Item 105.**      **Early payment defaults:**

6      **(a)      Number of the mortgage loans that suffered EPDs:** 10

7      **(b)      Percent of the mortgage loans that suffered EPDs:** 0.5%

8      **(c)      Percent of all securitized, non-agency prime (including Alt-A) mortgage loans
           made at the same time as the loans in the collateral pool that experienced
10          EPDs:** 0.18%

11  **Item 106.**      **90+ days delinquencies:**

12     **(a)      Number of the mortgage loans that suffered 90+ days delinquencies:** 345

13     **(b)      Percent of the mortgage loans that suffered 90+ days delinquencies:** 18.4%

14     **(c)      Percent of all securitized, non-agency prime (including Alt-A) mortgage loans
           made at the same time as the loans in the collateral pool that suffered 90+
           days delinquencies:** 16.5%

16  **Item 107.**      **30+ days delinquencies in this securitization:**

17     **(a)      Number of the mortgage loans that were 30+ days delinquent on March 31,
           2010:** 330

19     **(b)      Percent of the mortgage loans that were 30+ days delinquent on March 31,
20          2010:** 17.6%

21     **(c)      Percent of all mortgage loans in the United States that were 30+ days
           delinquent on March 31, 2010:** 14.7%

22  **Item 114.**      **Statements about the ratings of the certificate(s) that the Bank purchased:**

           On pages S-3 and S-77 to S-78 of the prospectus supplement, Merrill Lynch made

25  statements about the ratings assigned to the certificates issued in this securitization. Merrill Lynch

26  stated that the Bank's certificate was rated Aaa by Moody's Investors Service, Inc. and AAA by

Standard & Poor's Rating Services. These were the highest ratings available from these two rating agencies.

Merrill Lynch also stated: "It is a condition to the issuance of the senior certificates . . . that they be rated AAA by Standard & Poor's . . . and Aaa by Moody's Investors Service, Inc. . . . ." INDX 2005-AR5 Pros. Sup. S-77.

**Item 117.** **Summary of loans about which the Defendants made untrue or misleading statements:**

    **(a)** **Number of loans whose LTVs were materially understated: 440**

    **(b)** **Number of loans that suffered EPDs:** 10

    **(c)** **Number of loans in which the properties were stated to be owner-occupied but were not: 243**

    **(d)** **Eliminating duplicates, number of loans about which the Defendants made untrue or misleading statements: 583**

    **(e)** **Eliminating duplicates, percent of loans about which the Defendants made untrue or misleading statements: 31.2%**

1

## SCHEDULE 32 TO THE AMENDED COMPLAINT

2

3    To the extent that this Schedule is incorporated by reference into allegations in the

4    complaint, those allegations are made against Defendant Merrill Lynch.

**Item 43.        Details of trust and certificate(s).**

5

6        **(a)        Dealer that sold the certificate(s) to the Bank**: Merrill Lynch.

7        **(b)        Description of the trust:** IndyMac INDX Mortgage Loan Trust, Mortgage Pass-

8    Through Certificates, Series 2007-FLX6 was a securitization in July 2007 of 1,201 mortgage

9    loans, in two groups. The mortgage loans in the collateral pool of this securitization were

10   originated or acquired by IndyMac Bank, F.S.B. INDX 2007-FLX6 Pros. Sup. S-4.

11       **(c)        Description of the certificate(s) that the Bank purchased:** Merrill Lynch

12   offered and sold to the Bank a senior certificate in this securitization, in class 2-A-1, for which the

13   Bank paid $85,984,138 plus accrued interest on September 17, 2007.

14
       **(d)        Ratings of the certificate(s) when the Bank purchased them:**

15
           Standard & Poor's •   AAA; Moody's •   Aaa.

16

17       **(e)        Current ratings of the certificate(s):**

18           Standard & Poor's •   B-; Moody's •   B2.

19
       **(f)        URL of prospectus supplement for this securitization:** A true copy of the

20
     prospectus supplement for this securitization is available at

21
     http://www.sec.gov/Archives/edgar/data/1090295/000114420407039567/v082442_424b5.htm.

22

23       **(g)        Registration statement pursuant or traceable to which the certificate(s) were**

24   **issued:** Certificates in this trust, including the certificate that the Bank purchased, were issued

25   pursuant or traceable to a registration statement filed by IndyMac MBS, Inc. with the SEC on

26   form S-3 on February 14, 2007. Annexed to the registration statement was a prospectus. The

27

28

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1    prospectus was amended from time to time by prospectus supplements whenever a new series of

2    certificates was issued pursuant or traceable to that registration statement.

3    **Item 51.      Untrue or misleading statements about the LTVs of the mortgage**

4                    **loans:**

5
6    In the prospectus supplement, Merrill Lynch made the following statements about the

7    LTVs of the mortgage loans in the collateral pool of this securitization.

8    (a)      "With respect to approximately 27.31[%] and 30.65% of the group 1 mortgage

9    loans and group 2 mortgage loans, respectively, in each case by aggregate stated principal balance

10   of the mortgage loans in the related loan group as of the cut-off date, at the time of origination of

11   the first lien mortgage loan, the originator of the mortgage loan also originated a second lien

12   mortgage loan that will not be included in the issuing entity and is not reflected in the loan-to-

13   value ratio tables included in this prospectus supplement. The weighted average loan-to-value

14   ratio of such group 1 mortgage loans and group 2 mortgage loans is approximately 75.45% and

15   75.61% respectively . . . ." INDX 2007-FLX6 Pros. Sup. S-31.

16   (b)      "At origination, all of the Mortgage Loans had a Loan-to-Value Ratio of less than

17   or equal to 95%." INDX 2007-FLX6 Pros. Sup. S-40.

18
19   (c)      In "The Mortgage Pool" section of the prospectus supplement, Merrill Lynch

20   presented tables of statistics about the mortgage loans in the collateral pool. INDX 2007-FLX6

21   Pros. Sup. S-42 through S-65. Each table focused on a certain characteristic of the loans (for

22   example, current principal balance) and divided the loans into categories based on that

23   characteristic (for example, range of current mortgage loan principal balances of $50,000.01 to

24   $100,000, $100,100.01 to $150,000, $150,000.01 to $200,000, etc.). Each table then presented

25   various data about the loans in each category. Among these data was the "Weighted Average

26   Original Loan-to-Value Ratio." There were 22 such tables for the loans in group 1. In each table,

-2-

1   the number of categories into which the loans were divided ranged from one to 33. Thus, in "The

2   Mortgage Pool" section, Merrill Lynch made hundreds of statements about the original LTVs of

3   the loans in group 1. INDX 2007-FLX6 Pros. Sup. S-42 to S-49.

4          (d)    "As of the Cut-off Date, the weighted average original Loan-to-Value Ratio of the

5   Group 1 Mortgage Loans was approximately 70.47%." INDX 2007-FLX6 Pros. Sup. S-43.

6

7          (e)    In "The Mortgage Pool" section, Merrill Lynch presented similar tables of

8   statistics about the mortgage loans in group 2. In these tables, Merrill Lynch similarly made

9   hundreds of statements about the original LTVs of the loans in Group 2. INDX 2007-FLX6 S-50

10  to S-57.

11         (f)    "As of the Cut-off Date, the weighted average original Loan-to-Value Ratio of the

12  Group 2 Mortgage Loans was approximately 70.74%." INDX 2007-FLX6 Pros. Sup. S-51.

13

14         (g)    In "The Mortgage Pool" section, Merrill Lynch presented similar tables of

15  statistics about all of the mortgage loans in the collateral pool. In these tables, Merrill Lynch

16  similarly made hundreds of statements about the original LTVs of the loans. INDX 2007-FLX6

17  S-58 to S-65.

18         (h)    "As of the Cut-off Date, the weighted average original Loan-to-Value Ratio of the

19  Mortgage Loans was approximately 70.67%." INDX 2007-FLX6 S-59.

20

21  **Item 61.      Details of the results of the AVM analysis:**

22

| | |
|---|---|
| Number of loans | 1,201 |
| Number of properties on which there was enough information for the model to determine a true market value | 698 |
| Number of loans on which the stated value was 105% or more of the true market value as reported by the model | 563 |
| Aggregate amount by which the stated values of those properties exceeded their true market values as reported by the model | $72,812,969 |
| Number of loans on which the stated value was 95% or less of the true market value as reported by the model | 37 |
| Aggregate amount by which the true market values of those properties exceed their stated values | $6,830,500 |

-3-

| | |
|---|---|
| Number of loans with LTVs over 100%, as stated by Defendants | 0 |
| Number of loans with LTVs over 100%, as determined by the model | 145 |
| Weighted-average LTV, as stated by Defendants | 70.67% |
| Weighted-average LTV, as determined by the model | 87.5% |

**Item 64.       Evidence from subsequent sales of refinanced properties:**

Of the 1,201 mortgage loans in the collateral pool, 1,034 were taken out to refinance, rather than to purchase, properties. For those 1,034 loans, the value (denominator) in the LTV was an appraised value rather than a sale price. Of those 1,034 properties, 63 were subsequently sold for a total of approximately $21,951,038. The total value ascribed to those same properties in the LTV data reported in the prospectus supplements and other documents sent to the Bank was $36,508,000. Thus, those properties were sold for 60.1% of the value ascribed to them, a difference of 39.9%. This difference cannot be accounted for by declines in house prices in the areas in which those properties were located.

**Item 81.       Untrue or misleading statements about compliance with USPAP:**

In the prospectus supplement, Merrill Lynch made the following statement about the appraisals of all of the properties that secured the mortgage loans in the collateral pool of this securitization: "[A]n appraisal is generally made of the subject property in accordance with the Uniform Standards of Profession [sic] Appraisal Practice." INDX 2007-FLX6 Pros. Sup. S-69.

**Item 87.       Untrue or misleading statements about owner-occupancy of the properties that secured the mortgage loans:**

In the prospectus supplement, Merrill Lynch made the following statements about the occupancy status of the properties that secured the mortgage loans in the collateral pool of this securitization.

(a)       In "The Mortgage Pool" section of the prospectus supplement, described in Item 51, Merrill Lynch presented a table entitled "Occupancy Types for the Group 1 Mortgage Loans." The table divided the mortgage loans in group 1 into the categories "Primary Home,"

-4-

1   "Investment," and "Secondary Home." The table made untrue and misleading statements about

2   the number of mortgage loans, the aggregate principal balance outstanding, and the percent of

3   aggregate principal balance outstanding in each of these categories. INDX 2007-FLX6 Pros. Sup.

4   S-46.

5

6       (b)     In the "Occupancy Types for the Group 1 Mortgage Loans" table, Merrill Lynch

7   stated that 86% of the group 1 mortgage loans were secured by a "Primary Home," 12.7% by an

8   "Investment" property, and 1.3% by a "Secondary Home." INDX 2007-FLX6 Pros. Sup. S-46.

9       (c)     In "The Mortgage Pool" section, Merrill Lynch presented a table entitled

10  "Occupancy Types for the Group 2 Mortgage Loans." This table divided the mortgage loans in

11  group 2 into the categories "Primary Home," "Investment," and "Secondary Home." The table

12  made untrue and misleading statements about the number of mortgage loans, the aggregate

13  principal balance outstanding, and the percent of aggregate principal balance outstanding in each

14  of these categories. INDX 2007-FLX6 Pros. Sup. S-54.

15

16      (d)     In the "Occupancy Types for the Group 2 Mortgage Loans" table, Merrill Lynch

17  stated that 96.64% of the group 2 mortgage loans were secured by a "Primary Home," 2.11% by

18  an "Investment" property, and 1.25% by a "Secondary Home." INDX 2007-FLX6 Pros. Sup. S-

19  54.

20

21      (e)     In "The Mortgage Pool" section, Merrill Lynch presented a table entitled

22  "Occupancy Types for the Mortgage Loans." The table divided all of the mortgage loans in the

23  collateral pool into the categories "Primary Home," "Investment," and "Secondary Home." The

24  table made untrue and misleading statements about the number of mortgage loans, the aggregate

25  principal balance outstanding, and the percent of aggregate principal balance outstanding in each

26  of these categories. INDX 2007-FLX6 Pros. Sup. S-62.

27

28

-5-

1    (f)    In the "Occupancy Types for the Mortgage Loans" table, Merrill Lynch stated that

2    94.01% of the mortgage loans were secured by a "Primary Home," 4.73% by an "Investment"

3    property, and 1.26% by a "Secondary Home." INDX 2007-FLX6 Pros. Sup. S-62.

**Item 95.    Details of properties that were stated to be owner-occupied, but were not:**

    **(a)    Number of loans on which the owner of the property instructed tax authorities to send property tax bills to him or her at a different address: 76**

    **(b)    Number of loans on which the owner of the property could have, but did not, designate the property as his or her homestead: 165**

    **(c)    Number of loans on which the owner of the property owned three or more properties: 24**

    **(d)    Eliminating duplicates, number of loans about which one or more of statements (a) through (c) is true: 229**

**Item 98.    Untrue or misleading statements about the underwriting standards of the originators of the mortgage loans:**

On pages S-68 through S-71 of the prospectus supplement, Merrill Lynch made

statements about the underwriting guidelines of IndyMac Bank, F.S.B. All of those statements are

incorporated herein by reference. In particular, Merrill Lynch stated that:

    (a)    "Mortgage loans that do not meet IndyMac Bank's guidelines may be manually re-

underwritten and approved under an exception to those underwriting guidelines." INDX 2007-

FLX6 Pros. Sup. S-69.

    (b)    "[E]xceptions to underwriting standards are permitted in situations in which

compensating factors exist." INDX 2007-FLX6 Pros. Sup. S-70.

    (c)    "Underwriting standards are applied by or on behalf of a lender to evaluate the

borrower's credit standing and repayment ability, and the value and adequacy of the mortgaged

property as collateral." INDX 2005-FLX6 Pros. Sup. S-36.

    (d)    "Some programs place more emphasis on a borrower's credit standing and

repayment ability while others emphasize the value and adequacy of the mortgaged property as

-6-

collateral. The most comprehensive of the programs emphasize both." INDX 2005-FLX6 Pros.

Sup. S-36.

**Item 105.**      **Early payment defaults:**

    **(a)**      **Number of the mortgage loans that suffered EPDs:** 8

    **(b)**      **Percent of the mortgage loans that suffered EPDs:** 0.7%

    **(c)**      **Percent of all securitized, non-agency prime (including Alt-A) mortgage loans made at the same time as the loans in the collateral pool that experienced EPDs:** 0.83%

**Item 106.**      **90+ days delinquencies:**

    **(a)**      **Number of the mortgage loans that suffered 90+ days delinquencies:** 423

    **(b)**      **Percent of the mortgage loans that suffered 90+ days delinquencies:** 35.2%

    **(c)**      **Percent of all securitized, non-agency prime (including Alt-A) mortgage loans made at the same time as the loans in the collateral pool that suffered 90+ days delinquencies:** 33.9%

**Item 107.**      **30+ days delinquencies in this securitization:**

    **(a)**      **Number of the mortgage loans that were 30+ days delinquent on March 31, 2010:** 427

    **(b)**      **Percent of the mortgage loans that were 30+ days delinquent on March 31, 2010:** 35.6%

    **(c)**      **Percent of all mortgage loans in the United States that were 30+ days delinquent on March 31, 2010:** 14.7%

**Item 114.**      **Statements about the ratings of the certificate(s) that the Bank purchased:**

On pages S-9 and S-131 to S-132 of the prospectus supplement, Merrill Lynch made statements about the ratings assigned to the certificates issued in this securitization. Merrill Lynch stated that the Bank's certificate was rated Aaa by Moody's Investors Service, Inc. and AAA by Standard & Poor's Rating Services. These were the highest ratings available from these two rating agencies.

Merrill Lynch also stated: "It is a condition to the issuance of the Offered Certificates that they be assigned ratings not lower than [AAA] by S&P and [Aaa] by Moody's." INDX 2007-FLX6 Pros. Sup. S-131.

**Item 117.    Summary of loans about which the Defendants made untrue or misleading statements:**

    (a)    **Number of loans whose LTVs were materially understated:** 563

    (b)    **Number of loans that suffered EPDs:** 8

    (c)    **Number of loans in which the properties were stated to be owner-occupied but were not:** 229

    (d)    **Eliminating duplicates, number of loans about which the Defendants made untrue or misleading statements:** 663

    (e)    **Eliminating duplicates, percent of loans about which the Defendants made untrue or misleading statements:** 55.2%

1

**SCHEDULE 33 TO THE AMENDED COMPLAINT**

2

3      To the extent that this Schedule is incorporated by reference into allegations in the

complaint, those allegations are made against Defendant Merrill Lynch.

4

**Item 43.        Details of trust and certificate(s).**

5

6      **(a)        Dealer that sold the certificate(s) to the Bank:** Merrill Lynch.

7      **(b)        Description of the trust:** IndyMac INDX Mortgage Loan Trust, Mortgage Pass-

8      Through Certificates, Series 2007-FLX5 was a securitization in June 2007 of 1,337 mortgage

9      loans, in two groups. The mortgage loans in the collateral pool of this securitization were

10     originated or acquired by IndyMac Bank, F.S.B. INDX 2007-FLX5 Pros. Sup. S-6.

11     **(c)        Description of the certificate(s) that the Bank purchased:** Merrill

12     Lynch offered and sold to the Bank a senior certificate in this securitization, in class 2-A-1, for

13     which the Bank paid $118,626,259 plus accrued interest on September 13, 2007.

14

15     **(d)        Ratings of the certificate(s) when the Bank purchased them:**

16          Standard & Poor's • AAA; Moody's • Aaa.

17     **(e)        Current ratings of the certificate(s):**

18          Standard & Poor's • AA-; Moody's • B1.

19

20     **(f)        URL of prospectus supplement for this securitization:** A true copy of the

prospectus supplement for this securitization is available at

21

22     http://www.sec.gov/Archives/edgar/data/1090295/000089109207002691/e27537_424b5.txt.

23     **(g)        Registration statement pursuant or traceable to which the certificate(s) were**

24     **issued:** Certificates in this trust, including the certificate that the Bank purchased, were issued

25     pursuant or traceable to a registration statement filed by IndyMac MBS, Inc. with the SEC on

26     form S-3 on February 14, 2007. Annexed to the registration statement was a prospectus. The

27

28

---

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche,* 497839)

prospectus was amended from time to time by prospectus supplements whenever a new series of certificates was issued pursuant or traceable to that registration statement.

**Item 51.        Untrue or misleading statements about the LTVs of the mortgage loans:**

In the prospectus supplement, Merrill Lynch made the following statements about the LTVs of the mortgage loans in the collateral pool of this securitization.

(a)        As of the cut-off date, the mortgage loans in loan group 1 had a weighted-average original LTV of 72.57%. INDX 2007-FLX5 Pros. Sup. S-7.

(b)        As of the cut-off date, the mortgage loans in loan group 2 had a weighted-average original LTV of 70.69%. INDX 2007-FLX5 Pros. Sup. S-8.

(c)        As of the cut-off date, all of the mortgage loans in the collateral pool had a weighted-average original LTV of 71.12%. INDX 2007-FLX5 Pros. Sup. S-8.

(d)        "With respect to approximately 39.04% and 26.13% of the group 1 mortgage loans and group 2 mortgage loans, respectively, in each case by aggregate stated principal balance of the mortgage loans in the related loan group as of the cut-off date, at the time of origination of the first lien mortgage loan, the originator of the mortgage loan also originated a second lien mortgage loan that will not be included in the issuing entity and is not reflected in the loan-to-value ratio tables included in this prospectus supplement. The weighted average loan-to-value ratio of such group 1 mortgage loans and group 2 mortgage loans is approximately 77.71% and 75.63% respectively . . . ." INDX 2007-FLX5 Pros. Sup. S-31 to S-32.

(e)        "At origination, all of the Mortgage Loans had a Loan-to-Value Ratio of less than or equal to 95%." INDX 2007-FLX5 Pros. Sup. S-40.

(f)        In the section of the prospectus supplement entitled "The Mortgage Pool," Merrill Lynch presented tables of statistics about the mortgage loans in the collateral pool. INDX 2007-

-2-

1   FLX5 Pros. Sup. S-42 through S-65. Each table focused on a certain characteristic of the loans

2   (for example, current principal balance) and divided the loans into categories based on that

3   characteristic (for example current principal balances of $50,000.01 to $100,000, $100,000.01 to

4   $150,000, $150,000.01 to $200,000, etc.). Each table then presented various data about the loans

5   in each category. Among these data was the "Weighted Average Original Loan-to-Value Ratio."

6   There were 23 such tables for the mortgage loans in loan group 1. In each table, the number of

7   categories into which the loans were divided ranged from one to 33. Thus, in "The Mortgage

8   Pool" section, Merrill Lynch made hundreds of statements about the original LTVs of the loans in

9   loan group 1. INDX 2007-FLX5 Pros. Sup. S-42 to S-49.

10          (g)     "As of the Cut-off Date, the weighted average original Loan-to-Value Ratio of the

11  Group 1 Mortgage Loans was approximately 72.57%." INDX 2007-FLX5 Pros. Sup. S-43.

12          (h)     In "The Mortgage Pool" section, Merrill Lynch presented similar tables of

13  statistics about the mortgage loans in loan group 2. In these tables, Merrill Lynch similarly made

14  hundreds of statements about the original LTVs of the loans in loan group 2. INDX 2007-FLX5

15  Pros. Sup. S-50 to S-57.

16          (i)     "As of the Cut-off Date, the weighted average original Loan-to-Value Ratio of the

17  Group 2 Mortgage Loans was approximately 70.69%." INDX 2007-FLX5 Pros. Sup. S-51.

18          (j)     In "The Mortgage Pool" section, Merrill Lynch presented similar tables of

19  statistics about all of the mortgage loans in the collateral pool. In these tables, Merrill Lynch

20  similarly made hundreds of statements about the LTVs of the aggregate loans. INDX 2007-FLX5

21  Pros. Sup. S-58 to S-65.

22          (k)     "As of the Cut-off Date, the weighted average original Loan-to-Value Ratio of the

23  Mortgage Loans was approximately 71.12%." INDX 2007-FLX5 Pros. Sup. S-59.

-3-

**Item 61.**     **Details of the results of the AVM analysis:**

| | |
|---|---|
| Number of loans | 1,337 |
| Number of properties on which there was enough information for the model to determine a true market value | 790 |
| Number of loans on which the stated value was 105% or more of the true market value as reported by the model | 635 |
| Aggregate amount by which the stated values of those properties exceeded their true market values as reported by the model | $79,443,300 |
| Number of loans on which the stated value was 95% or less of the true market value as reported by the model | 48 |
| Aggregate amount by which the true market values of those properties exceed their stated values | $4,662,000 |
| Number of loans with LTVs over 100%, as stated by Defendants | 0 |
| Number of loans with LTVs over 100%, as determined by the model | 159 |
| Weighted-average LTV, as stated by Defendants | 71.12% |
| Weighted-average LTV, as determined by the model | 88.5% |

**Item 64.**     **Evidence from subsequent sales of refinanced properties:**

Of the 1,337 mortgage loans in the collateral pool, 1,179 were taken out to refinance, rather than to purchase, properties. For those 1,179 loans, the value (denominator) in the LTV was an appraised value rather than a sale price. Of those 1,179 properties, 70 were subsequently sold for a total of approximately $20,992,064. The total value ascribed to those same properties in the LTV data reported in the prospectus supplements and other documents sent to the Bank was $38,700,600. Thus, those properties were sold for 54.2% of the value ascribed to them, a difference of 45.8%. This difference cannot be accounted for by declines in house prices in the areas in which those properties were located.

**Item 81.**     **Untrue or misleading statements about compliance with USPAP:**

In the prospectus supplement, Merrill Lynch made the following statement about the appraisals of all of the properties that secured the mortgage loans in the collateral pool of this securitization: "[A]n appraisal is generally made of the subject property in accordance with the Uniform Standards of Profession [sic] Appraisal Practice." INDX 2007-FLX5 Pros. Sup. S-69.

**Item 87.       Untrue or misleading statements about owner-occupancy of the properties that secured the mortgage loans:**

In the prospectus supplement, Merrill Lynch made the following statements about the occupancy status of the properties that secured the mortgage loans in the collateral pool of this securitization.

(a)       In "The Mortgage Pool" section of the prospectus supplement, described in Item 51, Merrill Lynch presented a table entitled "Occupancy Types for the Group 1 Mortgage Loans." The table divided the mortgage loans in loan group 1 into the categories "Primary Home," "Investment," and "Secondary Home." The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories.. INDX 2007-FLX5 Pros. Sup. S-46.

(b)       In the "Occupancy Types for the Group 1 Mortgage Loans" table, Merrill Lynch stated that 83.45% of the mortgage loans in loan group 1were secured by a "Primary Home," 13.88% by an "Investment" property, and 2.67% by a "Secondary Home." INDX 2007-FLX5 Pros. Sup. S-46.

(c)       In "The Mortgage Pool" section, Merrill Lynch also presented a table entitled "Occupancy Types for the Group 2 Mortgage Loans." The table divided the mortgage loans in loan group 2 into the categories "Primary Home," "Investment," and "Secondary Home." The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. INDX 2007-FLX5 Pros. Sup. S-54.

(d)       In the "Occupancy Types for the Group 2 Mortgage Loans" table, Merrill Lynch stated that 96.88% of the mortgage loans in loan group 2 were secured by a "Primary Home,"

-5-

1.98% by an "Investment" property, and 1.14% by a "Secondary Home." INDX 2007-FLX5 Pros. Sup. S-54.

     (e)    In "The Mortgage Pool" section Merrill Lynch also presented a table entitled "Occupancy Types for the Mortgage Loans." The table divided all of the mortgage loans in the collateral pool into the categories "Primary Home," "Investment," and "Secondary Home." The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. INDX 2007-FLX5 Pros. Sup. S-62.

     (f)    In the "Occupancy Types for the Mortgage Loans" table, Merrill Lynch stated that 93.83% of the mortgage loans were secured by a "Primary Home," 4.68% by an "Investment" property, and 1.49% by a "Secondary Home." INDX 2007-FLX5 Pros. Sup. S-62.

**Item 95.**    **Details of properties that were stated to be owner-occupied, but were not:**

    **(a)**    **Number of loans on which the owner of the property instructed tax authorities to send property tax bills to him or her at a different address: 84**

    **(b)**    **Number of loans on which the owner of the property could have, but did not, designate the property as his or her homestead: 172**

    **(c)**    **Number of loans on which the owner of the property owned three or more properties: 20**

    **(d)**    **Number of loans that went straight from current to foreclosure or ownership by lender: 1**

    **(e)**    **Eliminating duplicates, number of loans about which one or more of statements (a) through (d) is true: 241**

**Item 98.**    **Untrue or misleading statements about the underwriting standards of the originators of the mortgage loans:**

On pages S-68 through S-71 of the prospectus supplement, Merrill Lynch made statements about the underwriting guidelines of IndyMac Bank, F.S.B. In particular, Merrill Lynch stated that:

-6-

(a)     "Mortgage loans that do not meet IndyMac Bank's guidelines may be manually re-underwritten and approved under an exception to those underwriting guidelines." INDX 2007-FLX5 Pros. Sup. S-69.

(b)     ."[E]xceptions to underwriting standards are permitted in situations in which compensating factors exist." INDX 2007-FLX5 Pros. Sup. S-70.

(c)     "Underwriting standards are applied by or on behalf of a lender to evaluate the borrower's credit standing and repayment ability, and the value and adequacy of the mortgaged property as collateral." INDX 2005-FLX5 Pros. Sup. S-36.

(d)     "Some programs place more emphasis on a borrower's credit standing and repayment ability while others emphasize the value and adequacy of the mortgaged property as collateral. The most comprehensive of the programs emphasize both." INDX 2005-FLX5 Pros. Sup. S-36.

**Item 105.     Early payment defaults:**

(a)     **Number of the mortgage loans that suffered EPDs: 12**

(b)     **Percent of the mortgage loans that suffered EPDs: 0.9%**

(c)     **Percent of all securitized, non-agency prime (including Alt-A) mortgage loans made at the same time as the loans in the collateral pool that experienced EPDs: 0.83%**

**Item 106.     90+ days delinquencies:**

(a)     **Number of the mortgage loans that suffered 90+ days delinquencies: 455**

(b)     **Percent of the mortgage loans that suffered 90+ days delinquencies: 34.0%**

(c)     **Percent of all securitized, non-agency prime (including Alt-A) mortgage loans made at the same time as the loans in the collateral pool that suffered 90+ days delinquencies: 33.9%**

**Item 107.     30+ days delinquencies in this securitization:**

(a)     **Number of the mortgage loans that were 30+ days delinquent on March 31, 2010: 478**

-7-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

(b)    **Percent of the mortgage loans that were 30+ days delinquent on March 31, 2010:** 35.8%

(c)    **Percent of all mortgage loans in the United States that were 30+ days delinquent on March 31, 2010:** 14.7%

**Item 114.**    **Statements about the ratings of the certificate(s) that the Bank purchased:**

On pages S-10 and S-131 to S-132 of the prospectus supplement, Merrill Lynch made statements about the ratings assigned to the certificates issued in this securitization. Merrill Lynch stated that the Bank's certificate was rated Aaa by Moody's Investors Service, Inc. and AAA by Standard & Poor's Rating Services. These were the highest ratings available from these two rating agencies.

Merrill Lynch also stated: "It is a condition to the issuance of the Offered Certificates that they be assigned ratings not lower than [AAA] by S&P and [Aaa] by Moody's." INDX 2007-FLX5 Pros. Sup. S-131.

**Item 117.**    **Summary of loans about which the Defendants made untrue or misleading statements:**

(a)    **Number of loans whose LTVs were materially understated:** 635

(b)    **Number of loans that suffered EPDs:** 12

(c)    **Number of loans in which the properties were stated to be owner-occupied but were not:** 241

(d)    **Eliminating duplicates, number of loans about which the Defendants made untrue or misleading statements:** 729

(e)    **Eliminating duplicates, percent of loans about which the Defendants made untrue or misleading statements:** 54.5%

1
2
                    **SCHEDULE 34 TO THE AMENDED COMPLAINT**
3
          To the extent that this Schedule is incorporated by reference into allegations in the
4
   complaint, those allegations are made against Defendants WaMu Capital Corp. and Washington
5
   Mutual Mortgage Securities Corp.
6
7  **Item 43.       Details of trust and certificate(s).**
8          **(a)       Dealer that sold the certificate(s) to the Bank:** WaMu Capital Corp.
9          **(b)       Description of the trust:** Washington Mutual Mortgage Pass-Through
10 Certificates, WMALT Series 2005-5 was a securitization in June 2005 of 2,723 mortgage loans,
11 in one group. The mortgage loans in the collateral pool of this securitization were originated or
12 acquired by Washington Mutual Mortgage Securities Corp. WMALT 2005-5 Pros. Sup. S-4 and
13 S-24.
14
15         **(c)       Description of the certificate(s) that the Bank purchased:** WaMu Capital Corp.
16 offered and sold to the Bank a senior certificate in this securitization, in tranche CB-1, for which
17 the Bank paid $154,430,459 plus accrued interest on June 30, 2005.
18         **(d)       Ratings of the certificate(s) when the Bank purchased them:** Standard &
19 Poor's – AAA; Moody's – Aaa.
20         **(e)       Current ratings of the certificate(s):** Standard & Poor's – AAA; Moody's –
21 Caa2.
22
23         **(f)       URL of prospectus supplement for this securitization:**
24 http://www.sec.gov/Archives/edgar/data/314643/000095011705002573/a40038.txt
25
26
27
28

                    SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1   **Item 51.       Untrue or misleading statements about the LTVs of the mortgage loans:**

2           In the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage

3   Securities Corp. made the following statements about the LTVs of the mortgage loans in the

4   collateral pool of this securitization.

5           (a)      In Appendix B of the prospectus supplement, WaMu Capital Corp. and

6   Washington Mutual Mortgage Securities Corp. presented tables of statistics about the mortgage

7   loans in the collateral pool. WMALT 2005-5 Pros. Sup. S-73 to S-75. Each table focused on a

8   certain characteristic of the loans (for example, original principal balance) and divided the loans

9   into categories based on that characteristic (for example loans with original principal balances of

10  $50,000 or less, $50,001 to $75,000, $75,001 to $100,000, etc.). Each table then presented

11  various data about the mortgage loans in each category. One of the tables, entitled "Current Loan-

12  to-Value Ratios of the Mortgage Loans," divided all of the loans in the collateral pool into eight

13  categories of current LTV (for example, 60% or less, 60.01% to 70%, 70.01% to 75%, etc.). The

14  table made untrue and misleading statements about the number of mortgage loans, the aggregate

15  principal balance outstanding, and the percent of aggregate principal balance outstanding in each

16  of these categories. WMALT 2005-5 Pros. Sup. S-73.

17          (b)      "At origination, the weighted average loan-to-value ratio of the mortgage loans

18  was approximately 71.1%. As of the Cut-Off Date, the weighted average loan-to-value ratio of

19  the mortgage loans was approximately 71.0%." WMALT 2005-5 Pros. Sup. S-73.

20  **Item 61.       Details of the results of the AVM analysis:**

| Number of loans | 2,723 |
|---|---|
| Number of properties on which there was enough information for the model to determine a true market value | 1,127 |
| Number of loans on which the stated value was 105% or more of the true market value as reported by the model | 486 |
| Aggregate amount by which the stated values of those properties exceeded their true market values as reported by the model | $20,345,900 |

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

| Number of loans on which the stated value was 95% or less of the true market value as reported by the model | 243 |
| Aggregate amount by which the true market values of those properties exceed their stated values | $14,202,300 |
| Number of loans with LTVs over 100%, as stated by Defendants | Not Applicable |
| Number of loans with LTVs over 100%, as determined by the model | 54 |
| Weighted-average LTV, as stated by Defendants | 71.1% |
| Weighted-average LTV, as determined by the model | 75.96% |

**Item 70.**    **Undisclosed additional liens:**

    **(a)**    **Minimum number of properties with additional liens:** 698

    **(b)**    **Total reduction in equity from additional liens:** $34,918,343

    **(c)**    **Weighted-average reduction in equity from additional liens:** 83.8%

**Item 87.**    **Untrue or misleading statements about owner-occupancy of the properties that secured the mortgage loans:**

In the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made the following statements about the occupancy status of the properties that secured the mortgage loans in the collateral pool of this securitization.

    (a)    In Appendix B of the prospectus supplement, described in Item 51, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Occupancy Status of the Mortgage Loans." This table divided all of the mortgage loans in the collateral pool into the categories "Owner Occupied," "Non-Owner Occupied," and "Owner Occupied–2nd Home." The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2005-5 Pros. Sup. S-75.

    (b)    In the "Occupancy Status of the Mortgage Loans" table, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that 89.19% of the mortgage loans in the collateral pool were secured by an "Owner Occupied" residence, 8.51% by a "Non-Owner

Occupied" property, and 2.3% by an "Owner Occupied – 2nd Home." WMALT 2005-5 Pros.

Sup. S-75.

**Item 95.** **Details of properties that were stated to be owner-occupied, but were not:**

    **(a)** **Number of loans on which the owner of the property instructed tax authorities to send property tax bills to him or her at a different address: 258**

    **(b)** **Number of loans on which the owner of the property could have, but did not, designate the property as his or her homestead: 303**

    **(c)** **Number of loans on which the owner of the property owned three or more properties: 21**

    **(d)** **Eliminating duplicates, number of loans about which one or more of statements (a) through (c) is true: 483**

**Item 98.** **Untrue or misleading statements about the underwriting standards of the originators of the mortgage loans:**

On pages 17 through 18 of the prospectus, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made statements about the underwriting guidelines applied in the origination or acquisition of all of the mortgage loans in the collateral pool. All of those statements are incorporated herein by reference. In particular, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that:

    (a) "The Company's underwriting standards are intended to evaluate the prospective Mortgagor's credit standing and repayment ability . . . ." WMALT 2005-5 Pros. 18.

**Item 105.** **Early payment defaults:**

    **(a)** **Number of the mortgage loans that suffered EPDs: 7**

    **(b)** **Percent of the mortgage loans that suffered EPDs: 0.3%**

    **(c)** **Percent of all securitized, non-agency prime (including Alt-A) mortgage loans made at the same time as the loans in the collateral pool that experienced EPDs: 0.18%**

**Item 114.**     **Statements about the ratings of the certificate(s) that the Bank purchased:**

On pages S-10, S-26, and S-69 to S-70 of the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made statements about the ratings assigned to the certificates issued in this securitization. WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that the Bank's certificate was rated Aaa by Moody's Investors Service, Inc. and AAA by Standard & Poor's Rating Services. These were the highest ratings available from these two rating agencies.

WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. also stated that: "The offered certificates are required to receive the ratings from Standard & Poor's Ratings Services . . . and Moody's Investors Service, Inc. indicated . . . in this prospectus supplement." WMALT 2005-5 Pros. Sup. S-10.

WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp also stated that : "The offered certificates will not be issued unless they receive the ratings from Standard & Poor's Ratings Services . . . and Moody's Investors Service, Inc. (' Moody's') indicated . . . in this prospectus supplement." WMALT 2005-5 Pros. Sup. S-26.

WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. also stated that: "It is a condition to the issuance of the offered certificates that they receive [the] ratings [AAA] from S&P and [Aaa from] Moody's . . . ." WMALT 2005-5 Pros. Sup. S. 69.

**Item 117.**     **Summary of loans about which the Defendants made untrue or misleading statements:**

(a)     **Number of loans whose LTVs were materially understated: 486**

(b)     **Number of loans in which the owner's equity was reduced by 5% or more by undisclosed additional liens: 698**

(c)     **Number of loans that suffered EPDs: 7**

-5-

1

2

(d)     Number of loans in which the properties were stated to be owner-occupied but were not: 483

3

(e)     Eliminating duplicates, number of loans about which the Defendants made untrue or misleading statements: 1,253

4

5

(f)     Eliminating duplicates, percent of loans about which the Defendants made untrue or misleading statements: 46.0%

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

## SCHEDULE 35 TO THE AMENDED COMPLAINT

To the extent that this Schedule is incorporated by reference into allegations in the complaint, those allegations are made against Defendants WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp.

**Item 43.**      **Details of trust and certificate(s).**

    **(a)**      **Dealer that sold the certificate(s) to the Bank:** WaMu Capital Corp.

    **(b)**      **Description of the trust:** Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2005-8 was a securitization in September 2005 of 2,713 mortgage loans, in four groups. The mortgage loans in the collateral pool of this securitization were originated or acquired by Washington Mutual Mortgage Securities Corp. WMALT 2005-8 Pros. Sup. S-4 and S-25.

    **(c)**      **Description of the certificate(s) that the Bank purchased:** WaMu Capital Corp. offered and sold to the Bank a senior certificate in this securitization, in tranche 2-CB-3, for which the Bank paid $160,000,000 plus accrued interest on September 30, 2005.

    **(d)**      **Ratings of the certificate(s) when the Bank purchased them:** Standard & Poor's – AAA; Moody's – Aaa.

    **(e)**      **Current ratings of the certificate(s):** Standard & Poor's – A; Moody's –Ca.

    **(f)**      **URL of prospectus supplement for this securitization:** http://www.sec.gov/Archives/edgar/data/314643/000095011705003813/a40575.txt

**Item 51.**      **Untrue or misleading statements about the LTVs of the mortgage loans:**

In the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made the following statements about the LTVs of the mortgage loans in the collateral pool of this securitization.

1     (a)    In Appendix B of the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented tables of statistics about the mortgage loans in the collateral pool. WMALT 2005-8 Pros. Sup. S-84 to S-91. Each table focused on a certain characteristic of the loans (for example, original principal balance) and divided the mortgage loans into categories based on that characteristic (for example loans with original principal balances of $350,001 to $400,000, $400,001 to $450,000, $450,001 to $500,000, etc.). Each table then presented various data about the mortgage loans in each category. One of the tables, entitled "Current Loan-to-Value Ratios of the Group 1 Loans," divided the mortgage loans in group 1 into six categories of current LTV (for example, 60% or less, 60.01% to 70%, 70.01% to 75%, etc.). The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2005-8 Pros. Sup. S-84.

     (b)    "At origination, the weighted average loan-to-value ratio of the group 1 loans was approximately 70.8%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 1 loans was approximately 70.7%." WMALT 2005-8 Pros. Sup. S-84.

     (c)    In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Current Loan-to-Value Ratios of the Group 2 Loans." This table divided the mortgage loans in group 2 into seven categories of current LTV (for example, 60% or less, 60.01% to 70%, 70.01% to 75%, etc.). The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2005-8 Pros. Sup. S-86.

-2-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1

2     (d)    "At origination, the weighted average loan-to-value ratio of the group 2 loans was

3   approximately 69.2%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the

4   group 2 loans was approximately 69.1%." WMALT 2005-8 Pros. Sup. S-86.

5     (e)    In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities

6   Corp. presented a table entitled "Current Loan-to-Value Ratios of the Group 3 Loans." This table

7   divided the mortgage loans in group 3 into eight categories of current LTV (for example, 60% or

8   less, 60.01% to 70%, 70.01% to 75%, etc.). The table made untrue and misleading statements

9   about the number of mortgage loans, the aggregate principal balance outstanding, and the percent

10  of aggregate principal balance outstanding in each of these categories. WMALT 2005-8 Pros.

11  Sup. S-88.

12

13    (f)    "At origination, the weighted average loan-to-value ratio of the group 3 loans was

14  approximately 75.4%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the

15  group 3 loans was approximately 75.3%." WMALT 2005-8 Pros. Sup. S-88.

16    (g)    In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities

17  Corp. presented a table entitled "Current Loan-to-Value Ratios of the Group 4 Loans." This table

18  divided the mortgage loans in group 4 into four categories of current LTV (for example, 60% or

19  less, 60.01% to 70%, 70.01% to 75%, etc.). The table made untrue and misleading statements

20  about the number of mortgage loans, the aggregate principal balance outstanding, and the percent

21  of aggregate principal balance outstanding in each of these categories. WMALT 2005-8 Pros.

22  Sup. S-90.

23

24    (h)    "At origination, the weighted average loan-to-value ratio of the group 4 loans was

25  approximately 62.7%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the

26  group 4 loans was approximately 61.9%." WMALT 2005-8 Pros. Sup. S-90.

27

28

-3-

**Item 61.      Details of the results of the AVM analysis:**

| | |
|---|---|
| Number of loans | 2,713 |
| Number of properties on which there was enough information for the model to determine a true market value | 1,111 |
| Number of loans on which the stated value was 105% or more of the true market value as reported by the model | 567 |
| Aggregate amount by which the stated values of those properties exceeded their true market values as reported by the model | $43,415,480 |
| Number of loans on which the stated value was 95% or less of the true market value as reported by the model | 194 |
| Aggregate amount by which the true market values of those properties exceed their stated values | $18,006,600 |
| Number of loans with LTVs over 100%, as stated by Defendants | Not Applicable |
| Number of loans with LTVs over 100%, as determined by the model | 73 |
| Weighted-average LTV, as stated by Defendants (group 2) | 69.2% |
| Weighted-average LTV, as determined by the model (group 2) | 73.9% |

**Item 70.      Undisclosed additional liens:**

    **(a)      Minimum number of properties with additional liens:** 127

    **(b)      Total reduction in equity from additional liens:** $12,023,684

    **(c)      Weighted-average reduction in equity from additional liens:** 61.7%

**Item 87.      Untrue or misleading statements about owner-occupancy of the properties that secured the mortgage loans:**

In the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made the following statements about the occupancy status of the properties that secured the mortgage loans in the collateral pool of this securitization.

    (a)      In Appendix B of the prospectus supplement, described in Item 51, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Occupancy Status of the Group 1 Loans." This table divided the mortgage loans in group 1 into the categories "Owner Occupied," "Non-Owner Occupied," and "Owner Occupied–2nd Home." The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2005-8 Pros. Sup. S-85.

-4-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1        (b)      In the "Occupancy Status of the Group 1 Loans" table, WaMu Capital Corp. and

2   Washington Mutual Mortgage Securities Corp. stated that 93.15% of the mortgage loans in group

3   1 were secured by an "Owner Occupied" residence, 4.03% by a "Non-Owner Occupied"

4   property, and 2.83% by an "Owner Occupied–2nd Home." WMALT 2005-8 Pros. Sup. S-85.

5        (c)      In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities

6   Corp. presented a table entitled "Occupancy Status of the Group 2 Loans." This table divided the

7   mortgage loans in group 2 into the categories "Owner Occupied," "Non-Owner Occupied," and

8   "Owner Occupied–2nd Home." The table made untrue and misleading statements about the

9   number of mortgage loans, the aggregate principal balance outstanding, and the percent of

10  aggregate principal balance outstanding in each of these categories. WMALT 2005-8 Pros. Sup.

11  S-87.

12       (d)      In the "Occupancy Status of the Group 2 Loans" table, WaMu Capital Corp. and

13  Washington Mutual Mortgage Securities Corp. stated that 88.63% of the mortgage loans in group

14  2 were secured by an "Owner Occupied" residence, 8.4% by a "Non-Owner Occupied" property,

15  and 2.97% by an "Owner Occupied–2nd Home." WMALT 2005-8 Pros. Sup. S-87.

16       (e)      In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities

17  Corp. presented a table entitled "Occupancy Status of the Group 3 Loans." This table divided the

18  mortgage loans in group 3 into the categories "Owner Occupied," "Non-Owner Occupied," and

19  "Owner Occupied–2nd Home." The table made untrue and misleading statements about the

20  number of mortgage loans, the aggregate principal balance outstanding, and the percent of

21  aggregate principal balance outstanding in each of these categories. WMALT 2005-8 Pros. Sup.

22  S-89.

23       (f)      In the "Occupancy Status of the Group 3 Loans" table, WaMu Capital Corp. and

24  Washington Mutual Mortgage Securities Corp. stated that 78.01% of the mortgage loans in group

-5-

1    3 were secured by an "Owner Occupied" residence, 16.4% by a "Non-Owner Occupied"

2    property, and 5.59% by an "Owner Occupied–2nd Home." WMALT 2005-8 Pros. Sup. S-89.

3    (g)    In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities

4    Corp. presented a table entitled "Occupancy Status of the Group 4 Loans." This table divided the

5    mortgage loans in group 4 into the categories "Owner Occupied," "Non-Owner Occupied," and

6    "Owner Occupied–2nd Home." The table made untrue and misleading statements about the

7    number of mortgage loans, the aggregate principal balance outstanding, and the percent of

8    aggregate principal balance outstanding in each of these categories. WMALT 2005-8 Pros. Sup.

9    S-91.

10   (h)    In the "Occupancy Status of the Group 4 Loans" table, WaMu Capital Corp. and

11   Washington Mutual Mortgage Securities Corp. stated that 88.35% of the mortgage loans in group

12   4 were secured by an "Owner Occupied" residence, 4.93% by a "Non-Owner Occupied"

13   property, 6.73% by an "Owner Occupied–2nd Home." WMALT 2005-8 Pros. Sup. S-91.

**Item 95.    Details of properties that were stated to be owner-occupied, but were not:**

    **(a)    Number of loans on which the owner of the property instructed tax authorities to send property tax bills to him or her at a different address: 207**

    **(b)    Number of loans on which the owner of the property could have, but did not, designate the property as his or her homestead: 355**

    **(c)    Number of loans on which the owner of the property owned three or more properties: 23**

    **(d)    Eliminating duplicates, number of loans about which one or more of statements (a) through (c) is true: 504**

**Item 98.    Untrue or misleading statements about the underwriting standards of the originators of the mortgage loans:**

On pages 8 and 17 through 18 of the prospectus, WaMu Capital Corp. and Washington

Mutual Mortgage Securities Corp. made statements about the underwriting guidelines applied in

the origination or acquisition of all of the mortgage loans in the collateral pool. All of those

-6-

statements are incorporated herein by reference. In particular, WaMu Capital Corp. and

Washington Mutual Mortgage Securities Corp. stated that:

      (a)     "[Washington Mutual Mortgage Securities Corp.]'s underwriting standards are

intended to evaluate the prospective Mortgagor's credit standing and repayment ability . . . ."

WMALT 2005-8 Pros. 18.

**Item 105.**     **Early payment defaults:**

      **(a)**     **Number of the mortgage loans that suffered EPDs: 14**

      **(b)**     **Percent of the mortgage loans that suffered EPDs: 0.5%**

      **(c)**     **Percent of all securitized, non-agency prime (including Alt-A) mortgage loans made at the same time as the loans in the collateral pool that experienced EPDs: 0.18%**

**Item 107.**     **30+ days delinquencies in this securitization:**

      **(a)**     **Number of the mortgage loans that were 30+ days delinquent on March 31, 2010: 401**

      **(b)**     **Percent of the mortgage loans that were 30+ days delinquent on March 31, 2010: 14.8%**

      **(c)**     **Percent of all mortgage loans in the United States that were 30+ days delinquent on March 31, 2010: 14.7%**

**Item 114.**     **Statements about the ratings of the certificate(s) that the Bank purchased:**

      On pages S-10, S-28, and S-80 of the prospectus supplement, WaMu Capital Corp. and

Washington Mutual Mortgage Securities Corp. made statements about the ratings assigned to the

certificates issued in this securitization. WaMu Capital Corp. and Washington Mutual Mortgage

Securities Corp. stated that the Bank's certificate was rated Aaa by Moody's Investors Service,

Inc. and AAA by Standard & Poor's Rating Services. These were the highest ratings available

from these two rating agencies.

      WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that: "The

offered certificates are required to receive the ratings from Standard & Poor's Ratings Services . .

-7-

. and Moody's Investors Service, Inc. indicated . . . in this prospectus supplement." WMALT 2005-8 Pros. Sup. S-10.

WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. also stated that: "The offered certificates will not be issued unless they receive the ratings from Standard & Poor's Ratings Services . . . and Moody's Investors Service, Inc.('Moody's') indicated . . . in this prospectus supplement." WMALT 2005-8 Pros. Sup. S-28.

WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. also stated: "It is a condition to the issuance of the offered certificates that they receive ratings [of AAA] from S&P and [Aaa from] Moody's . . . ." WMALT 2005-8 Pros. Sup. S. 80.

**Item 117.** **Summary of loans about which the Defendants made untrue or misleading statements:**

    (a)    **Number of loans whose LTVs were materially understated: 567**

    (b)    **Number of loans in which the owner's equity was reduced by 5% or more by undisclosed additional liens: 127**

    (c)    **Number of loans that suffered EPDs: 14**

    (d)    **Number of loans in which the properties were stated to be owner-occupied but were not: 504**

    (e)    **Eliminating duplicates, number of loans about which the Defendants made untrue or misleading statements: 986**

    (f)    **Eliminating duplicates, percent of loans about which the Defendants made untrue or misleading statements: 36.3%**

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

## SCHEDULE 36 TO THE AMENDED COMPLAINT

To the extent that this Schedule is incorporated by reference into allegations in the complaint, those allegations are made against Defendants WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp.

**Item 43.      Details of trust and certificate(s).**

**(a)      Dealer that sold the certificate(s) to the Bank:** WaMu Capital Corp.

**(b)      Description of the trust:** Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2005-AR13 was a securitization in October 2005 of 7,191 mortgage loans, in one group. The mortgage loans in the collateral pool of this securitization were originated or acquired by Washington Mutual Bank and Washington Mutual Bank fsb. WAMU 2005-AR13 Pros. Sup. S-4 and S-34.

**(c)      Description of the certificate(s) that the Bank purchased:** WaMu Capital Corp. offered and sold to the Bank a senior certificate in this securitization, in tranche A-1b3, for which the Bank paid $100,000,000 plus accrued interest on October 25, 2005.

**(d)      Ratings of the certificate(s) when the Bank purchased them:** Standard & Poor's – AAA; Moody's – Aaa.

**(e)      Current ratings of the certificate(s):** Standard & Poor's – AAA; Moody's – Baa1.

**(f)      URL of prospectus supplement for this securitization:**
http://www.sec.gov/Archives/edgar/data/1317069/000095011705004039/a40660.txt

**Item 51.      Untrue or misleading statements about the LTVs of the mortgage loans:**

In the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made the following statements about the LTVs of the mortgage loans in the collateral pool of this securitization.

1      (a)     In Appendix B of the prospectus supplement, WaMu Capital Corp. and

2 Washington Mutual Mortgage Securities Corp. presented tables of statistics about the mortgage

3 loans in the collateral pool. WAMU 2005-AR13 Pros. Sup. S-81 to S-87. Each table focused on a

4 certain characteristic of the loans (for example, original principal balance) and divided the

5 mortgage loans into categories based on that characteristic (for example loans with original

6 principal balances of $50,000 or less, $50,001 to $75,000, $75,001 to $100,000, etc.). Each table

7 then presented various data about the mortgage loans in each category. One of the tables, entitled

8 "Current Loan-to-Value Ratios of the Mortgage Loans," divided all of the loans in the collateral

9 pool into seven categories of current LTV (for example, 60% or less, 60.01% to 70%, 70.01% to

10 75%, etc.). The table made untrue and misleading statements about the number of mortgage

11 loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance

12 outstanding in each of these categories. WAMU 2005-AR13 Pros. Sup. S-83.

13      (b)    "At origination, the weighted average loan-to-value ratio of the Mortgage Loans

14 was approximately 71.9%. As of the Cut-Off Date, the weighted average loan-to-value ratio of

15 the Mortgage Loans was approximately 71.7%." WAMU 2005-AR13 Pros. Sup. S-83.

**Item 61.**    **Details of the results of the AVM analysis:**

| | |
|---|---:|
| Number of loans | 7,191 |
| Number of properties on which there was enough information for the model to determine a true market value | 5,176 |
| Number of loans on which the stated value was 105% or more of the true market value as reported by the model | 2,355 |
| Aggregate amount by which the stated values of those properties exceeded their true market values as reported by the model | $348,504,773 |
| Number of loans on which the stated value was 95% or less of the true market value as reported by the model | 971 |
| Aggregate amount by which the true market values of those properties exceed their stated values | $116,647,705 |
| Number of loans with LTVs over 100%, as stated by Defendants | 0 |
| Number of loans with LTVs over 100%, as determined by the model | 366 |
| Weighted-average LTV, as stated by Defendants | 71.9% |
| Weighted-average LTV, as determined by the model | 81.2% |

-2-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

**Item 70.**     **Undisclosed additional liens:**

    **(a)**     **Minimum number of properties with additional liens:** 1,394

    **(b)**     **Total reduction in equity from additional liens:** $171,893,256

    **(c)**     **Weighted-average reduction in equity from additional liens:** 56.4%

**Item 87.**     **Untrue or misleading statements about owner-occupancy of the properties that secured the mortgage loans:**

In the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made the following statements about the occupancy status of the properties that secured the mortgage loans in the collateral pool of this securitization.

    (a)     In Appendix B of the prospectus supplement, described in Item 51, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Occupancy Status of the Mortgage Loans." This table divided the mortgage loans in the collateral pool into the categories "Owner Occupied," "Non-Owner Occupied," and "Owner Occupied –2nd Home." The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WAMU 2005-AR13 Pros. Sup. S-85.

    (b)     In the "Occupancy Status of the Mortgage Loans" table, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that 95.05% of the mortgage loans in the collateral pool were secured by an "Owner Occupied" residence, 0.45% by a "Non-Owner Occupied" property, and 4.51% by an "Owner Occupied –2nd Home." WAMU 2005-AR13 Pros. Sup. S-85.

**Item 95.**     **Details of properties that were stated to be owner-occupied, but were not:**

    **(a)**     **Number of loans on which the owner of the property instructed tax authorities to send property tax bills to him or her at a different address:** 1,049

-3-

(b)     Number of loans on which the owner of the property could have, but did not, designate the property as his or her homestead: 2,055

(c)     Number of loans on which the owner of the property owned three or more properties: 214

(d)     Eliminating duplicates, number of loans about which one or more of statements (a) through (c) is true: 2,677

**Item 98.**     Untrue or misleading statements about the underwriting standards of the originators of the mortgage loans:

On pages 14 and 28 through 29 of the prospectus, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made statements about the underwriting guidelines applied in the origination or acquisition of all of the mortgage loans in the collateral pool. All of those statements are incorporated herein by reference. In particular, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that:

(a)     "The mortgage loan seller's underwriting standards are intended to evaluate a prospective mortgagor's credit standing and repayment ability . . . ." WAMU 2005-AR13 Pros. 29.

**Item 107.**     30+ days delinquencies in this securitization:

(a)     Number of the mortgage loans that were 30+ days delinquent on March 31, 2010: 1,132

(b)     Percent of the mortgage loans that were 30+ days delinquent on March 31, 2010: 15.7%

(c)     Percent of all mortgage loans in the United States that were 30+ days delinquent on March 31, 2010: 14.7%

**Item 114.**     Statements about the ratings of the certificate(s) that the Bank purchased:

On pages S-16, S-37, and S-78 of the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made statements about the ratings assigned to the certificates issued in this securitization. WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that the Bank's certificate was rated Aaa by Moody's Investors Service,

-4-

1 Inc. and AAA by Standard & Poor's Rating Services. These were the highest ratings available

2 from these two rating agencies.

3      WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that: "The

4 offered certificates are required to receive the ratings from Standard & Poor's Ratings Services . .

5 . and Moody's Investors Service, Inc. ('Moody's') indicated . . .in this prospectus supplement."

6

7 WAMU 2005-AR13 Pros. Sup. S-16.

8      WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. also stated that:

9 "The offered certificates will not be issued unless they receive the ratings from Standard & Poor's

10 Ratings Services . . . and Moody's Investors Service, Inc. ('Moody's') indicated . . . in this

11 prospectus supplement." WAMU 2005-AR13 Pros. Sup. S-37.

12

13      WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. also stated that:

14 "It is a condition to the issuance of the offered certificates that they receive the ratings [AAA]

15 from S&P and [Aaa from] Moody's . . . ." WAMU 2005-AR13 Pros. Sup. S-78.

16 **Item 117.      Summary of loans about which the Defendants made untrue or misleading statements:**

17

18      (a)      **Number of loans whose LTVs were materially understated: 2,355**

19      (b)      **Number of loans in which the owner's equity was reduced by 5% or more by undisclosed additional liens: 1,394**

20

21      (c)      **Number of loans in which the properties were stated to be owner-occupied but were not: 2,677**

22

23      (d)      **Eliminating duplicates, number of loans about which the Defendants made untrue or misleading statements: 4669**

24      (e)      **Eliminating duplicates, percent of loans about which the Defendants made untrue or misleading statements: 64.9%**

25

26

27

28

-5-

**SCHEDULE 37 TO THE AMENDED COMPLAINT**

To the extent that this Schedule is incorporated by reference into allegations in the complaint, those allegations are made against Defendants WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp.

**Item 43.     Details of trust and certificate(s).**

(a)     **Dealer that sold the certificate(s) to the Bank:** WaMu Capital Corp.

(b)     **Description of the trust:** Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2006-1 was a securitization in January 2006 of 3,220 mortgage loans, in five groups. The mortgage loans in the collateral pool of this securitization were originated by GreenPoint Mortgage Funding, Inc., New Century Mortgage Corp., and MortgageIT, Inc. WMALT 2006-1 Pros. Sup. S-5 and S-30.

(c)     **Description of the certificate(s) that the Bank purchased:** WaMu Capital Corp. offered and sold to the Bank a senior certificate in this securitization, in tranche 5-CB-4 for which the Bank paid $184,264,799 plus accrued interest on January 31, 2006.

(d)     **Ratings of the certificate(s) when the Bank purchased them:** Standard & Poor's – AAA; Moody's – Aaa.

(e)     **Current ratings of the certificate(s):** Standard & Poor's – CCC; Moody's – Caa1.

(f)     **URL of prospectus supplement for this securitization:**
http://www.sec.gov/Archives/edgar/data/1317069/000095011706000384/a41199.txt

**Item 51.     Untrue or misleading statements about the LTVs of the mortgage loans:**

In the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made the following statements about the LTVs of the mortgage loans in the collateral pool of this securitization.

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1      (a)     In Appendix B of the prospectus supplement, WaMu Capital Corp. and

2 Washington Mutual Mortgage Securities Corp. presented tables of statistics about the mortgage

3 loans in the collateral pool. WMALT 2006-1 Pros. Sup. S-105 to S-119. Each table focused on a

4 certain characteristic of the loans (for example, original principal balance) and divided the loans

5 into categories based on that characteristic (for example loans with original principal balances of

6 $400,001 to $450,000, $450,001 to $500,000, $550,001 to $600,000, etc.). Each table then

7 presented various data about the mortgage loans in each category. One of the tables, entitled

8 "Current Loan-to-Value Ratios of the Group 1 Loans," divided the mortgage loans in group 1 into

9 four categories of current LTV (for example, 60% or less, 60.01% to 70%, 70.01% to 75%, etc.).

10 The table made untrue and misleading statements about the number of mortgage loans, the

11 aggregate principal balance outstanding, and the percent of aggregate principal balance

12 outstanding in each of these categories. WMALT 2006-1 Pros. Sup. S-105.

13      (b)    "At origination, the weighted average loan-to-value ratio of the group 1 loans was

14 approximately 62.4%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the

15 group 1 loans was approximately 61.8%." WMALT 2006-1 Pros. Sup. S-105.

16      (c)     In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage

17 Securities Corp. presented a table entitled "Current Loan-to-Value Ratios of the Group 2 Loans."

18 This table divided the mortgage loans in group 2 into eight categories of current LTV (for

19 example, 60% or less, 60.01% to 70%, 70.01% to 75%, etc.). The table made untrue and

20 misleading statements about the number of mortgage loans, the aggregate principal balance

21 outstanding, and the percent of aggregate principal balance outstanding in each of these

22 categories. WMALT 2006-1 Pros. Sup. S-108.

-2-

1

     (d)        "At origination, the weighted average loan-to-value ratio of the group 2

2

loans was approximately 78.1%. As of the Cut-Off Date, the weighted average loan-to-value ratio

3

of the group 2 loans was approximately 78.0%." WMALT 2006-1 Pros. Sup. S-108.

4

     (e)        In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage

5

Securities Corp. presented a table entitled "Current Loan-to-Value Ratios of the Group 3 Loans."

6

This table divided the mortgage loans in group 3 into six categories of current LTV (for example,

7

60% or less, 60.01% to 70%, 70.01% to 75%, etc.). The table made untrue and misleading

8

9

statements about the number of mortgage loans, the aggregate principal balance outstanding, and

10

the percent of aggregate principal balance outstanding in each of these categories. WMALT

11

2006-1 Pros. Sup. S-111.

12

     (f)        "At origination, the weighted average loan-to-value ratio of the group 3

13

loans was approximately 71.5%. As of the Cut-Off Date, the weighted average loan-to-value ratio

14

of the group 3 loans was approximately 71.5%." WMALT 2006-1 Pros. Sup. S-111.

15

16

     (g)        In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage

17

Securities Corp. presented a table entitled "Current Loan-to-Value Ratios of the Group 4 Loans."

18

This table divided the mortgage loans in group 4 into eight categories of current LTV (for

19

example, 60% or less, 60.01% to 70%, 70.01% to 75%, etc.). The table made untrue and

20

misleading statements about the number of mortgage loans, the aggregate principal balance

21

outstanding, and the percent of aggregate principal balance outstanding in each of these

22

categories. WMALT 2006-1 Pros. Sup. S-114.

23

24

     (h)        "At origination, the weighted average loan-to-value ratio of the group 4

25

loans was approximately 78.5%. As of the Cut-Off Date, the weighted average loan-to-value ratio

26

of the group 4 loans was approximately 78.4%." WMALT 2006-1 Pros. Sup. S-114.

27

28

-3-

1    (i)    In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage

2 Securities Corp. presented a table entitled "Current Loan-to-Value Ratios of the Group 5 Loans."

3 This table divided the mortgage loans in group 5 into eight categories of current LTV (for

4 example, 60% or less, 60.01% to 70%, 70.01% to 75%, etc.). The table made untrue and

5 misleading statements about the number of mortgage loans, the aggregate principal balance

6 outstanding, and the percent of aggregate principal balance outstanding in each of these

7 categories. WMALT 2006-1 Pros. Sup. S-117.

8

9    (j)    "At origination, the weighted average loan-to-value ratio of the group 5

10 loans was approximately 72.7%. As of the Cut-Off Date, the weighted average loan-to-value ratio

11 of the group 5 loans was approximately 72.5%." WMALT 2006-1 Pros. Sup. S-117.

12 **Item 61.**  **Details of the results of the AVM analysis:**

13

| | |
|---|---:|
| Number of loans | 3,220 |
| Number of properties on which there was enough information for the model to determine a true market value | 1,518 |
| Number of loans on which the stated value was 105% or more of the true market value as reported by the model | 832 |
| Aggregate amount by which the stated values of those properties exceeded their true market values as reported by the model | $56,522,694 |
| Number of loans on which the stated value was 95% or less of the true market value as reported by the model | 269 |
| Aggregate amount by which the true market values of those properties exceed their stated values | $15,157,950 |
| Number of loans with LTVs over 100%, as stated by Defendants | 0 |
| Number of loans with LTVs over 100%, as determined by the model | 157 |
| Weighted-average LTV, as stated by Defendants | 72.7% |
| Weighted-average LTV, as determined by the model | 80.7% |

23 **Item 64.**  **Evidence from subsequent sales of refinanced properties:**

24    Of the 3,220 mortgage loans in the collateral pool, 1,363 were taken out to refinance,

25 rather than to purchase, properties. For those 1,363 loans, the value (denominator) in the LTV

26 was an appraised value rather than a sale price. Of those 1,363 properties, 197 were subsequently

27 sold for a total of approximately $54,891,659. The total value ascribed to those same properties in

-4-

1  the LTV data reported in the prospectus supplements and other documents sent to the Bank was

2  $70,330,222. Thus, those properties were sold for 78.0% of the value ascribed to them, a

3  difference of 22.0%. This difference cannot be accounted for by declines in house prices in the

4  areas in which those properties were located.

5

6  **Item 81.      Untrue or misleading statements about compliance with USPAP:**

7        In the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage

8  Securities Corp. made the following statement about the appraisals of the properties that were

9  originated or acquired by Washington Mutual Bank: "At origination, all appraisals are required to

10 conform to the Uniform Standards of Professional Appraisal Practice adopted by the Appraisal

11 Standards Board of the Appraisal Foundation, and are made on forms acceptable to Fannie Mae

12 and/or Freddie Mac." WMALT 2006-1 Pros. Sup. S-28.

13

14 **Item 87.      Untrue or misleading statements about owner-occupancy of the properties
                  that secured the mortgage loans:**

15       In the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage

16 Securities Corp. made the following statements about the occupancy status of the properties that

17 secured the mortgage loans in the collateral pool of this securitization.

18

19       (a)     In Appendix B of the prospectus supplement, described in Item 51, WaMu Capital

20 Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Occupancy

21 Status of the Group 1 Loans." This table divided the mortgage loans in group 1 into the categories

22 "Owner Occupied," "Non-Owner Occupied," and "Owner Occupied –2nd Home." The table

23 made untrue and misleading statements about the number of mortgage loans, the aggregate

24 principal balance outstanding, and the percent of aggregate principal balance outstanding in each

25 of these categories. WMALT 2006-1 Pros. Sup. S-106.

26

27       (b)     In the "Occupancy Status of the Group 1 Loans" table, WaMu Capital Corp. and

28 Washington Mutual Mortgage Securities Corp. stated that 76.59% of the mortgage loans in group

-5-

1 were secured by an "Owner Occupied" residence, 9.43% by a "Non-Owner Occupied" property, and 13.99% by an "Owner Occupied –2nd Home." WMALT 2006-1 Pros. Sup. S-106.

(c)    In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Occupancy Status of the Group 2 Loans." This table divided the mortgage loans in group 2 into the categories "Non-Owner Occupied" and "Owner Occupied – 2nd Home." The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2006-1 Pros. Sup. S-109.

(d)    In the "Occupancy Status of the Group 2 Loans" table, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that 91.55% of the mortgage loans in group 2 were secured by a "Non-Owner Occupied" property and 8.45% by an "Owner Occupied –2nd Home." WMALT 2006-1 Pros. Sup. S-109.

(e)    In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Occupancy Status of the Group 3 Loans." This table divided the mortgage loans in group 3 into the categories "Owner Occupied," "Non-Owner Occupied," and "Owner Occupied –2nd Home." The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2006-1 Pros. Sup. S-112.

(f)    In the "Occupancy Status of the Group 3 Loans" table, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that 92.87% of the mortgage loans in group 3 were secured by an "Owner Occupied" residence, 3.74% by a "Non-Owner Occupied" property, and 3.39% by an "Owner Occupied –2nd Home." WMALT 2006-1 Pros. Sup. S-112.

-6-

(g)     In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Occupancy Status of the Group 4 Loans." In this table, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that 100% of the mortgage loans in group 4 were secured by an "Owner Occupied" residence. WMALT 2006-1 Pros. Sup. S-116.

(h)     In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Occupancy Status of the Group 5 Loans." This table divided the mortgage loans in group 5 into the categories "Owner Occupied," "Non-Owner Occupied," and "Owner Occupied –2nd Home." The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2006-1 Pros. Sup. S-118.

(i)     In the "Occupancy Status of the Group 5 Loans" table, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that 83.14% of the mortgage loans in group 5 were secured by an "Owner Occupied" residence, 15.49% by a "Non-Owner Occupied" property, and 1.37% by an "Owner Occupied –2nd Home." WMALT 2006-1 Pros. Sup. S-118.

**Item 95.**      **Details of properties that were stated to be owner-occupied, but were not:**

    **(a)**      **Number of loans on which the owner of the property instructed tax authorities to send property tax bills to him or her at a different address: 350**

    **(b)**      **Number of loans on which the owner of the property could have, but did not, designate the property as his or her homestead: 437**

    **(c)**      **Number of loans on which the owner of the property owned three or more properties: 35**

    **(d)**      **Number of loans that went straight from current to foreclosure or ownership by lender: 1**

    **(e)**      **Eliminating duplicates, number of loans about which one or more of statements (a) through (d) is true: 683**

-7-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

**Item 98.** **Untrue or misleading statements about the underwriting standards of the originators of the mortgage loans:**

On pages S-27 through S-30 of the prospectus supplement and 43 through 45 of the prospectus, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made statements about the underwriting guidelines applied in the origination or acquisition of all of the mortgage loans in the collateral pool. All of those statements are incorporated herein by reference. In particular, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that:

(a) "The sponsor's underwriting standards and Washington Mutual Bank's underwriting guidelines generally are intended to evaluate the prospective borrower's credit standing and repayment ability . . . ." WMALT 2006-1 Pros. Sup. S-27.

(b) "Exceptions to the ratio guidelines may be made when compensating factors are present." WMALT 2006-1 Pros. Sup. S-28.

(c) "Exceptions to the underwriting standards described above may be made on a case-by-case basis if compensating factors are present." WMALT 2006-1 Pros. Sup. S-29.

**Item 105.** **Early payment defaults:**

**(a)** **Number of the mortgage loans that suffered EPDs: 21**

**(b)** **Percent of the mortgage loans that suffered EPDs: 0.7%**

**(c)** **Percent of all securitized, non-agency prime (including Alt-A) mortgage loans made at the same time as the loans in the collateral pool that experienced EPDs: 0.44%**

**Item 107.** **30+ days delinquencies in this securitization:**

**(a)** **Number of the mortgage loans that were 30+ days delinquent on March 31, 2010: 861**

**(b)** **Percent of the mortgage loans that were 30+ days delinquent on March 31, 2010: 26.7%**

**(c)** **Percent of all mortgage loans in the United States that were 30+ days delinquent on March 31, 2010: 14.7%**

-8-

**Item 114.      Statements about the ratings of the certificate(s) that the Bank purchased:**

On pages S-14, S-49, and S-99 to S-100 of the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made statements about the ratings assigned to the certificates issued in this securitization. WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that the Bank's certificate was rated Aaa by Moody's Investors Service, Inc. and AAA by Standard & Poor's Rating Services. These were the highest ratings available from these two rating agencies.

WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. also stated: "It is a condition to the issuance of the offered certificates that they receive the . . . ratings [AAA] from Standard & Poor's Ratings Services, . . . and [Aaa from] Moody's Investors Service, Inc. . . . ." WMALT 2006-1 Pros. Sup. S-14 and S-99.

WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. also stated: "The offered certificates will not be issued unless they receive the ratings from Standard & Poor's Ratings Services . . . and Moody's Investors Service, Inc. ('Moody's') indicated . . . in this prospectus supplement." WMALT 2006-1 Pros. Sup. S-49.

**Item 117.      Summary of loans about which the Defendants made untrue or misleading statements:**

(a)      **Number of loans whose LTVs were materially understated:** 832

(b)      **Number of loans that suffered EPDs:** 21

(c)      **Number of loans in which the properties were stated to be owner-occupied but were not:** 683

(d)      **Eliminating duplicates, number of loans about which the Defendants made untrue or misleading statements:** 1,321

(e)      **Eliminating duplicates, percent of loans about which the Defendants made untrue or misleading statements:** 41%

-9-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SCHEDULE 38 TO THE AMENDED COMPLAINT

To the extent that this Schedule is incorporated by reference into allegations in the complaint, those allegations are made against Defendants WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp.

**Item 43.**     **Details of trust and certificate(s).**

(a)     **Dealer that sold the certificate(s) to the Bank** WaMu Capital Corp.

(b)     **Description of the trust:** Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2006-3 was a securitization in March 2006 of 1,780 mortgage loans, in five groups. The mortgage loans in the collateral pool of this securitization were originated by GreenPoint Mortgage Funding, Inc., New Century Mortgage Corp., and MortgageIT, Inc. WMALT 2006-3 Pros. Sup. S-5 and S-25.

(c)     **Description of the certificate(s) that the Bank purchased:** WaMu Capital Corp. offered and sold to the Bank a senior certificate in this securitization, in tranche 3-CB-2 for which the Bank paid $38,342,643 plus accrued interest on March 31, 2006.

(d)     **Ratings of the certificate(s) when the Bank purchased them:** Standard & Poor's – AAA; Fitch – AAA.

(e)     **Current ratings of the certificate(s):** Standard & Poor's – CCC; Fitch – BB.

(f)     **URL of prospectus supplement for this securitization:** http://www.sec.gov/Archives/edgar/data/1317069/000095011706001458/a41627.htm

**Item 51.**     **Untrue or misleading statements about the LTVs of the mortgage loans:**

In the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made the following statements about the LTVs of the mortgage loans in the collateral pool of this securitization.

---

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1     (a)     In Appendix B of the prospectus supplement, WaMu Capital Corp. and

Washington Mutual Mortgage Securities Corp. presented tables of statistics about the mortgage

loans in the collateral pool. WMALT 2006-3 Pros. Sup. S-90 to S-104. Each table focused on a

certain characteristic of the loans (for example, original principal balance) and divided the loans

into categories based on that characteristic (for example, loans with original principal balances of

$400,001 to $450,000, $450,001 to $500,000, $500,001 to $550,000, etc.). Each table then

presented various data about the mortgage loans in each category. One of the tables, entitled

"Current Loan-to-Value Ratios of the Group 1 Loans," divided the loans in group 1 into five

categories of current LTV (for example, 60% or less, 60.01% to 70%, 70.01% to 75%, etc.). The

table made untrue and misleading statements about the number of mortgage loans, the aggregate

principal balance outstanding, and the percent of aggregate principal balance outstanding in each

of these categories. WMALT 2006-3 Pros. Sup. S-90.

     (b)     "At origination, the weighted average loan-to-value ratio of the group 1 loans was

approximately 71.3%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the

group 1 loans was approximately 71.3%." WMALT 2006-3 Pros. Sup. S-90.

     (c)     In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities

Corp. presented a table entitled "Current Loan-to-Value Ratios of the Group 2 Loans." This table

divided the mortgage loans in group 2 into six categories of current LTV (for example, 60% or

less, 60.01% to 70%, 70.01% to 75%, etc.). The table made untrue and misleading statements

about the number of mortgage loans, the aggregate principal balance outstanding, and the percent

of aggregate principal balance outstanding in each of these categories. WMALT 2006-3 Pros.

Sup. S-93.

-11-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

(d)     "At origination, the weighted average loan-to-value ratio of the group 2 loans was approximately 74.9%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 2 loans was approximately 74.9%." WMALT 2006-3 Pros. Sup. S-93.

(e)     In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Current Loan-to-Value Ratios of the Group 3 Loans." This table divided the mortgage loans in group 3 into six categories of current LTV (for example, 60% or less, 60.01% to 70%, 70.01% to 75%, etc.). The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2006-3 Pros. Sup. S-96.

(f)     "At origination, the weighted average loan-to-value ratio of the group 3 loans was approximately 73.0%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 3 loans was approximately 72.9%." WMALT 2006-3 Pros. Sup. S-96.

(g)     In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Current Loan-to-Value Ratios of the Group 4 Loans." This table divided the mortgage loans in group 4 into eight categories of current LTV (for example, 60% or less, 60.01% to 70%, 70.01% to 75%, etc.). The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2006-3 Pros. Sup. S-99.

(h)     "At origination, the weighted average loan-to-value ratio of the group 4 loans was approximately 77.3%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 4 loans was approximately 77.2%." WMALT 2006-3 Pros. Sup. S-99.

-12-

(i)      In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Current Loan-to-Value Ratios of the Group 5 Loans." This table divided the mortgage loans in group 5 into seven categories of current LTV (for example, 60% or less, 60.01% to 70%, 70.01% to 75%, etc.). The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2006-3 Pros. Sup. S-102.

(j)      "At origination, the weighted average loan-to-value ratio of the group 5 loans was approximately 65.3%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 5 loans was approximately 64.6%." WMALT 2006-3 Pros. Sup. S-102.

**Item 61.      Details of the results of the AVM analysis:**

| | |
|---|---:|
| Number of loans | 1,780 |
| Number of properties on which there was enough information for the model to determine a true market value | 962 |
| Number of loans on which the stated value was 105% or more of the true market value as reported by the model | 571 |
| Aggregate amount by which the stated values of those properties exceeded their true market values as reported by the model | $46,667,140 |
| Number of loans on which the stated value was 95% or less of the true market value as reported by the model | 137 |
| Aggregate amount by which the true market values of those properties exceed their stated values | $9,368,300 |
| Number of loans with LTVs over 100%, as stated by Defendants | 0 |
| Number of loans with LTVs over 100%, as determined by the model | 102 |
| Weighted-average LTV, as stated by Defendants (group 3) | 73.% |
| Weighted-average LTV, as determined by the model (group 3) | 79.1% |

**Item 64.      Evidence from subsequent sales of refinanced properties:**

Of the 1,780 mortgage loans in the collateral pool, 1,028 were taken out to refinance, rather than to purchase, properties. For those 1,028 loans, the value (denominator) in the LTV was an appraised value rather than a sale price. Of those 1,028 properties, 143 were subsequently sold for a total of approximately $45,213,842. The total value ascribed to those same properties in

-13-

the LTV data reported in the prospectus supplements and other documents sent to the Bank was $62,324,500. Thus, those properties were sold for 72.5% of the value ascribed to them, a difference of 27.5%. This difference cannot be accounted for by declines in house prices in the areas in which those properties were located.

**Item 81.    Untrue or misleading statements about compliance with USPAP:**

In the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made the following statement about the appraisals of the properties that secured the mortgage loans in the collateral pool of this securitization: "At origination, all appraisals are required to conform to the Uniform Standards of Professional Appraisal Practice adopted by the Appraisal Standards Board of the Appraisal Foundation, and are made on forms acceptable to Fannie Mae and/or Freddie Mac." WMALT 2006-3 Pros. Sup. S-23.

**Item 87.    Untrue or misleading statements about owner-occupancy of the properties that secured the mortgage loans:**

In the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made the following statements about the occupancy status of the properties that secured the mortgage loans in the collateral pool of this securitization.

(a)    In Appendix B of the prospectus supplement, described in Item 51, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Occupancy Status of the Group 1 Loans." This table divided the mortgage loans in group 1 into the categories "Owner Occupied," "Non-Owner Occupied," and "Owner Occupied – 2nd Home." The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2006-3 Pros. Sup. S-92.

(b)    In the "Occupancy Status of the Group 1 Loans" table, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that 94.83% of the mortgage loans in group

-14-

1 were secured by an "Owner Occupied" residence, 1.79% by a "Non-Owner Occupied"
property, and 3.37% by an "Owner Occupied – 2nd Home." WMALT 2006-3 Pros. Sup. S-92.

(c)     In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities
Corp. presented a table entitled "Occupancy Status of the Group 2 Loans." This table divided the
mortgage loans in group 2 into the categories "Owner Occupied," "Non-Owner Occupied," and
"Owner Occupied – 2nd Home." The table made untrue and misleading statements about the
number of mortgage loans, the aggregate principal balance outstanding, and the percent of
aggregate principal balance outstanding in each of these categories. WMALT 2006-3 Pros. Sup.
S-94.

(d)     In the "Occupancy Status of the Group 2 Loans" table, WaMu Capital Corp. and
Washington Mutual Mortgage Securities Corp. stated that 86.46% of the mortgage loans in group
2 were secured by an "Owner Occupied" residence, 8.98% by a "Non-Owner Occupied"
property, and 4.56% by an "Owner Occupied – 2nd Home." WMALT 2006-3 Pros. Sup. S-94.

(e)     In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities
Corp. presented a table entitled "Occupancy Status of the Group 3 Loans." This table divided the
mortgage loans in group 3 into the categories "Owner Occupied," "Non-Owner Occupied," and
"Owner Occupied – 2nd Home." The table made untrue and misleading statements about the
number of mortgage loans, the aggregate principal balance outstanding, and the percent of
aggregate principal balance outstanding in each of these categories. WMALT 2006-3 Pros. Sup.
S-97.

(f)     In the "Occupancy Status of the Group 3 Loans" table, WaMu Capital Corp. and
Washington Mutual Mortgage Securities Corp. stated that 86.44% of the mortgage loans in group
3 were secured by an "Owner Occupied" residence, 11.69% by a "Non-Owner Occupied"
property, and 1.87% by an "Owner Occupied – 2nd Home." WMALT 2006-3 Pros. Sup. S-97.

-15-

(g)     In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Occupancy Status of the Group 4 Loans." This table divided the mortgage loans in group 4 into the categories "Owner Occupied," "Non-Owner Occupied," and "Owner Occupied – 2nd Home." The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2006-3 Pros. Sup. S-100.

(h)     In the "Occupancy Status of the Group 4 Loans" table, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that 92.47% of the mortgage loans in group 4 were secured by an "Owner Occupied" residence, 7.11% by a "Non-Owner Occupied" property, and 0.42% by an "Owner Occupied – 2nd Home." WMALT 2006-3 Pros. Sup. S-100.

(i)     In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Occupancy Status of the Group 5 Loans." This table divided the mortgage loans in group 5 into the categories "Owner Occupied," "Non-Owner Occupied," and "Owner Occupied – 2nd Home." The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2006-3 Pros. Sup. S-103.

(j)     In the "Occupancy Status of the Group 5 Loans" table, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that 76.91% of the mortgage loans in group 5 were secured by an "Owner Occupied" residence, 21.34% by a "Non-Owner Occupied" property, and 1.75% by an "Owner Occupied – 2nd Home." WMALT 2006-3 Pros. Sup. S-103.

**Item 95.     Details of properties that were stated to be owner-occupied, but were not:**

**(a)     Number of loans on which the owner of the property instructed tax authorities to send property tax bills to him or her at a different address: 222**

-16-

(b)     **Number of loans on which the owner of the property could have, but did not, designate the property as his or her homestead: 306**

(c)     **Number of loans on which the owner of the property owned three or more properties: 23**

(d)     **Number of loans that went straight from current to foreclosure or ownership by lender: 1**

(e)     **Eliminating duplicates, number of loans about which one or more of statements (a) through (d) is true: 456**

**Item 98.     Untrue or misleading statements about the underwriting standards of the originators of the mortgage loans:**

On pages S-22 through S-25 of the prospectus supplement and 43 through 45 of the prospectus, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made statements about the underwriting guidelines applied in the origination or acquisition of all of the mortgage loans in the collateral pool. All of those statements are incorporated herein by reference. In particular, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that:

(a)     "The sponsor's underwriting standards and Washington Mutual Bank's underwriting guidelines generally are intended to evaluate the prospective borrower's credit standing and repayment ability . . . ." WMALT 2006-3 Pros. Sup. S-22.

(b)     "Exceptions to the ratio guidelines may be made when compensating factors are present." WMALT 2006-3 Pros. Sup. S-23.

(c)     "Exceptions to the underwriting standards described above are made on a case-by-case basis if compensating factors are present. In those cases, the basis for the exception is documented." WMALT 2006-3 Pros. Sup. S-24.

**Item 105.     Early payment defaults:**

(a)     **Number of the mortgage loans that suffered EPDs: 15**

(b)     **Percent of the mortgage loans that suffered EPDs: 0.8%**

-17-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

    (c)        **Percent of all securitized, non-agency prime (including Alt-A) mortgage loans made at the same time as the loans in the collateral pool that experienced EPDs:** 0.44%

**Item 107.**       **30+ days delinquencies in this securitization:**

    (a)        **Number of the mortgage loans that were 30+ days delinquent on March 31, 2010:** 499

    (b)        **Percent of the mortgage loans that were 30+ days delinquent on March 31, 2010:** 28.0%

    (c)        **Percent of all mortgage loans in the United States that were 30+ days delinquent on March 31, 2010:** 14.7%

**Item 114.**       **Statements about the ratings of the certificate(s) that the Bank purchased:**

On pages S-12, S-45, and S-86 of the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made statements about the ratings assigned to the certificates issued in this securitization. WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that the Bank's certificate was rated AAA by Standard & Poor's Rating Services and AAA by Fitch Ratings. These were the highest ratings available from these two rating agencies.

WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. also stated: "It is a condition to the issuance of the offered certificates that they receive the . . . ratings [AAA] from Standard & Poor's Ratings Services, . . . and [AAA from] Fitch Ratings.".WMALT 2006-3 Pros. Sup. S-12 and S-86.

WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. also stated: "The offered certificates will not be issued unless they receive the ratings from Standard & Poor's Ratings Services . . . and Fitch Ratings (' Fitch') indicated . . . in this prospectus supplement." WMALT 2006-3 Pros. Sup. S-45.

1

**Item 117.**     **Summary of loans about which the Defendants made untrue or misleading statements:**

2

3

    (a)     **Number of loans whose LTVs were materially understated:** 571

4

    (b)     **Number of loans that suffered EPDs:** 15

5

    (c)     **Number of loans in which the properties were stated to be owner-occupied but were not:** 456

6

7

    (d)     **Eliminating duplicates, number of loans about which the Defendants made untrue or misleading statements:** 859

8

9

    (e)     **Eliminating duplicates, percent of loans about which the Defendants made untrue or misleading statements:** 48.3

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
    ROBERT A. GOODIN, State Bar No. 061302
2       rgoodin@goodinmacbride.com
    FRANCINE T. RADFORD, State Bar No. 168269
3       fradford@goodinmacbride.com
    ANNE H. HARTMAN, State Bar No. 184556
4       ahartman@goodinmacbride.com
    505 Sansome Street, Suite 900
5     San Francisco, California 94111
    Telephone:   (415) 392-7900
6     Facsimile:   (415) 398-4321

7   GRAIS & ELLSWORTH LLP
    DAVID J. GRAIS (*pro hac application to be submitted*)
8       dgrais@graisellsworth.com
    KATHRYN C. ELLSWORTH (*pro hac app. to be submitted*)
9       kellsworth@graisellsworth.com
    OWEN L. CYRULNIK (*pro hac application to be submitted*)
10       ocyrulnik@graisellsworth.com
    70 East 55th Street
11   New York, New York 10022
    Telephone:   (212) 755-3550
12     Facsimile:   (212) 755-0052

13   Attorneys for Plaintiff
    Federal Home Loan Bank of San Francisco

14

15          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

16          IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

17

| | |
|---|---|
| 18   FEDERAL HOME LOAN BANK OF SAN FRANCISCO, | No. CGC-10-497839 |
| 19           Plaintiff, | **APPLICATION FOR EXTENSION OF TIME TO SERVE SUMMONS AND COMPLAINT; DECLARATION IN SUPPORT THEREOF** |
| 20 | |
| 21   v. | |
| 22   DEUTSCHE BANK SECURITIES INC., et al., | Date of Filing:   March 15, 2010<br>Trial Date:   Not yet set |
| 23           Defendants. | |

24

25                             **APPLICATION**

26         Pursuant to California Rules of Court Rule 3.110 (e) and Local Rule 3.3(a),

27   Plaintiff the Federal Home Loan Bank of San Francisco hereby applies for an order extending the

28   time for service of the summons and complaint in this action as to all named defendants. This

---

**APPLICATION AND DECLARATION FOR EXTENSION OF TIME TO SERVE**

1    Application is based on this notice, the following declaration of Anne Hayes Hartman, and the

2    files and records of this action.

3    Dated: May 5, 2010                          GOODIN, MACBRIDE, SQUERI,
                                                  DAY & LAMPREY, LLP
4
                                                  GRAIS & ELLSWORTH LLP
5

6
                                                  By
7                                                     Anne Hayes Hartman
                                                  Attorneys for Plaintiff
8                                                 Federal Home Loan Bank of San Francisco

9

10                    **DECLARATION OF ANNE HAYES HARTMAN**

11            I, Anne Hayes Hartman, declare as follows:

12        1.       I am a member of the State Bar of California and associated with the law firm of

13   Goodin, MacBride, Squeri, Day & Lamprey, LLP ("the Goodin firm"). The Goodin firm is co-

14   counsel to plaintiff in this action, the Federal Home Loan Bank of San Francisco ("Plaintiff" or

15   the "Bank"). I make this declaration pursuant to California Rule of Court Rule 3.110(e) in

16   support of Plaintiff's Application for Extension of Time to Serve Summons and Complaint.

17   Unless otherwise stated, I know the facts stated herein of my own personal knowledge and if

18   called as a witness I could and would testify competently thereto.

19        2.       The complaint in this action was filed on March 15, 2010, naming fifteen separate

20   entity defendants. Plaintiff designated this case as complex, and filed a Notice of Related Case

21   regarding another case filed by Plaintiff on the same day, *Federal Home Loan Bank of San*

22   *Francisco v. Credit Suisse Securities (USA) LLC, et al.*, San Francisco Superior Court Case No.

23   CGC-10-497840 (the "Credit Suisse Action").

24        3.       Both this case (the "Deutsche Action") and the Credit Suisse Action assert causes

25   of action for rescission and damages as a result of the violation by the defendants of the

26   California Corporate Securities Act, the federal Securities Act of 1933, the California Civil Code,

27   and the common law, arising from the sale or issuance by defendants of certificates in a number

28   of securitization trusts backed by residential mortgage loans. The Bank paid more than $19.1

                                    -2-

**APPLICATION AND DECLARATION FOR EXTENSION OF TIME TO SERVE**

1  billion for the certificates at issue in these two actions. Plaintiff alleges in these actions that

2  defendants made numerous untrue statements to the Bank about the certificates and the credit

3  quality of the mortgage loans that backed them, and omitted to state many material facts that were

4  necessary in order to make their statements not misleading.

5      4.    Plaintiff intends to file an amended complaint in this action, as well as in the

6  Credit Suisse Action, pursuant to Section 472 of the Code of Civil Procedure. Plaintiff presently

7  believes that the amended complaints will be filed on or before May 28, 2010.

8      5.    Plaintiff believes the defendants in this action will be amenable to service by

9  certified mail or upon a designated agent. Plaintiff does not presently anticipate any substantial

10  difficulties with service of summons on any defendant.

11      6.    Rather than serve the original summons and complaint within the 60-day time

12  period of Rule 3.110 of the California Rules of Court (which date is May 14, 2010), and then

13  shortly thereafter, before the deadline for any defense response to the original complaint, serve an

14  amended complaint on each of the defendants, Plaintiff respectfully requests a brief extension of

15  time to serve the summons and complaint in this action, so that it may accomplish a single service

16  of its intended First Amended Complaint, with summons, upon all defendants.

17      7.    Based upon the foregoing, Plaintiff respectfully submits that good cause exists for

18  an extension of time to serve the summons and complaint in this action, to June 11, 2010. Such

19  an extension will not materially delay the proceedings in this complex litigation, and should, in

20  fact, streamline proceedings, by avoiding service of a complaint that will be immediately

21  superseded.

22      I declare under penalty of perjury under the laws of the State of California that the

23  foregoing is true and correct. Executed this 5th day of May, 2010, in San Francisco, California.

24

25

26                              Anne Hayes Hartman

27

28

APPLICATION AND DECLARATION FOR EXTENSION OF TIME TO SERVE

1   GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
    ROBERT A. GOODIN, State Bar No. 061302
2       rgoodin@goodinmacbride.com
    FRANCINE T. RADFORD, State Bar No. 168269
3       fradford@goodinmacbride.com
    ANNE H. HARTMAN, State Bar No. 184556
4       ahartman@goodinmacbride.com
    505 Sansome Street, Suite 900
5   San Francisco, California 94111
    Telephone:    (415) 392-7900
6   Facsimile:    (415) 398-4321

7   GRAIS & ELLSWORTH LLP
    DAVID J. GRAIS (*pro hac application to be submitted*)
8       dgrais@graisellsworth.com
    KATHRYN C. ELLSWORTH (*pro hac app. to be submitted*)
9       kellsworth@graisellsworth.com
    OWEN L. CYRULNIK (*pro hac application to be submitted*)
10      ocyrulnik@graisellsworth.com
    70 East 55th Street
11  New York, New York 10022
    Telephone:    (212) 755-3550
12  Facsimile:    (212) 755-0052

13  Attorneys for Plaintiff
    Federal Home Loan Bank of San Francisco

14

15          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

16          IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

17

18  FEDERAL HOME LOAN BANK OF SAN          No. CGC-10-497839
    FRANCISCO,
19                                          [PROPOSED] ORDER GRANTING
                Plaintiff,                  APPLICATION FOR EXTENSION OF
20                                          TIME TO SERVE SUMMONS AND
    v.                                      COMPLAINT *to 6-11-10*
21
    DEUTSCHE BANK SECURITIES INC., et       Date of Filing:    March 15, 2010
22  al.,                                    Trial Date:        Not yet set

23              Defendants.

24

25

26

27

28

─────────────────────────────────────────────────────────────
        ORDER FOR EXTENSION OF TIME TO SERVE SUMMONS AND COMPLAINT

FILED
San Francisco County Superior Court
MAY 11 2010
CLERK OF THE COURT
BY: _____
        Deputy Clerk

1    Upon the application of Plaintiff the Federal Home Loan Bank of San Francisco,

2    and good cause appearing, IT IS HEREBY ORDERED that the time for plaintiff to serve the

3    summons and complaint in this action shall be extended to June 11, 2010.

4

5    Dated: __5/11/10_____

6

7                                    _Arlene T. Borick_____

8                                        ARLENE T. BORICK
                                         Judge Pro Tempore

9    3428/001/X118652.v1

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

**ORDER FOR EXTENSION OF TIME TO SERVE SUMMONS AND COMPLAINT**

1   GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
    ROBERT A. GOODIN, State Bar No. 061302
2       rgoodin@goodinmacbride.com
    FRANCINE T. RADFORD, State Bar No. 168269
3       fradford@goodinmacbride.com
    ANNE H. HARTMAN, State Bar No. 184556
4       ahartman@goodinmacbride.com
    505 Sansome Street, Suite 900
5   San Francisco, California 94111
    Telephone:   (415) 392-7900
6   Facsimile:   (415) 398-4321

7   GRAIS & ELLSWORTH LLP
    DAVID J. GRAIS (*pro hac application to be submitted*)
8       dgrais@graisellsworth.com
    KATHRYN C. ELLSWORTH (*pro hac app. to be submitted*)
9       kellsworth@graisellsworth.com
    OWEN L. CYRULNIK (*pro hac application to be submitted*)
10      ocyrulnik@graisellsworth.com
    70 East 55th Street
11  New York, New York 10022
    Telephone:   (212) 755-3550
12  Facsimile:   (212) 755-0052

13  Attorneys for Plaintiff
    Federal Home Loan Bank of San Francisco

14

15              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

16              IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

17

| | |
|---|---|
| 18  FEDERAL HOME LOAN BANK OF SAN FRANCISCO, | No. CGC-10-497839 |
| 19           Plaintiff, | **[PROPOSED] ORDER GRANTING PLAINTIFF'S APPLICATIONS FOR ADMISSION OF COUNSEL *PRO HAC VICE*** |
| 20  v. | |
| 21  DEUTSCHE BANK SECURITIES INC., et al., | Date:    July 14, 2010 |
| 22 | Time:    9:30 a.m. |
| | Dept.:   301 |
| 23          Defendants. | Date of Filing:    March 15, 2010 |
| 24 | Trial Date:        Not yet set |

25          Upon the verified applications of Plaintiff the Federal Home Loan Bank of San

26  Francisco, notice having found to be adequate, and good cause appearing, IT IS HEREBY

27  ORDERED that the following individuals are admitted as counsel *pro hac vice* pursuant to

28  California Rules of Court Rule 9.40 for Plaintiff in this action:

---

**ORDER ADMITTING COUNSEL FOR PLAINTIFF *PRO HAC VICE***

1      DAVID J. GRAIS
           dgrais@graisellsworth.com
2      KATHRYN C. ELLSWORTH
           kellsworth@graisellsworth.com
3      OWEN L. CYRULNIK
           ocyrulnik@graisellsworth.com
4      LEANNE M. WILSON
           lwilson@graisellsworth.com
5      GRAIS & ELLSWORTH LLP
       70 East 55th Street
6      New York, New York 10022
       Telephone:    (212) 755-3550
7      Facsimile:    (212) 755-0052

8

9   Dated: _____

10

11                                          _____

12   3428/001/X119699.v1

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

**ORDER ADMITTING COUNSEL FOR PLAINTIFF *PRO HAC VICE***

1  GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
   ROBERT A. GOODIN, State Bar No. 061302
2      rgoodin@goodinmacbride.com
   FRANCINE T. RADFORD, State Bar No. 168269
3      fradford@goodinmacbride.com
   ANNE H. HARTMAN, State Bar No. 184556
4      ahartman@goodinmacbride.com
   505 Sansome Street, Suite 900
5  San Francisco, California 94111
   Telephone:   (415) 392-7900
6  Facsimile:   (415) 398-4321

7  GRAIS & ELLSWORTH LLP
   DAVID J. GRAIS
8      dgrais@graisellsworth.com
   KATHRYN C. ELLSWORTH
9      kellsworth@graisellsworth.com
   OWEN L. CYRULNIK
10     ocyrulnik@graisellsworth.com
   70 East 55th Street
11 New York, New York 10022
   Telephone:   (212) 755-3550
12 Facsimile:   (212) 755-0052

13 Attorneys for Plaintiff
   Federal Home Loan Bank of San Francisco

14

15           IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

16           IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

17

18 FEDERAL HOME LOAN BANK OF SAN          No. CGC-10-497839
   FRANCISCO,
19                                        NOTICE OF HEARING ON
           Plaintiff,                     PLAINTIFF'S APPLICATIONS FOR
20                                        ADMISSION OF COUNSEL *PRO HAC*
   v.                                     *VICE*
21
   DEUTSCHE BANK SECURITIES INC., et      Date:      July 14, 2010
22 al.,                                   Time:      9:30 a.m.
                                          Dept.:     301
23         Defendants.
                                          Date of Filing:    March 15, 2010
24                                        Trial Date:        Not yet set

25           TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

26           PLEASE TAKE NOTICE THAT pursuant to California Rules of Court Rule

27 9.40(c)(1), Plaintiff hereby submits the attached verified applications of David J. Grais (Exhibit

28 A), Kathryn C. Ellsworth (Exhibit B), Owen L. Cyrulnik (Exhibit C), and Leanne M. Wilson

   **NOTICE OF HEARING ON PLAINTIFF'S APP. RE: *PRO HAC VICE* COUNSEL**

1  (Exhibit D), all with the firm Grais & Ellsworth LLP of New York, New York, and counsel for

2  Plaintiff in this action, for admission *pro hac vice*.

3          PLEASE FURTHER TAKE NOTICE THAT hearing of these applications will be

4  had on July 14, 2010, at 9:30 a.m., in Department 301 of the Superior Court of the City and

5  County of San Francisco, located at 400 McAllister Street in San Francisco, California.

6          Pursuant to Rule 9.40(c)(1), this notice and the accompanying applications have

7  been served on the State Bar of California at its San Francisco office, as well as on the named

8  defendants in this litigation.

9  Dated: June 7, 2010               GOODIN, MACBRIDE, SQUERI,
                                       DAY & LAMPREY, LLP

10

11                                      GRAIS & ELLSWORTH LLP

12

13                                      By

14                                             Anne Hayes Hartman
                                    Attorneys for Plaintiff
                                    Federal Home Loan Bank of San Francisco

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

**NOTICE OF HEARING ON PLAINTIFF'S APP. RE: *PRO HAC VICE* COUNSEL**

Exhibit A

1   GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
    ROBERT A. GOODIN, State Bar No. 061302
2       rgoodin@goodinmacbride.com
    FRANCINE T. RADFORD, State Bar No. 168269
3       fradford@goodinmacbride.com
    ANNE H. HARTMAN, State Bar No. 184556
4       ahartman@goodinmacbride.com
    505 Sansome Street, Suite 900
5   San Francisco, California 94111
    Telephone:    (415) 392-7900
6   Facsimile:    (415) 398-4321

7   GRAIS & ELLSWORTH LLP
    DAVID J. GRAIS
8       dgrais@graisellsworth.com
    KATHRYN C. ELLSWORTH
9       kellsworth@graisellsworth.com
    OWEN L. CYRULNIK
10      ocyrulnik@graisellsworth.com
    70 East 55th Street
11  New York, New York 10022
    Telephone:    (212) 755-3550
12  Facsimile:    (212) 755-0052

13  Attorneys for Plaintiff
    Federal Home Loan Bank of San Francisco
14

15          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

16          IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

17

18  FEDERAL HOME LOAN BANK OF SAN          No. CGC-10-497839
    FRANCISCO,
19                                          **APPLICATION OF DAVID J. GRAIS**
                    Plaintiff,              **FOR ADMISSION *PRO HAC VICE***
20
    v.                                      Date of Filing:    March 12, 2010
21                                          Trial Date:        Not yet set
    DEUTSCHE BANK SECURITIES INC., et
22  al.,

23                  Defendants.

24

25          I, David J. Grais, declare as follows:

26          1.      I am a member of the State Bar of New York and a partner with the law firm of

27  Grais & Ellsworth LLP.  Grais & Ellsworth LLP is counsel for plaintiff the Federal Home Loan

28

---

1   Bank of San Francisco in this matter. I make this sworn application for admission *pro hac vice* to

2   represent plaintiff in this action. Unless otherwise stated, I know the facts stated herein of my

3   own personal knowledge and if called as a witness I could and would testify competently thereto.

4       2.    My office address is: Grais & Ellsworth LLP; 70 East 55th Street; New York, New

5   York 10022. My residence address is: 13 Stonehouse Road, Scarsdale, New York 10583.

6       3.    I have been admitted to, and am a member in good standing of, the following

7   courts: State of New York, May 23, 1979; United States District Courts for the Southern and

8   Eastern District Courts of New York, 1979; United States Court of Appeals for the Second

9   Circuit, 1980.

10       4.    I am not currently suspended or disbarred by any court.

11       5.    I have not applied to appear as counsel *pro hac vice* in any matter in California in

12   the preceding two years.

13       6.    The name, address, and telephone number of the active attorneys of the State Bar

14   of California who are attorneys of record for plaintiff in this action are:

15       GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
    ROBERT A. GOODIN, State Bar No. 061302
16       FRANCINE T. RADFORD, State Bar No. 168269
    ANNE H. HARTMAN, State Bar No. 184556
17       505 Sansome Street, Suite 900
    San Francisco, California 94111
18       Telephone:    (415) 392-7900
    Facsimile:    (415) 398-4321

19

20       I declare under penalty of perjury under the laws of the State of California that the

21   foregoing is true and correct. Executed this 6th day of May, 2010, in New York, New York.

22

23       *David J. Grais*

24       David J. Grais

25

26   3428/001/X118876.v1

27

28

**Application of David J. Grais for Admission *Pro Hac Vice***

Exhibit __B__

1   GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
    ROBERT A. GOODIN, State Bar No. 061302
2       rgoodin@goodinmacbride.com
    FRANCINE T. RADFORD, State Bar No. 168269
3       fradford@goodinmacbride.com
    ANNE H. HARTMAN, State Bar No. 184556
4       ahartman@goodinmacbride.com
    505 Sansome Street, Suite 900
5   San Francisco, California  94111
    Telephone:    (415) 392-7900
6   Facsimile:    (415) 398-4321

7   GRAIS & ELLSWORTH LLP
    DAVID J. GRAIS
8       dgrais@graisellsworth.com
    KATHRYN C. ELLSWORTH
9       kellsworth@graisellsworth.com
    OWEN L. CYRULNIK
10      ocyrulnik@graisellsworth.com
    70 East 55th Street
11  New York, New York 10022
    Telephone:    (212) 755-3550
12  Facsimile:    (212) 755-0052

13  Attorneys for Plaintiff
    Federal Home Loan Bank of San Francisco

14

15              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

16              IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

17

18  FEDERAL HOME LOAN BANK OF SAN       No. CGC-10-497839
    FRANCISCO,
19                                       **APPLICATION OF KATHRYN C.**
                Plaintiff,               **ELLSWORTH FOR ADMISSION** *PRO*
20                                       *HAC VICE*
    v.
21                                       Date of Filing:    March 12, 2010
    DEUTSCHE BANK SECURITIES INC., et    Trial Date:        Not yet set
22  al.,

23              Defendants.

24

25          I, Kathryn C. Ellsworth, declare as follows:

26      1.      I am a member of the State Bar of New York and a partner with the law firm of

27  Grais & Ellsworth LLP.  Grais & Ellsworth, LLP is counsel for plaintiff the Federal Home Loan

28  Bank of San Francisco in this matter.  I make this sworn application for admission *pro hac vice* to

─────────────────────────────────────────────
**Application of Kathryn C. Ellsworth for Admission** *Pro Hac Vice*

1  represent plaintiff in this action. Unless otherwise stated, I know the facts stated herein of my

2  own personal knowledge and if called as a witness I could and would testify competently thereto.

3      2.     My office address is: Grais & Ellsworth LLP; 70 East 55th Street; New York, New

4  York 10022. My residence address is: 845 Drewville Road, Brewster, New York 10509.

5      3.     I have been admitted to, and am a member in good standing of, the following

6  courts: United States District Court of the District of New Jersey (1990), Northern District of

7  California (1992), Southern District of New York (1993), and Eastern District of New York

8  (1993); United States Court of Appeals for the Seventh Circuit (1996), Fourth Circuit (2004), and

9  Second Circuit (2004); and United States Supreme Court (2002).

10     4.     I am not currently suspended or disbarred by any court.

11     5.     I have not applied to appear as counsel *pro hac vice* in any matter in California in

12 the preceding two years.

13     6.     The name, address, and telephone number of the active attorneys of the State Bar

14 of California who are attorneys of record for plaintiff in this action are:

15         GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
           ROBERT A. GOODIN, State Bar No. 061302
16         FRANCINE T. RADFORD, State Bar No. 168269
           ANNE H. HARTMAN, State Bar No. 184556
17         505 Sansome Street, Suite 900
           San Francisco, California 94111
18         Telephone:    (415) 392-7900
           Facsimile:    (415) 398-4321
19
           I declare under penalty of perjury under the laws of the State of California that the
20
foregoing is true and correct. Executed this 12th day of March, 2010, in New York, New York.
21

22

23

24                                    Kathryn C. Ellsworth

25
3428/001/X117393.v1
26

27

28

-2-

Exhibit C

1  GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
   ROBERT A. GOODIN, State Bar No. 061302
2      rgoodin@goodinmacbride.com
   FRANCINE T. RADFORD, State Bar No. 168269
3      fradford@goodinmacbride.com
   ANNE H. HARTMAN, State Bar No. 184556
4      ahartman@goodinmacbride.com
   505 Sansome Street, Suite 900
5  San Francisco, California 94111
   Telephone:    (415) 392-7900
6  Facsimile:    (415) 398-4321

7  GRAIS & ELLSWORTH LLP
   DAVID J. GRAIS
8      dgrais@graisellsworth.com
   KATHRYN C. ELLSWORTH
9      kellsworth@graisellsworth.com
   OWEN L. CYRULNIK
10     ocyrulnik@graisellsworth.com
   70 East 55th Street
11 New York, New York 10022
   Telephone:    (212) 755-3550
12 Facsimile:    (212) 755-0052

13 Attorneys for Plaintiff
   Federal Home Loan Bank of San Francisco

14

15          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

16          IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

17

18 FEDERAL HOME LOAN BANK OF SAN          No. CGC-10-497839
   FRANCISCO,
19                                        **APPLICATION OF OWEN L.**
               Plaintiff,                 **CYRULNIK FOR ADMISSION** *PRO*
20                                        *HAC VICE*
   v.
21                                        Date of Filing:    March 12, 2010
   DEUTSCHE BANK SECURITIES INC., et      Trial Date:        Not yet set
22 al.,

23             Defendants.

24

25          I, Owen L. Cyrulnik, declare as follows:

26          1.    I am a member of the State Bar of New York and counsel with the law firm of

27 Grais & Ellsworth LLP. Grais & Ellsworth, LLP is counsel for plaintiff the Federal Home Loan

28 Bank of San Francisco in this matter. I make this sworn application for admission *pro hac vice* to

---

**Application of Owen L. Cyrulnik for Admission *Pro Hac Vice***

1    represent plaintiff in this action. Unless otherwise stated, I know the facts stated herein of my

2    own personal knowledge and if called as a witness I could and would testify competently thereto.

3         2.    My office address is: Grais & Ellsworth LLP; 70 East 55th Street; New York, New

4    York 10022. My residence address is: 475 Churchill Road, Teaneck, New Jersey 07666.

5         3.    I have been admitted to, and am a member in good standing of, the following

6    courts: State of New York, 2001; United States District Court for the Southern District of New

7    York, October 30, 2001.

8         4.    I am not currently suspended or disbarred by any court.

9         5.    I have not applied to appear as counsel *pro hac vice* in any matter in California in

10   the preceding two years.

11        6.    The name, address, and telephone number of the active attorneys of the State Bar

12   of California who are attorneys of record for plaintiff in this action are:

13            GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
              ROBERT A. GOODIN, State Bar No. 061302
14            FRANCINE T. RADFORD, State Bar No. 168269
              ANNE H. HARTMAN, State Bar No. 184556
15            505 Sansome Street, Suite 900
              San Francisco, California 94111
16            Telephone:    (415) 392-7900
              Facsimile:    (415) 398-4321
17

18            I declare under penalty of perjury under the laws of the State of California that the

19   foregoing is true and correct. Executed this 6th day of May, 2010, in New York, New York.

20

21                                              _____
22                                                      Owen L. Cyrulnik

23   3428/001/X117394.v1

24

25

26

27

28

                                        -2-

**Application of Owen L. Cyrulnik for Admission *Pro Hac Vice***

Exhibit _D_

1   GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
    ROBERT A. GOODIN, State Bar No. 061302
2        rgoodin@goodinmacbride.com
    FRANCINE T. RADFORD, State Bar No. 168269
3        fradford@goodinmacbride.com
    ANNE H. HARTMAN, State Bar No. 184556
4        ahartman@goodinmacbride.com
    505 Sansome Street, Suite 900
5   San Francisco, California  94111
    Telephone:    (415) 392-7900
6   Facsimile:    (415) 398-4321

7   GRAIS & ELLSWORTH LLP
    DAVID J. GRAIS
8        dgrais@graisellsworth.com
    KATHRYN C. ELLSWORTH
9        kellsworth@graisellsworth.com
    LEANNE M. WILSON
10       lwilson@graisellsworth.com
    70 East 55th Street
11  New York, New York 10022
    Telephone:    (212) 755-3550
12  Facsimile:    (212) 755-0052

13  Attorneys for Plaintiff
    Federal Home Loan Bank of San Francisco

14

15              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

16              IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

17

18  FEDERAL HOME LOAN BANK OF SAN      No. CGC-10-497839
    FRANCISCO,
19                                     **APPLICATION OF LEANNE M.**
                  Plaintiff,           **WILSON FOR ADMISSION *PRO HAC***
20                                     ***VICE***
    v.
21                                     Date of Filing:    March 12, 2010
    DEUTSCHE BANK SECURITIES INC., et  Trial Date:        Not yet set
22  al.,

23                  Defendants.

24

25              I, Leanne M. Wilson, declare as follows:

26          1.      I am a member of the State Bar of New York and an associate with the law firm of

27  Grais & Ellsworth LLP.  Grais & Ellsworth LLP is counsel for plaintiff the Federal Home Loan

28  Bank of San Francisco in this matter.  I make this sworn application for admission *pro hac vice* to

---

1 | represent plaintiff in this action. Unless otherwise stated, I know the facts stated herein of my

2 | own personal knowledge and if called as a witness I could and would testify competently thereto.

3 |     2.     My office address is: Grais & Ellsworth LLP; 70 East 55th Street; New York, New

4 | York 10022. My residence address is: 170 E. 2nd Street, Apt. 24, New York, New York 10009.

5 |     3.     I have been admitted to, and am a member in good standing of, the following

6 | courts: State of New York, First Department, January 5, 2009; United States District Court for the

7 | Southern District of New York, November 17, 2009.

8 |     4.     I am not currently suspended or disbarred by any court.

9 |     5.     I have not applied to appear as counsel *pro hac vice* in any matter in California in

10 | the preceding two years.

11 |     6.     The name, address, and telephone number of the active attorneys of the State Bar

12 | of California who are attorneys of record for plaintiff in this action are:

13 |     GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
    ROBERT A. GOODIN, State Bar No. 061302

14 |     FRANCINE T. RADFORD, State Bar No. 168269
    ANNE H. HARTMAN, State Bar No. 184556

15 |     505 Sansome Street, Suite 900
    San Francisco, California 94111

16 |     Telephone:     (415) 392-7900
    Facsimile:     (415) 398-4321

17 |

18 |     I declare under penalty of perjury under the laws of the State of California that the

19 | foregoing is true and correct. Executed this 6th day of May, 2010, in New York, New York.

20 |

21 |

22 |     Leanne M. Wilson

23 | 3428/001/X118873.v1

24 |

25 |

26 |

27 |

28 |

-2-

SUPERIOR COURT OF CALIFORNIA | **SUMMONS** | COUNTY OF SAN FRANCISCO
*(CITACION JUDICIAL)*

**SUM-100**

### DEFENDANTS
**NOTICE TO DEFENDANT**: *(AVISO AL DEMANDADO):*

DEUTSCHE BANK SECURITIES INC.; DEUTSCHE ALT-A SECURITIES, INC.; DB
STRUCTURED PRODUCTS, INC.; J.P. MORGAN SECURITIES, INC., F/K/A BEAR, STEARNS &
CO. INC.; STRUCTURED ASSET MORTGAGE INVESTMENTS II, INC.; THE BEAR STEARNS
COMPANIES, LLC, F/K/A THE BEAR STEARNS COMPANIES, INC.; COUNTRYWIDE
SECURITIES CORPORATION; CREDIT SUISSE SECURITIES (USA) LLC. F/K/A CREDIT SUISSE
FIRST BOSTON LLC;
Additional Parties Attachment form is attached.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDATE)*
FEDERAL HOME LOAN BANK OF SAN FRANCISCO

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
  There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp). or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
  Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el s California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is: *(El nombre y dirección de la corte es):*
SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
400 McAllister Street
San Francisco, California 94102

CASE NUMBER *(Número del Caso):*
CGC-10-497839

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
ROBERT A. GOODIN, SBN 061302     415-392-7900     415-398-4321 fax
FRANCINE T. RADFORD, SBN 168269/ANNE H. RADFORD, SBN 184556
GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
505 Sansome Street, Suite 900, San Francisco, California 94111
Additional Counsel listed on Additional Page form attached. WESLEY RAMIREZ

DATE: JUN 0 9 2010
*(Fecha)*     **CLERK OF THE COURT** Clerk, by _____, Deputy
    *(Secretario)*     *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [XX] on behalf of *(specify):*     UBS Securities, LLC

under: [ ] CCP 416.10 (corporation)       [ ] CCP 416.60 (minor)
       [ ] CCP 416.20 (defunct corporation)     [ ] CCP 416.70 (conservatee)
       [ ] CCP 416.40 (association or partnership)   [ ] CCP 416.90 (individual)
       [XX] other *(specify):* Limited Liability Company
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
SF-C53

SUM-200(A)

| SHORT TITLE: Federal Home Loan Bank of San Francisco v. Deutsche Bank Securities, Inc., et al. | CASE NUMBER:<br>CGC-10-497839 |
|---|---|

## INSTRUCTIONS FOR USE

➡ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➡ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

☐ Plaintiff   ☒ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

RBS SECURITIES, INC., F/K/A GREENWICH CAPITAL MARKETS, INC.; RBS ACCEPTANCE, INC., F/K/A GREENWICH CAPITAL ACCEPTANCE, INC.; RBS HOLDINGS USA, INC., F/K/A GREENWICH CAPITAL HOLDINGS, INC.; MORGAN STANLEY & CO. INCORPORATED; UBS SECURITIES, LLC; MORTGAGE ASSET SECURITIZATION TRANSACTIONS, INC.; MERRILL LYNCH PIERCE, FENNER & SMITH, INC.; AND DOES 1 - 50

Page _____ of _____
Page 1 of ?

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Legal
Solutions
& Plus

| SHORT TITLE: Federal Home Loan Bank of San Francisco v. Deutsche Bank Securities, Inc., et al. | CASE NUMBER: CGC-10-497839 |
|---|---|

1 | GRAIS & ELLSWORTH LLP

2 | DAVID J. GRAIS (pro hac vice)

3 | KATHRYN C. ELLSWORTH (pro hac vice)

4 | OWEN L. CYRULINK (pro hac vice)

5 | 70 East 55th Street

6 | New York, New York 10022

7 | Telephone:   (212) 755-0100

8 | Facsimile:   (212) 755-0052

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26 | *(Required for verified pleading)* The items on this page stated on information and belief *(specify item numbers, not line numbers):*

27 | This page may be used with any Judicial Council form or any other paper filed with this court.   Page___3__

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]
Optional Form

**ADDITIONAL PAGE**
Attach to Judicial Council Form or Other Court Paper

Legal
Solutions
& Plus

CRC 201, 501

**EXHIBIT B**

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| ROBERT A. GOODIN, State Bar No. 061302<br>GOODIN, MacBRIDE, SQUERI, DAY & LAMPREY, LLP<br>505 Sansome, Suite 900<br><br>San Francisco, California  941111<br>　TELEPHONE NO.: (415) 392-7900　FAX NO. *(Optional)*:　(415) 398-4321<br>E-MAIL ADDRESS *(Optional)*: rgoodin@goodinmacbride.com<br>ATTORNEY FOR *(Name)*: Plaintiff Federal Home Loan Bank of San Francisco | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
　STREET ADDRESS: 400 McAllister Street
　MAILING ADDRESS:
　CITY AND ZIP CODE: San Francisco, California
　BRANCH NAME:

| PLAINTIFF/PETITIONER: FEDERAL HOME LOAN BANK OF SAN FRANCISCO<br>DEFENDANT/RESPONDENT: DEUTSCHE BANK SECURITIES INC., et al | CASE NUMBER:<br>CGC-10-497839 |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>3428-001 |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. [x] summons
   b. [x] complaint　(First Amended)
   c. [x] Alternative Dispute Resolution (ADR) package
   d. [x] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] cross-complaint
   f. [x] other *(specify documents)*: Notice to Plaintiff re Case Management Conference; Notice of Related Case;
      Notice of Hearing on Plaintiff's Applications for Admission of Counsel Pro Hac Vice; (See MC-020)

3. a. Party served *(specify name of party as shown on documents served)*: Mortgage Asset Securitization Transactions, Inc.
   b. [x] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
      Joan Taylor (Process agent)

4. Address where the party was served: Corporation Service Company
   2711 Centerville Road, Suite 400
   Wilmington DE 19808

5. I served the party *(check proper box)*
   a. [X] by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: 6/10/10　(2) at *(time)*: 3:30PM
   b. [ ] by substituted service. On *(date)*:　at *(time)*:　I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

      (1) [ ] (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*:　from *(city)*:　or [ ] a declaration of mailing is attached.

      (5) [ ] I attach a declaration of diligence stating actions taken first to attempt personal service.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Legal<br>Solutions<br>Plus | Code of Civil Procedure, § 417.10 |
|---|---|---|---|

| PLAINTIFF/PETITIONER: FEDERAL HOME LOAN BANK OF SAN FRANCISCO | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: DEUTSCHE BANK SECURITIES INC., et al | CGC-10-497839 |

5.  c.  ☐  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

   (1) ☐  on *(date):*                          (2) from *(city):*
   (3) ☐  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*) (Code Civ. Proc., § 415.30.)*
   (4) ☐  to an address outside California with return receipt requested. *(Code Civ. Proc., § 415.40.)*

   d.  ☐  **by other means** *(specify means of service and authorizing code section):*

   ☐  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:
   a.  ☐  as an individual defendant.
   b.  ☐  as the person sued under the fictitious name of *(specify):*
   c.  ☐  as occupant.
   d.  ☒  On behalf of *(specify):* Mortgage Asset Securitization Transactions, Inc.
      under the following Code of Civil Procedure section:

   | | |
   |---|---|
   | ☒ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
   | ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
   | ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
   | ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
   | ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
   | | ☐ other: |

7.  **Person who served papers**
   a.  Name: Harlin Parker
   b.  Address: 20 vesey street, NY, NY 10007
   c.  Telephone number: 212-227-9600
   d.  **The fee for service was:** $
   e.  I am:
      (1) ☒  not a registered California process server.
      (2) ☐  exempt from registration under Business and Professions Code section 22350(b).
      (3) ☐  registered California process server:
         (i) ☐  owner  ☐  employee  ☐  independent contractor.
         (ii)  Registration No.:
         (iii)  County:

8.  ☒  **I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.**

   or

9.  ☐  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 6/15/10

Harlin Parker
NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)                                (SIGNATURE )

POS-010 [Rev. January 1, 2007]            **PROOF OF SERVICE OF SUMMONS**                    Page 2 of 2

| SHORT TITLE: Federal Home Loan Bank of San Francisco v. Deutsche Bank Securities, Inc., et al. | CASE NUMBER: CGC-10-497839 |
|---|---|

1  Proposed Order re: same

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  *(Required for verified pleading)* The items on this page stated on information and belief *(specify item numbers, not line numbers):*

27  This page may be used with any Judicial Council form or any other paper filed with this court.   Page  3

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]
Optional Form

**ADDITIONAL PAGE**
Attach to Judicial Council Form or Other Court Paper

Legal
Solutions
Plus

CRC 201, 501

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| ROBERT A. GOODIN, State Bar No. 061302<br>GOODIN, MacBRIDE, SQUERI, DAY & LAMPREY, LLP<br>505 Sansome, Suite 900<br><br>San Francisco, California 94111<br>TELEPHONE NO.: (415) 392-7900    FAX NO. *(Optional):*  (415) 398-4321<br>E-MAIL ADDRESS *(Optional):* rgoodin@goodinmacbride.com<br>ATTORNEY FOR *(Name):* Plaintiff Federal Home Loan Bank of San Francisco | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco |
|---|
| STREET ADDRESS: 400 McAllister Street |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: San Francisco, California |
| BRANCH NAME: |

| PLAINTIFF/PETITIONER: FEDERAL HOME LOAN BANK OF SAN FRANCISCO<br>DEFENDANT/RESPONDENT: DEUTSCHE BANK SECURITIES INC., et al | CASE NUMBER:<br>CGC-10-497839 |
|---|---|

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.:<br>3428-001 |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. [x] summons

   b. [x] complaint  (First Amended)

   c. [ ] Alternative Dispute Resolution (ADR) package

   d. [x] Civil Case Cover Sheet *(served in complex cases only)*

   e. [ ] cross-complaint

   f. [x] other *(specify documents):* Notice to Plaintiff re Case Management Conference; Notice of Related Case;
      Notice of Hearing on Plaintiff's Applications for Admission of Counsel Pro Hac Vice; (See MC-020)

3. a. Party served *(specify name of party as shown on documents served):* UBS Securities, LLC

   b. [x] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person
      under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
      Joan Taylor (Process Agent)

4. Address where the party was served: Corporation Service Company
   2711 Centerville Road Suite 400
   Wilmington, DE 19808

5. I served the party *(check proper box)*

   a. [X] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to
      receive service of process for the party (1) on *(date):* 6|10|10    (2) at *(time):* 3:30 PM

   b. [ ] **by substituted service.** On *(date):*         at *(time):*         I left the documents listed in item 2 with or
      in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business
         of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual
         place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing
         address of the person to be served, other than a United States Postal Service post office box. I informed
         him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served
         at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on
         *(date):*         from *(city):*         or [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

**PROOF OF SERVICE OF SUMMONS** Legal Solutions Plus  Code of Civil Procedure, § 417.10

| PLAINTIFF/PETITIONER: FEDERAL HOME LOAN BANK OF SAN FRANCISCO | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: DEUTSCHE BANK SECURITIES INC., et al | CGC-10-497839 |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

   (1) on *(date):*         (2) from *(city):*
   (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)
   (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

   d. ☐ **by other means** *(specify means of service and authorizing code section):*

   ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. ☐ as an individual defendant.
   b. ☐ as the person sued under the fictitious name of *(specify):*
   c. ☐ as occupant.
   d. ☒ On behalf of *(specify):* UBS Securities, LLC
   under the following Code of Civil Procedure section:

   | | |
   |---|---|
   | ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
   | ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
   | ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
   | ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
   | ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
   | | ☒ other: Limited Liability Company |

7. **Person who served papers**
   a. Name: Harlin Parker
   b. Address: 20 resey street, NY, NY
   c. Telephone number: 212-227-9600
   d. The fee for service was: $
   e. I am:

   (1) ☒ not a registered California process server.
   (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
   (3) ☐ registered California process server:
       (i) ☐ owner ☐ employee ☐ independent contractor.
       (ii) Registration No.:
       (iii) County:

8. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   or

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: 6/15/10

Harlin Parker
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

(SIGNATURE)

| SHORT TITLE: Federal Home Loan Bank of San Francisco v. Deutsche Bank Securities, Inc., et al. | CASE NUMBER: CGC-10-497839 |

1  Proposed Order re: same

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  *(Required for verified pleading)* The items on this page stated on information and belief *(specify item numbers, **not** line numbers):*

27  This page may be used with any Judicial Council form or any other paper filed with this court.   Page 3

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]
Optional Form

**ADDITIONAL PAGE**
Attach to Judicial Council Form or Other Court Paper

Legal
Solutions
Plus

CRC 201, 501