The prospectus was amended from time to time by prospectus supplements whenever a new series of certificates was issued pursuant or traceable to that registration statement.

**Item 51.      Untrue or misleading statements about the LTVs of the mortgage loans:**

In the prospectus supplement, Greenwich Capital and Greenwich Capital Acceptance made the following statements about the LTVs of the mortgage loans in the collateral pool of this securitization.

(a)      The original LTVs of the initial mortgage loans in the collateral pool ranged from 7.39% to 102.15% with an average or weighted average of 78.6%. HVMLT 2007-5 Pros. Sup. S-5.

(b)      "As of the initial cut-off date, approximately 36.40% of all of the initial mortgage loans have original loan-to-value ratios in excess of 80% . . . ." HVMLT 2007-5 Pros. Sup. S-24.

(c)      In Annex B of the prospectus supplement ("Certain Characteristics of the Initial Mortgage Loans"), Greenwich Capital and Greenwich Capital Acceptance presented tables of statistics about the mortgage loans in the collateral pool. HVMLT 2007-5 Pros. Sup. B-1 to B-12. Each table focused on a certain characteristic of the loans (for example, stated principal balance) and divided the loans into categories based on that characteristic (for example, loans with stated principal balances of $0.01 to $50,000, $50,000.01 to $100,000, $100,000.01 to $150,000, etc.). Each table then presented various data about the loans in each category. Among these data was the "Weighted Average Original Loan-to-Value [Ratio]." There were 23 such tables in Annex B for the loans in the collateral pool. In each table, the number of categories into which the loans were divided ranged from one to 42. Thus, in Annex B, Greenwich Capital and Greenwich Capital Acceptance made hundreds of statements about the original LTVs of the loans in the collateral pool. HVMLT 2007-5 Pros. Sup. B-1 to B-12.

(d)      "The weighted average original loan-to-value ratio of the initial mortgage loans was approximately 78.60% as of the cut-off date." HVMLT 2007-5 Pros. Sup. B-6.

-2-

SCHEDULES OF THE FIRST AMENDED COMPLAINT *(Deutsche, 497839)*

**Item 61.**     **Details of the results of the AVM analysis:**

| | |
|---|---|
| Number of loans | 2,890 |
| Number of properties on which there was enough information for the model to determine a true market value | 2,050 |
| Number of loans on which the stated value was 105% or more of the true market value as reported by the model | 1,638 |
| Aggregate amount by which the stated values of those properties exceeded their true market values as reported by the model | $165,274,472 |
| Number of loans on which the stated value was 95% or less of the true market value as reported by the model | 125 |
| Aggregate amount by which the true market values of those properties exceed their stated values | $9,461,000 |
| Number of loans with LTVs over 100%, as stated by Defendants | 1 |
| Number of loans with LTVs over 100%, as determined by the model | 865 |
| Weighted-average LTV, as stated by Defendants | 78.6% |
| Weighted-average LTV, as determined by the model | 100.1% |

**Item 64.**     **Evidence from subsequent sales of refinanced properties:**

Of the 2,890 mortgage loans in the collateral pool, 2,225 were taken out to refinance, rather than to purchase, properties. For those 2,225 loans, the value (denominator) in the LTV was an appraised value rather than a sale price. Of those 2,225 properties, 355 were subsequently sold for a total of approximately $95,352,689. The total value ascribed to those same properties in the LTV data reported in the prospectus supplements and other documents sent to the Bank was $180,920,800. Thus, those properties were sold for 52.7% of the value ascribed to them, a difference of 47.3%. This difference cannot be accounted for by declines in house prices in the areas in which those properties were located.

**Item 81.**     **Untrue or misleading statements about compliance with USPAP:**

In the prospectus supplement, Greenwich Capital and Greenwich Capital Acceptance made the following statement about the appraisals of the properties that secured the mortgage loans in the collateral pool of this securitization: "Every mortgage loan is secured by a property that has been appraised by a licensed appraiser in accordance with the Uniform Standards of Professional Appraisal of the Appraisal Foundation." HVMLT 2004-7 Pros. Sup. S-31.

-3-

**Item 87.** **Untrue or misleading statements about owner-occupancy of the properties that secured the mortgage loans:**

In the prospectus supplement, Greenwich Capital and Greenwich Capital Acceptance made the following statements about the occupancy status of the properties that secured the mortgage loans in the collateral pool of this securitization.

In Annex B of the prospectus supplement, described in Item 51, Greenwich Capital and Greenwich Capital Acceptance presented a table entitled "Stated Occupancy Status of the Initial Mortgage Loans." This table divided the mortgage loans into the categories "Primary," "Investor," and "Second Home." The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. HVMLT 2007-5 Pros. Sup. B-3.

In the "Stated Occupancy Status of the Initial Mortgage Loans" table, Greenwich Capital and Greenwich Capital Acceptance stated that 82.84% of the mortgage loans in the collateral pool were secured by a "Primary" residence, 12.84% by an "Investor" property, and 4.31% by a "Second Home." HVMLT 2007-5 Pros. Sup. B-3.

**Item 95.** **Details of properties that were stated to be owner-occupied, but were not:**

(a) Number of loans on which the owner of the property instructed tax authorities to send property tax bills to him or her at a different address: 251

(b) Number of loans on which the owner of the property could have, but did not, designate the property as his or her homestead: 369

(c) Number of loans on which the owner of the property owned three or more properties: 47

(d) Number of loans that went straight from current to foreclosure or ownership by lender: 4

(e) Eliminating duplicates, number of loans about which one or more of statements (a) through (d) is true: 557

-4-

SCHEDULES OF THE FIRST AMENDED COMPLAINT *(Deutsche, 497839)*

**Item 98.**      **Untrue or misleading statements about the underwriting standards of the originators of the mortgage loans:**

On pages S-29 through S-31 of the prospectus supplement, Greenwich Capital made statements about the underwriting guidelines of American Home Mortgage Corp. All of those statements are incorporated herein by reference. In particular, Greenwich Capital stated that:

(a)      "[E]xceptions to American Home's underwriting guidelines are allowed if sufficient compensating factors exist to offset any additional risk due to the exception." HVMLT 2007-5 Pros. Sup. S-31.

(b)      "When evaluating the ratio of all monthly debt payments to the borrower's monthly income (debt-to-income ratio), the underwriter should be aware of the degree and frequency of credit usage and its impact on the borrower's ability to repay the loan." HVMLT 2007-5 Pros. Sup. S-30.

**Item 105.**      **Early payment defaults:**

(a)      **Number of the mortgage loans that suffered EPDs: 48**

(b)      **Percent of the mortgage loans that suffered EPDs: 1.7%**

(c)      **Percent of all securitized, non-agency prime (including Alt-A) mortgage loans made at the same time as the loans in the collateral pool that experienced EPDs: 0.83%**

**Item 106.**      **90+ days delinquencies:**

(a)      **Number of the mortgage loans that suffered 90+ days delinquencies: 1,161**

(b)      **Percent of the mortgage loans that suffered 90+ days delinquencies: 40.2%**

(c)      **Percent of all securitized, non-agency prime (including Alt-A) mortgage loans made at the same time as the loans in the collateral pool that suffered 90+ days delinquencies: 33.9%**

**Item 107.**      **30+ days delinquencies in this securitization:**

(a)      **Number of the mortgage loans that were 30+ days delinquent on March 31, 2010: 1,136**

(b)      **Percent of the mortgage loans that were 30+ days delinquent on March 31, 2010: 39.3%**

-5-

(c)     Percent of all mortgage loans in the United States that were 30+ days delinquent on March 31, 2010: 14.7%

**Item 114.**     **Statements about the ratings of the certificate(s) that the Bank purchased:**

On pages S-1, S-11, and S-89 of the prospectus supplement, Greenwich Capital and Greenwich Capital Acceptance made statements about the ratings assigned to the certificates issued in this securitization. Greenwich Capital and Greenwich Capital Acceptance stated that the Bank's certificate was rated Aaa by Moody's Investors Service, Inc. and AAA by Standard & Poor's Rating Services. These were the highest ratings available from these two rating agencies.

Greenwich Capital and Greenwich Capital Acceptance also stated: "It is a condition to the issuance of the certificates that the offered certificates initially have the ratings from Moody's Investors Service, Inc. and Standard & Poor's Ratings Services Inc. . . . set forth in . . . this prospectus supplement." HVMLT 2007-5 Pros. Sup. S-11.

Greenwich Capital and Greenwich Capital Acceptance also stated: "It is a condition to the issuance of the offered certificates that they have the applicable rating or ratings by Moody's Investors Service, Inc. ("Moody's") and Standard & Poor's Ratings Services . . . indicated . . . in the table on page S-1." HVMLT 2007-5 Pros. Sup. S-89.

**Item 117.**     **Summary of loans about which the Defendants made untrue or misleading statements:**

(a)     **Number of loans whose LTVs were materially understated:** 1,638

(b)     **Number of loans that suffered EPDs:** 48

(c)     **Number of loans in which the properties were stated to be owner-occupied but were not:** 557

(d)     **Eliminating duplicates, number of loans about which the Defendants made untrue or misleading statements:** 1,852

(e)     **Eliminating duplicates, percent of loans about which the Defendants made untrue or misleading statements:** 67.7%

-6-

# SCHEDULE 19 TO THE AMENDED COMPLAINT

To the extent that this Schedule is incorporated by reference into allegations in the complaint, those allegations are made against Defendants Greenwich Capital, Greenwich Capital Acceptance, and Greenwich Capital Holdings, Inc.

**Item 43.**     **Details of trust and certificate(s).**

    **(a)**     **Dealer that sold the certificate(s) to the Bank:** Greenwich Capital.

    **(b)**     **Description of the trust:** Harborview Mortgage Loan Trust, Mortgage Loan Pass-Through Certificates, Series 2006-7 was a securitization in August 2006 of 5,119 mortgage loans, in two groups. The mortgage loans in the collateral pool of this securitization were originated by American Home Mortgage Corp. HVMLT 2006-7 Pros. Sup. S-3 and S-24.

    **(c)**     **Description of the certificate(s) that the Bank purchased:** Greenwich Capital offered and sold to the Bank a senior certificate in this securitization, in tranche 2A-1A, for which the Bank paid $248,677,711 plus accrued interest on July 26, 2007.

    **(d)**     **Ratings of the certificate(s) when the Bank purchased them:** Standard & Poor's •   AAA; Moody's •   Aaa.

    **(e)**     **Current ratings of the certificate(s):** Standard & Poor's •   CCC; Moody's •   Caa1.

    **(f)**     **URL of prospectus supplement for this securitization:**
http://www.sec.gov/Archives/edgar/data/826219/000114420407036797/v081095_424b5.htm.

    **(g)**     **Registration statement pursuant or traceable to which the certificate(s) were issued:** Certificates in this trust, including the certificate that the Bank purchased, were issued pursuant or traceable to a registration statement filed by Greenwich Capital Acceptance with the SEC on form S-3 on March 31, 2006. Annexed to the registration statement was a prospectus. The prospectus was amended from time to time by prospectus supplements whenever a new series of certificates was issued pursuant or traceable to that registration statement.

**Item 51.**     **Untrue or misleading statements about the LTVs of the mortgage loans:**

In the prospectus supplement, Greenwich Capital and Greenwich Capital Acceptance made the following statements about the LTVs of the mortgage loans in the collateral pool of this securitization.

(a)     The original LTVs of the total mortgage loans in the collateral pool ranged from 7.76% to 100% with an average or weighted average of 75.27%. HVMLT 2006-7 Pros. Sup. S-4.

(b)     The original effective LTV of the total mortgage loans in the collateral pool ranged from 7.76% to 80% with a weighted average of 64.86%. HVMLT 2006-7 Pros. Sup. S-4.

(c)     The original LTVs of the mortgage loans in Group 1 ranged from 7.76% to 100% with an average or weighted average of 75.47%. HVMLT 2006-7 Pros. Sup. S-5.

(d)     The effective original LTVs of the mortgage loans in Group 1 ranged from 7.76% to 80% with a weighted average of 64.37%. HVMLT 2006-7 Pros. Sup. S-5.

(e)     The original LTVs of the mortgage loans in Group 2 ranged from 17.23% to 100% with an average or weighted average of 75.14%. HVMLT 2006-7 Pros. Sup. S-5.

(f)     The effective original LTVs of the mortgage loans in Group 2 ranged from 17.23% to 80% an average or weighted average of 65.17%. HVMLT 2006-7 Pros. Sup. S-5.

(g)     "Approximately 51.02% of all of the mortgage loans, and approximately 55.08% and 48.35% of the group 1 and group 2 mortgage loans, respectively, are mortgage loans having original loan-to-value ratios of 75.00% to 80.00% . . . ." HVMLT 2006-7 Pros. Sup. S-18.

(h)     "As of the cut-off date, approximately 14.35% of all of the mortgage loans, and approximately 14.55% and 14.21% of the group 1 and group 2 mortgage loans, respectively, have original loan-to-value ratios in excess of 80% . . . ." HVMLT 2006-7 Pros. Sup. S-26.

(i)     In "The Mortgage Loan Groups" section of the prospectus supplement, Greenwich Capital and Greenwich Capital Acceptance presented tables of statistics about the mortgage loans in the collateral pool. HVMLT 2006-7 Pros. Sup. S-30 to S-67. Each table focused on a certain characteristic of the loans (for example, stated principal balance) and divided the loans into categories based on that characteristic (for example, loans with stated principal balances of $0.01 to $50,000, $50,000.01 to $100,000, $100,000.01 to $150,000, etc.). Each table then presented

-2-

1   various data about the loans in each category. There were 29 such tables "The Mortgage Loan

2   Groups" section for all of the loans in the collateral pool. In each table, the number of categories

3   into which the loans were divided ranged from two to 46. Thus, in "The Mortgage Loan Groups"

4   section of the prospectus supplement, Greenwich Capital and Greenwich Capital Acceptance

5   made hundreds of statements about the original LTVs of the loans in the collateral pool. HVMLT

6   2006-7 Pros. Sup. S-30 to S-41.

7       (j)     "The weighted average original loan-to-value ratio of the mortgage loans was

8   approximately 75.27% as of the cut-off date." HVMLT 2006-7 Pros. Sup. S-35.

9       (k)     In "The Mortgage Loan Groups" section, Greenwich Capital and Greenwich

10  Capital Acceptance presented a table entitled "Original Effective Loan-to-Value Ratios of the

11  Mortgage Loans." This table divided the mortgage loans in the collateral pool into eight

12  categories of original effective LTV (for example, 0.01% to 49.99%, 50% to 54.99%, 55% to

13  59.99%, etc.). The table made untrue and misleading statements about the number of mortgage

14  loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance

15  outstanding in each of these categories. HVMLT 2006-7 Pros. Sup. S-35.

16      (l)     In "The Mortgage Loan Groups" section, Greenwich Capital and Greenwich

17  Capital Acceptance presented similar tables of statistics about the mortgage loans in Group 1. In

18  these tables, Greenwich Capital and Greenwich Capital Acceptance similarly made hundreds of

19  statements about the original LTVs of the mortgage loans in Group 1. HVMLT 2006-7 Pros. Sup.

20  S-43 to S-54.

21      (m)     "The weighted average original loan-to-value ratio of the group 1 mortgage loans

22  was approximately 75.47% as of the cut-off date." HVMLT 2006-7 Pros. Sup. S-48.

23      (n)     In "The Mortgage Loan Groups" section, Greenwich Capital and Greenwich

24  Capital Acceptance presented a table entitled "Original Effective Loan-to-Value Ratios of the

25  Group 1 Mortgage Loans." This table divided the mortgage loans in Group 1 into eight categories

26  of original effective LTV (for example, 0.01% to 49.99%, 50% to 54.99%, 55% to 59.99%, etc.).

27  The table made untrue and misleading statements about the number of mortgage loans, the

28

-3-

1  aggregate principal balance outstanding, and the percent of aggregate principal balance

2  outstanding in each of these categories. HVMLT 2006-7 Pros. Sup. S-48.

3      (o)    In "The Mortgage Loan Groups" section, Greenwich Capital and Greenwich

4  Capital Acceptance presented similar tables of statistics about the mortgage loans in Group 2. In

5  these tables, Greenwich Capital and Greenwich Capital Acceptance similarly made hundreds of

6  statements about the original LTVs of the loans in Group 2. HVMLT 2006-7 Pros. Sup. S-56 to

7  S-67.

8      (p)    "The weighted average original loan-to-value ratio of the group 2 mortgage loans

9  was approximately 75.14% as of the cut-off date." HVMLT 2006-7 Pros. Sup. S-61.

10      (q)    In "The Mortgage Loan Groups" section, Greenwich Capital and Greenwich

11  Capital Acceptance presented a table entitled "Original Effective Loan-to-Value Ratios of the

12  Group 2 Mortgage Loans." This table divided the mortgage loans in Group 2 into eight categories

13  of original effective LTV (for example, 0.01% to 49.99%, 50% to 54.99%, 55% to 59.99%, etc.).

14  The table made untrue and misleading statements about the number of mortgage loans, the

15  aggregate principal balance outstanding, and the percent of aggregate principal balance

16  outstanding in each of these categories. HVMLT 2006-7 Pros. Sup. S-61.

17  **Item 61.**    **Details of the results of the AVM analysis:**

18

| | |
|---|---|
| Number of loans | 5,119 |
| Number of properties on which there was enough information for the model to determine a true market value | 3,062 |
| Number of loans on which the stated value was 105% or more of the true market value as reported by the model | 2,067 |
| Aggregate amount by which the stated values of those properties exceeded their true market values as reported by the model | $218,003,204 |
| Number of loans on which the stated value was 95% or less of the true market value as reported by the model | 334 |
| Aggregate amount by which the true market values of those properties exceed their stated values | $30,525,084 |
| Number of loans with LTVs over 100%, as stated by Defendants | 0 |
| Number of loans with LTVs over 100%, as determined by the model | 632 |
| Weighted-average LTV, as stated by Defendants | 75.3% |
| Weighted-average LTV, as determined by the model | 91.3% |

28

-4-

**Item 64.**     **Evidence from subsequent sales of refinanced properties:**

Of the 5,119 mortgage loans in the collateral pool, 3,700 were taken out to refinance, rather than to purchase, properties. For those 3,700 loans, the value (denominator) in the LTV was an appraised value rather than a sale price. Of those 3,700 properties, 639 were subsequently sold for a total of approximately $242,901,778. The total value ascribed to those same properties in the LTV data reported in the prospectus supplements and other documents sent to the Bank was $392,750,706. Thus, those properties were sold for 61.8% of the value ascribed to them, a difference of 38.2%. This difference cannot be accounted for by declines in house prices in the areas in which those properties were located.

**Item 81.**     **Untrue or misleading statements about compliance with USPAP:**

In the prospectus supplement, Greenwich Capital and Greenwich Capital Acceptance made the following statement about the appraisals of the properties that secured the mortgage loans in the collateral pool of this securitization: "Every mortgage loan is secured by a property that has been appraised by a licensed appraiser in accordance with the Uniform Standards of Professional Appraisal of the Appraisal Foundation." HVMLT 2004-7 Pros. Sup. S-71.

**Item 87.**     **Untrue or misleading statements about owner-occupancy of the properties that secured the mortgage loans:**

In the prospectus supplement, Greenwich Capital and Greenwich Capital Acceptance made the following statements about the occupancy status of the properties that secured the mortgage loans in the collateral pool of this securitization.

(a)     In "The Mortgage Loan Groups" section of the prospectus supplement described in Item 51, Greenwich Capital and Greenwich Capital Acceptance presented a table entitled "Stated Occupancy Status of the Mortgage Loans." This table divided the all the loans in the collateral pool into the categories "Primary," "Investor," and "Second Home." The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance

-5-

1   outstanding, and the percent of aggregate principal balance outstanding in each of these

2   categories. HVMLT 2006-7 Pros. Sup. S-31.

3        (b)    In the "Stated Occupancy Status of the Mortgage Loans" table, Greenwich Capital

4   and Greenwich Capital Acceptance stated that 77.97% of the mortgage loans in the collateral

5   pool, by stated principal balance as of the cut-off date, were secured by a "Primary" residence,

6   15.83% by an "Investor" property, and 6.21% by a "Second Home." HVMLT 2006-7 Pros. Sup.

7   S-31.

8        (c)    In "The Mortgage Loan Groups" section, Greenwich Capital and Greenwich

9   Capital Acceptance presented a table entitled "Stated Occupancy Status of the Group 1 Mortgage

10  Loans." This table divided the mortgage loans in Group 1 into the categories "Primary,"

11  "Investor," and "Second Home." The table made untrue and misleading statements about the

12  number of mortgage loans, the aggregate principal balance outstanding, and the percent of

13  aggregate principal balance outstanding in each of these categories. HVMLT 2006-7 Pros. Sup.

14  S-44.

15       (d)    In the "Stated Occupancy Status of the Group 1 Mortgage Loans" table,

16  Greenwich Capital and Greenwich Capital Acceptance stated that 65.46% of the mortgage loans

17  in Group 1 were secured by a "Primary" residence, 26.7% by an "Investor" property, and 7.84%

18  by a "Second Home." HVMLT 2006-7 Pros. Sup. S-44.

19       (e)    In "The Mortgage Loan Groups" section, Greenwich Capital and Greenwich

20  Capital Acceptance presented a table entitled "Stated Occupancy Status of the Group 2 Mortgage

21  Loans." This table divided the mortgage loans in Group 2 into the categories "Primary,"

22  "Investor," and "Second Home." The table made untrue and misleading statements about the

23  number of mortgage loans, the aggregate principal balance outstanding, and the percent of

24  aggregate principal balance outstanding in each of these categories. HVMLT 2006-7 Pros. Sup.

25  S-57.

26       (f)    In the "Stated Occupancy Status of the Group 2 Mortgage Loans" table,

27  Greenwich Capital and Greenwich Capital Acceptance stated that 86.23% of the mortgage loans

28

-6-

in Group 2 were secured by a "Primary" residence, 8.65% by an "Investor" property, and 5.12% by a "Second Home." HVMLT 2006-7 Pros. Sup. S-57.

**Item 95.**     **Details of properties that were stated to be owner-occupied, but were not:**

    **(a)**     **Number of loans on which the owner of the property instructed tax authorities to send property tax bills to him or her at a different address: 625**

    **(b)**     **Number of loans on which the owner of the property could have, but did not, designate the property as his or her homestead: 541**

    **(c)**     **Number of loans on which the owner of the property owned three or more properties: 140**

    **(d)**     **Number of loans that went straight from current to foreclosure or ownership by lender: 6**

    **(e)**     **Eliminating duplicates, number of loans about which one or more of statements (a) through (d) is true: 982**

**Item 98.**     **Untrue or misleading statements about the underwriting standards of the originators of the mortgage loans:**

On pages S-70 through S-72 of the prospectus supplement, Greenwich Capital made statements about the underwriting guidelines of American Home Mortgage Corp. All of those statements are incorporated herein by reference. In particular, Greenwich Capital stated that:

    (a)     "[E]xceptions to American Home's underwriting guidelines are allowed if sufficient compensating factors exist to offset any additional risk due to the exception." HVMLT 2006-7 Pros. Sup. S-72.

    (b)     "When evaluating the ratio of all monthly debt payments to the borrower's monthly income (debt-to-income ratio), the underwriter should be aware of the degree and frequency of credit usage and its impact on the borrower's ability to repay the loan." HVMLT 2006-7 Pros. Sup. S-71.

**Item 106.**     **90+ days delinquencies:**

    **(a)**     **Number of the mortgage loans that suffered 90+ days delinquencies: 1,685**

    **(b)**     **Percent of the mortgage loans that suffered 90+ days delinquencies: 32.9%**

-7-

(c)    Percent of all securitized, non-agency prime (including Alt-A) mortgage loans made at the same time as the loans in the collateral pool that suffered 90+ days delinquencies: 32.7%

Item 107.    30+ days delinquencies in this securitization:

(a)    Number of the mortgage loans that were 30+ days delinquent on March 31, 2010: 1,589

(b)    Percent of the mortgage loans that were 30+ days delinquent on March 31, 2010: 31.0%

(c)    Percent of all mortgage loans in the United States that were 30+ days delinquent on March 31, 2010: 14.7%

Item 114.    Statements about the ratings of the certificate(s) that the Bank purchased:

On pages S-1, S-12, and S-144 to S-145 of the prospectus supplement, Greenwich Capital and Greenwich Capital Acceptance made statements about the ratings assigned to the certificates issued in this securitization. Greenwich Capital and Greenwich Capital Acceptance stated that the Bank's certificate was rated Aaa by Moody's Investors Service, Inc. and AAA by Standard & Poor's Rating Services. These were the highest ratings available from these two rating agencies.

Greenwich Capital and Greenwich Capital Acceptance also stated: "It is a condition to the issuance of the certificates that the offered certificates initially have the ratings from Moody's Investors Service, Inc. and Standard & Poor's Ratings Services Inc. . . . set forth in . . . this prospectus supplement." HVMLT 2006-7 Pros. Sup. S-12.

Greenwich Capital and Greenwich Capital Acceptance also stated: "It is a condition to the issuance of the offered certificates that they have the applicable rating or ratings by Moody's Investors Service, Inc. . . . and Standard & Poor's Ratings Services . . . indicated . . . in the table on page S-1." HVMLT 2006-7 Pros. Sup. S-144.

Item 117.    Summary of loans about which the Defendants made untrue or misleading statements:

(a)    Number of loans whose LTVs were materially understated: 2,067

(b)    Number of loans in which the properties were stated to be owner-occupied but were not: 982

-8-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(c)   Eliminating duplicates, number of loans about which the Defendants made untrue or misleading statements: 2,515

(d)   Eliminating duplicates, percent of loans about which the Defendants made untrue or misleading statements: 49.4%

SCHEDULES OF THE FIRST AMENDED COMPLAINT *(Deutsche, 497839)*

## SCHEDULE 20 TO THE AMENDED COMPLAINT

To the extent that this Schedule is incorporated by reference into allegations in the complaint, those allegations are made against Defendant Morgan Stanley.

**Item 43.**     **Details of trust and certificate(s).**

(a)     **Dealer that sold the certificate(s) to the Bank:** Morgan Stanley

(b)     **Description of the trust:** Residential Asset Securitization Trust, Mortgage Pass-Through Certificates, Series 2005-A6CB was a securitization in May 2005 of 2,758 mortgage loans, in one group. The mortgage loans in the collateral pool of this securitization were originated or acquired by IndyMac Bank, F.S.B. RAST 2005-A6CB Pros. Sup. S-4 and S-13.

(c)     **Description of the certificate(s) that the Bank purchased:** Morgan Stanley offered and sold to the Bank a senior certificate in this securitization, in tranche A-2, for which the Bank paid $201,240,400 plus accrued interest on May 31, 2005.

(d)     **Ratings of the certificate(s) when the Bank purchased them:** Standard & Poor's • AAA; Moody's • Aaa.

(e)     **Current ratings of the certificate(s):** Standard & Poor's • BB; Moody's • Caa1.

(f)     **URL of prospectus supplement for this securitization:** http://www.sec.gov/Archives/edgar/data/1090295/000112528204006550/b403120_424b5.txt.

**Item 51.**     **Untrue or misleading statements about the LTVs of the mortgage loans:**

In the prospectus supplement, Morgan Stanley made the following statements about the LTVs of the mortgage loans in the collateral pool of this securitization.

(a)     "At origination, all of the Mortgage Loans had a Loan-to-Value Ratio of 100% or less." RAST 2005-A6CB Pros. Sup. S-14.

(b)     In "The Mortgage Pool" section of the prospectus supplement, Morgan Stanley presented tables of statistics about the mortgage loans in the collateral pool. RAST 2005-A6CB Pros. Sup. S-16 to S-18. Each table focused on a certain characteristic of the loans (for example, current principal balance) and divided the loans into categories based on that characteristic (for example, loans with current principal balances of $0.01 to $50,000, $50,000.01 to $100,000,

1   $100,000.01 to $150,000, etc.). Each table then presented various data about the mortgage loans

2   in each category. In "The Mortgage Pool" section, Morgan Stanley presented a table entitled

3   "Original Loan-to-Value Ratios for the Mortgage Loans." This table divided the loans in the

4   collateral pool into 19 categories of original LTV (for example, 10% or less, 10.01% to 15%,

5   15.01% to 20%, etc.). The table made untrue and misleading statements about the number of

6   mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate

7   principal balance outstanding in each of these categories. RAST 2005-A6CB Pros. Sup. S-16.

8          (c)      "As of the Cut-off Date, the weighted average original Loan-to-Value Ratio of the

9   Mortgage Loans was approximately 69.03%." RAST 2005-A6CB Pros. Sup. S-16.

10  **Item 61.**      **Details of the results of the AVM analysis:**

| | |
|---|---|
| Number of loans | 2,758 |
| Number of properties on which there was enough information for the model to determine a true market value | 1,431 |
| Number of loans on which the stated value was 105% or more of the true market value as reported by the model | 660 |
| Aggregate amount by which the stated values of those properties exceeded their true market values as reported by the model | $32,092,492 |
| Number of loans on which the stated value was 95% or less of the true market value as reported by the model | 325 |
| Aggregate amount by which the true market values of those properties exceed their stated values | $19,094,300 |
| Number of loans with LTVs over 100%, as stated by Defendants | 0 |
| Number of loans with LTVs over 100%, as determined by the model | 86 |
| Weighted-average LTV, as stated by Defendants | 69.0% |
| Weighted-average LTV, as determined by the model | 75.4% |

21  **Item 70.**      **Undisclosed additional liens:**

22          (a)      **Minimum number of properties with additional liens: 133**

23          (b)      **Total reduction in equity from additional liens: $10,172,152**

24          (c)      *Weighted-average reduction in equity from additional liens: 77.3%*

SCHEDULES OF THE FIRST AMENDED COMPLAINT (Deutsche, 497839)

**Item 87.**   **Untrue or misleading statements about owner-occupancy of the properties that secured the mortgage loans:**

In the prospectus supplement, Morgan Stanley made the following statements about the occupancy status of the properties that secured the mortgage loans in the collateral pool of this securitization.

In "The Mortgage Pool" section of the prospectus supplement described in Item 51, Morgan Stanley presented a table entitled "Occupancy Types for the Mortgage Loans." This table divided the mortgage loans in the collateral pool into the categories "Primary," "Investment," and "Second Home." The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. RAST 2005-A6CB Pros. Sup. S-17.

In the "Occupancy Types for the Mortgage Loans" table, Morgan Stanley stated that 84.93% of the mortgage loans were secured by a "Primary" residence, 12.25% by an "Investment" property, and 2.82% by a "Second Home." RAST 2005-A6CB Pros. Sup. S-17.

**Item 95.**   **Details of properties that were stated to be owner-occupied, but were not:**

(a)   Number of loans on which the owner of the property instructed tax authorities to send property tax bills to him or her at a different address: 190

(b)   Number of loans on which the owner of the property could have, but did not, designate the property as his or her homestead: 242

(c)   Number of loans on which the owner of the property owned three or more properties: 19

(d)   Number of loans that went straight from current to foreclosure or ownership by lender: 1

(e)   Eliminating duplicates, number of loans about which one or more of statements (a) through (d) is true: 400

-3-

1    **Item 98.        Untrue or misleading statements about the underwriting standards of the
2                      originators of the mortgage loans:**

3           On pages S-20 through S-22 of the prospectus supplement, Morgan Stanley made

4    statements about the underwriting guidelines of IndyMac Bank, F.S.B. All of those statements are

5    incorporated herein by reference. In particular, Morgan Stanley stated that:

6           (a)      "Exceptions to these underwriting standards are permitted where compensating

7    factors are present . . . ." RAST 2005-A6CB Pros. Sup. S-20.

8           (b)      "IndyMac Bank's underwriting standards for conventionally underwritten

9    mortgage loans are based on traditional underwriting factors, including the creditworthiness of the

10   mortgagor, the capacity of the mortgagor to repay the mortgage loan according to its terms, and

11   the value of the related mortgaged property." RAST 2005-A6CB Pros. Sup. S-20.

12   **Item 105.       Early payment defaults:**

13          (a)      **Number of the mortgage loans that suffered EPDs:** 12

14          (b)      **Percent of the mortgage loans that suffered EPDs:** 0.4%

15          (c)      **Percent of all securitized, non-agency prime (including Alt-A) mortgage loans
16                   made at the same time as the loans in the collateral pool that experienced
17                   EPDs: 0.18%**

18   **Item 114.       Statements about the ratings of the certificate(s) that the Bank purchased:**

19          On pages S-3 and S-61 of the prospectus supplement, Morgan Stanley made statements

20   about the ratings assigned to the certificates issued in this securitization. Morgan Stanley stated

21   that the Bank's certificate was rated Aaa by Moody's Investors Service, Inc. and AAA by

22   Standard & Poor's Rating Services. These were the highest ratings available from these two

23   rating agencies.

24          Morgan Stanley also stated: "The classes of certificates listed below will not be offered

25   unless they are assigned the following ratings by Moody's Investors Service, Inc. ("Moody's")

26   and by Standard & Poor's." Morgan Stanley listed the Bank's certificate as rating Aaa by

27   Moody's Investors Service, Inc. and AAA by Standard & Poor's Rating Services. RAST 2005-

28   A6CB Pros. Sup. S-3.

-4-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (Deutsche, 497839)

Morgan Stanley also stated: "It is a condition to the issuance of the classes of senior certificates that they be rated AAA by Standard & Poor's. . . It is a condition to the issuance of the classes of senior certificates. . . that they be rated Aaa by Moody's Investors Service, Inc. . . ." RAST 2005-A6CB Pros. Sup. S-61.

**Item 117.**      **Summary of loans about which the Defendants made untrue or misleading statements:**

(a)      **Number of loans whose LTVs were materially understated: 660**

(b)      **Number of loans in which the owner's equity was reduced by 5% or more by undisclosed additional liens: 133**

(c)      **Number of loans that suffered EPDs: 12**

(d)      **Number of loans in which the properties were stated to be owner-occupied but were not: 400**

(e)      **Eliminating duplicates, number of loans about which the Defendants made untrue or misleading statements: 1,043**

(f)      **Eliminating duplicates, percent of loans about which the Defendants made untrue or misleading statements: 37.8%**

SCHEDULES OF THE FIRST AMENDED COMPLAINT *(Deutsche, 497839)*

## SCHEDULE 21 TO THE AMENDED COMPLAINT

To the extent that this Schedule is incorporated by reference into allegations in the complaint, those allegations are made against Defendant Morgan Stanley.

**Item 43.**     **Details of trust and certificate(s).**

**(a)**     **Dealer that sold the certificate(s) to the Bank:** Morgan Stanley.

**(b)**     **Description of the trust:** Residential Asset Securitization Trust, Mortgage Pass-Through Certificates, Series 2006-A1 was a securitization in February of 2006 of 2,141 mortgage loans, in three groups. The mortgage loans in the collateral pool of this securitization were originated or acquired by IndyMac Bank, F.S.B. RAST 2006-A1 Pros. Sup. S-3, S-27, and S-30.

**(c)**     **Description of the certificate(s) that the Bank purchased:** Morgan Stanley offered and sold to the Bank a senior certificate in this securitization, in tranche 3-A-1, for which the Bank paid $74,742,188 plus accrued interest on February 28, 2006.

**(d)**     **Ratings of the certificate(s) when the Bank purchased them:** Standard & Poor's • AAA; Moody's • Aaa; Fitch • AAA.

**(e)**     **Current ratings of the certificate(s):** Standard & Poor's • BB+; Moody's • Bb; Fitch • AAA.

**(f)**     **URL of prospectus supplement for this securitization:** http://www.sec.gov/Archives/edgar/data/1090295/000112528204006550/b403120_424b5.txt.

**(g)**     **Registration statement pursuant or traceable to which the certificate(s) were issued:** Certificates in this trust, including the certificate that the Bank purchased, were issued pursuant or traceable to a registration statement filed by IndyMac MBS, Inc. with the SEC on form S-3 on August 15, 2005. Annexed to the registration statement was a prospectus. The prospectus was amended from time to time by prospectus supplements whenever a new series of certificates was issued pursuant or traceable to that registration statement.

**Item 51.**     **Untrue or misleading statements about the LTVs of the mortgage loans:**

In the prospectus supplement, Morgan Stanley made the following statements about the LTVs of the mortgage loans in the collateral pool of this securitization.

---

SCHEDULES OF THE FIRST AMENDED COMPLAINT *(Deutsche, 497839)*

1      (a)     The weighted-average original LTV of the mortgage loans in Group 1 was 71.1%.

2   RAST 2006-A1 Pros. Sup. S-4.

3      (b)     The weighted-average original LTV of the mortgage loans in Group 2 was

4   64.82%. RAST 2006-A1 Pros. Sup. S-4.

5      (c)     The weighted-average original LTV of the mortgage loans in Group 3 was 69.3%.

6   RAST 2006-A1 Pros. Sup. S-4.

7      (d)     "With respect to approximately 28.73% of the group 1 mortgage loans, 21.39% of

8   the group 2 mortgage loans and 26.37% of the group 3 mortgage loans, in each case by the cut-off

9   date principal balance of the mortgage loans in the related loan group . . . [t]he weighted average

10   loan-to-value ratio of such group 1 mortgage loans, group 2 mortgage loans and group 3

11   mortgage loans are approximately 74.81%, 73.29% and 77.88%, respectively . . . ." RAST 2006-

12   A1 Pros. Sup. S-23.

13      (e)     "At origination, all of the Mortgage Loans had a Loan-to-Value Ratio of 100% or

14   less." RAST 2006-A1 Pros. Sup. S-29.

15      (f)     In Schedule 1 of the prospectus supplement ("Mortgage Loan Tables"), Morgan

16   Stanley presented tables of statistics about the mortgage loans in the collateral pool. RAST 2006-

17   A1 Pros. Sup. S-101 to S-108. Each table focused on a certain characteristic of the mortgage

18   loans (for example, current principal balance) and divided the mortgage loans into categories

19   based on that characteristic (for example, loans with current principal balances of $400,000.01 to

20   $500,000, $500,000.01 to $600,000, $600,000.01 to $700,000, etc.). Each table then presented

21   various data about the mortgage loans in each category. In Schedule 1, Morgan Stanley presented

22   a table entitled "Original Loan-to-Value Ratios for the Group 1 Mortgage Loans." This table

23   divided the loans in Loan Group 1 into 14 categories of original LTV (for example, less than

24   30.01%, 30.01% to 35%, 35.01% to 40%, etc.). The table made untrue and misleading statements

25   about the number of mortgage loans, the aggregate principal balance outstanding, and the percent

26   of aggregate principal balance outstanding in each of these categories. RAST 2006-A1 Pros. Sup.

27   S-101.

28

SCHEDULES OF THE FIRST AMENDED COMPLAINT *(Deutsche, 497839)*

(g)     "As of the Cut-off Date, the weighted average original Loan-to-Value Ratio of the group 1 mortgage loans was approximately 71.10%." RAST 2006-A1 Pros. Sup. S-101.

(h)     In Schedule 1, Morgan Stanley presented a table entitled "Original Loan-to-Value Ratios for the Group 2 Mortgage Loans." This table divided the mortgage loans in Loan Group 2 into 15 categories of original LTV (for example, less than 30.01%, 30.01% to 35%, 35.01% to 40%, etc.). The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. RAST 2006-A1 Pros. Sup. S-104.

(i)     "As of the Cut-off Date, the weighted average original Loan-to-Value Ratio of the group 2 mortgage loans was approximately 64.82%." RAST 2006-A1 Pros. Sup. S-104.

(j)     In Schedule 1, Morgan Stanley presented a table entitled "Original Loan-to-Value Ratios for the Group 3 Mortgage Loans." This table divided the mortgage loans in Loan Group 3 into 15 categories of original LTV (for example, less than 30.01%, 30.01% to 35%, 35.01% to 40%, etc.). The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. RAST 2006-A1 Pros. Sup. S-106.

(k)     "As of the Cut-off Date, the weighted average original Loan-to-Value Ratio of the group 3 mortgage loans was approximately 69.30%." RAST 2006-A1 Pros. Sup. S-106.

**Item 61.        Details of the results of the AVM analysis:**

| | |
|---|---:|
| Number of loans | 2,141 |
| Number of properties on which there was enough information for the model to determine a true market value | 1,010 |
| Number of loans on which the stated value was 105% or more of the true market value as reported by the model | 569 |
| Aggregate amount by which the stated values of those properties exceeded their true market values as reported by the model | $59,508,400 |
| Number of loans on which the stated value was 95% or less of the true market value as reported by the model | 161 |
| Aggregate amount by which the true market values of those properties exceed their stated values | $16,585,935 |
| Number of loans with LTVs over 100%, as stated by Defendants | 0 |
| Number of loans with LTVs over 100%, as determined by the model | 97 |

-8-

SCHEDULES OF THE FIRST AMENDED COMPLAINT *(Deutsche, 497839)*

| Weighted-average LTV, as stated by Defendants (Group 3) | 69.3% |
| Weighted-average LTV, as determined by the model (Group 3) | 76.8% |

**Item 64.**      **Evidence from subsequent sales of refinanced properties:**

Of the 2,141 mortgage loans in the collateral pool, 1,409 were taken out to refinance, rather than to purchase, properties. For those 1,409 loans, the value (denominator) in the LTV was an appraised value rather than a sale price. Of those 1,409 properties, 100 were subsequently sold for a total of approximately $48,727,896. The total value ascribed to those same properties in the LTV data reported in the prospectus supplements and other documents sent to the Bank was $61,053,500. Thus, those properties were sold for 79.8% of the value ascribed to them, a difference of 20.2%. This difference cannot be accounted for by declines in house prices in the areas in which those properties were located.

**Item 70.**      **Undisclosed additional liens:**

   **(a)**      **Minimum number of properties with additional liens: 96**

   **(b)**      **Total reduction in equity from additional liens: $10,767,117**

   **(c)**      **Weighted-average reduction in equity from additional liens: 61.4%**

**Item 81.**      **Untrue or misleading statements about compliance with USPAP:**

In the prospectus supplement, Morgan Stanley made the following statement about the appraisals of the properties that secured the mortgage loans originated or acquired by IndyMac Bank, F.S.B.: "To determine the adequacy of the property to be used as collateral, an appraisal is generally made of the subject property in accordance with the Uniform Standards of Profession [*sic*] Appraisal Practice." RAST 2006-A1 Pros. Sup. S-33.

**Item 87.**      **Untrue or misleading statements about owner-occupancy of the properties that secured the mortgage loans:**

In the prospectus supplement, Morgan Stanley made the following statements about the occupancy status of the properties that secured the mortgage loans in the collateral pool of this securitization.

-9-

(a)     In Schedule 1 of the prospectus supplement described in Item 51, Morgan Stanley presented a table entitled "Occupancy Types for the Group 1 Mortgage Loans." This table divided the mortgage loans in Loan Group 1 into the categories "Primary," "Investment," and "Second Home." The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. RAST 2006-A1 Pros. Sup. S-102.

(b)     In the "Occupancy Types for the Group 1 Mortgage Loans" table, Morgan Stanley stated that 88.89% of the mortgage loans in Loan Group 1 were secured by a "Primary" residence, 6.52% by an "Investment" property, and 4.59% by a "Second Home." RAST 2006-A1 Pros. Sup. S-102.

(c)     In Schedule 1, Morgan Stanley presented a table entitled "Occupancy Types for the Group 2 Mortgage Loans." This table divided the mortgage loans in Loan Group 2 into the categories "Primary," "Investment," and "Second Home." The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. RAST 2006-A1 Pros. Sup. S-105.

(d)     In the "Occupancy Types for the Group 2 Mortgage Loans" table, Morgan Stanley stated that 90.63% of the mortgage loans in Loan Group 2 were secured by a "Primary" residence, 7.25% by an "Investment" property, and 2.12% by a "Second Home." RAST 2006-A1 Pros. Sup. S-105.

(e)     In Schedule 1, Morgan Stanley presented a table entitled "Occupancy Types for the Group 3 Mortgage Loans." This table divided the mortgage loans in Loan Group 3 into the categories "Primary," "Investment," and "Second Home." The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. RAST 2006-A1 Pros. Sup. S-107.

(f)     In the "Occupancy Types for the Group 2 Mortgage Loans" table, Morgan Stanley stated that 84.02% of the mortgage loans in Loan Group 2 were secured by a "Primary"

-10-

residence, 13.06% by an "Investment" property, and 2.92% by a "Second Home." RAST 2006-A1 Pros. Sup. S-107.

**Item 95.** **Details of properties that were stated to be owner-occupied, but were not:**

    **(a)**    Number of loans on which the owner of the property instructed tax authorities to send property tax bills to him or her at a different address: 121

    **(b)**    Number of loans on which the owner of the property could have, but did not, designate the property as his or her homestead: 204

    **(c)**    Number of loans on which the owner of the property owned three or more properties: 23

    **(d)**    Eliminating duplicates, number of loans about which one or more of statements (a) through (c) is true: 301

**Item 98.** **Untrue or misleading statements about the underwriting standards of the originators of the mortgage loans:**

On pages S-32 through S-34 of the prospectus supplement, Morgan Stanley made statements about the underwriting guidelines of IndyMac Bank, F.S.B. All of those statements are incorporated herein by reference. In particular, Morgan Stanley stated that:

    **(a)**    "Exceptions to underwriting standards are permitted in situations in which compensating factors exist." RAST 2006-A1 Pros. Sup. S-34.

    **(b)**    "IndyMac Bank's underwriting criteria for traditionally underwritten mortgage loans includes an analysis of the borrower's credit history, ability to repay the mortgage loan and the adequacy of the mortgaged property as collateral." RAST 2006-A1 Pros. Sup. S-32.

**Item 105.** **Early payment defaults:**

    **(a)**    Number of the mortgage loans that suffered EPDs: 15

    **(b)**    Percent of the mortgage loans that suffered EPDs: 0.7%

    **(c)**    Percent of all securitized, non-agency prime (including Alt-A) mortgage loans made at the same time as the loans in the collateral pool that experienced EPDs: 0.44%

**Item 107.** **30+ days delinquencies in this securitization:**

    **(a)**    Number of the mortgage loans that were 30+ days delinquent on March 31, 2010: 473

SCHEDULES OF THE FIRST AMENDED COMPLAINT *(Deutsche, 497839)*

(b)     Percent of the mortgage loans that were 30+ days delinquent on March 31, 2010: 22.1%

(c)     Percent of all mortgage loans in the United States that were 30+ days delinquent on March 31, 2010: 14.7%

**Item 114.**     **Statements about the ratings of the certificate(s) that the Bank purchased:**

On pages S-5 to S-6 and S-99 to S-100 of the prospectus supplement, Morgan Stanley made statements about the ratings assigned to the certificates issued in this securitization. Morgan Stanley stated that the Bank's certificate was rated Aaa by Moody's Investors Service, Inc. and AAA by Standard & Poor's Rating Services. These were the highest ratings available from these two rating agencies.

Morgan Stanley also stated: "The offered certificates will not be offered unless they are assigned the indicated ratings by Standard & Poor's . . . and Moody's Investors Service, Inc. . . ." RAST 2006-A1 Pros. Sup. S-6.

Morgan Stanley also stated: "It is a condition to the issuance of the senior certificates that they be rated AAA by Standard & Poor's . . . and it is a condition to the issuance of the senior certificates . . . that they be rated Aaa by Moody's Investors Service, Inc." RAST 2006-A1 Pros. Sup. S-99.

**Item 117.**     **Summary of loans about which the Defendants made untrue or misleading statements:**

(a)     Number of loans whose LTVs were materially understated: 569

(b)     Number of loans in which the owner's equity was reduced by 5% or more by undisclosed additional liens: 96

(c)     Number of loans that suffered EPDs: 15

(d)     Number of loans in which the properties were stated to be owner-occupied but were not: 301

(e)     Eliminating duplicates, number of loans about which the Defendants made untrue or misleading statements: 817

-12-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (Deutsche, 497839)

1

    **(f)**       **Eliminating duplicates, percent of loans about which the Defendants made untrue or misleading statements: 38.2%**

2

3   3428/001/X119856.v1

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
2    ROBERT A. GOODIN, State Bar No. 061302
          rgoodin@goodinmacbride.com
3    FRANCINE T. RADFORD, State Bar No. 168269
          fradford@goodinmacbride.com
4    ANNE H. HARTMAN, State Bar No. 184556
          ahartman@goodinmacbride.com
5    505 Sansome Street, Suite 900
     San Francisco, California  94111
6    Telephone:     (415) 392-7900
7    Facsimile:     (415) 398-4321

8    GRAIS & ELLSWORTH LLP
     DAVID J. GRAIS (*pro hac application submitted herewith*)
9    KATHRYN C. ELLSWORTH (*pro hac app. submitted herewith*)
     OWEN L. CYRULNIK (*pro hac application submitted herewith*)
10   70 East 55th Street
11   New York, New York 10022
     Telephone:     (212) 755-0100
12   Facsimile:     (212) 755-0052

13   Attorneys for Plaintiff
14   Federal Home Loan Bank of San Francisco

15              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
16              IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO
17

18   FEDERAL HOME LOAN BANK OF SAN             No. CGC-10-497839
19   FRANCISCO,
                                               **VOLUME 2 OF SCHEDULES OF**
20              Plaintiff,                      **FIRST AMENDED COMPLAINT**
                                               **(SCHEDULE 22)**
21   v.

22   DEUTSCHE BANK SECURITIES INC.;
     DEUTSCHE ALT-A SECURITIES, INC.;
23   DB STRUCTURED PRODUCTS, INC.;
     J.P. MORGAN SECURITIES, INC., F/K/A
24   BEAR, STEARNS & CO. INC.;
     STRUCTURED ASSET MORTGAGE
25   INVESTMENTS II, INC.;
     THE BEAR STEARNS COMPANIES, LLC,
26   F/K/A THE BEAR STEARNS
     COMPANIES, INC.;
27   COUNTRYWIDE SECURITIES
28

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

CORPORATION;
CREDIT SUISSE SECURITIES (USA) LLC,
F/K/A CREDIT SUISSE FIRST BOSTON
LLC;
RBS SECURITIES, INC., F/K/A/
GREENWICH CAPITAL MARKETS, INC.;
RBS ACCEPTANCE, INC., F/K/A
GREENWICH CAPITAL ACCEPTANCE,
INC.;
RBS HOLDINGS USA, INC., F/K/A
GREENWICH CAPITAL HOLDINGS,
INC.;
MORGAN STANLEY & CO.
INCORPORATED;
UBS SECURITIES, LLC;
MORTGAGE ASSET SECURITIZATION
TRANSACTIONS, INC.;
MERRILL LYNCH, PIERCE, FENNER &
SMITH, INC.;
WASHINGTON MUTUAL MORTGAGE
SECURITIES CORP.;
WAMU CAPITAL CORP.; AND,
DOES 1-50,

                    Defendants.

-2-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche, 497839*)

## SCHEDULE 22 TO THE AMENDED COMPLAINT

To the extent that this Schedule is incorporated by reference into allegations in the complaint, those allegations are made against Defendants UBS and MAST.

**Item [41].     Details of trust and certificate(s).**

    **(a)     Dealer that sold the certificate(s) to the Bank:** UBS.

    **(b)     Description of the trust:** MASTR Resecuritization Trust, Mortgage Pass Through Certificates, Series 2007-1 was a re-securitization in October 2007. The assets of MASTR Resecuritization Trust 2007-1 consisted of 23 mortgage pass through certificates in 20 securitizations (referred to as the "Underlying Securitizations"). The assets consisted of one certificate in each of the following tranches:

    tranche A-6 of MALT 2004-9;

    tranche A-5 of CWALT 2005-32T1;

    tranche 2-A2 of LMT 2005-1;

    tranche 2-A-3 of RAST 2005-A15;

    tranche 2-A-7 of RAST 2005-A15;

    tranche 4-CB of WMALT 2006-3;

    tranche A-6 of CWALT 2006-12CB;

    tranche I-A8 of MLMI 2006-F1;

    tranche 1-A-10 of CWALT 2006-22R;

    tranche 2-A-1 of CWALT 2006-22R;

    tranche 1-A-8 of CWALT 2006-23CB;

    tranche 2-A-4 of MALT 2006-3;

    tranche 1-A-2 of FHAMS 2006-FA4;

    tranche IA-12 of CMALT 2006-A3;

    tranche 2-A-15 of CWALT 2006-29T1;

    tranche A-2 of RAST 2006-R2;

    tranche A-6 of RAST 2006-A15;

    tranche 2-A-1 of CWALT 2006-40T1;

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1    tranche 1-A-11 of CWALT 2006-43CB;

2    tranche 1-A-4 of MALT 2007-1;

3    tranche 1-A-8 of CWALT 2007-3T1;

4    tranche 2-A-1 of RAST 2007-A5;

5    and tranche 2-A-4 of RAST 2007-A5.

6         MASTR Alternative Loan Trust, Mortgage Pass-Through Certificates, Series 2004-9 was

7    a securitization in August 2004 of 1,665 mortgage loans, in one group. UBS Real Estate

8    Securities Inc. acquired all of the loans in the collateral pool from Countrywide Home Loans,

9    Inc., GreenPoint Mortgage Funding, Inc., National City Mortgage Co., Wells Fargo Bank, N.A.

10   and various undisclosed originators. MALT 2004-9 Pros. Sup. S-7. Wells Fargo Bank, N.A.

11   originated 48.93% of all of the loans in the collateral pool. MALT 2004-9 Pros. Sup. S-31.

12        Alternative Loan Trust, Mortgage Pass-Through Certificates, Series 2005-32T1 was a

13   securitization in June 2005 of 633 mortgage loans,[1] in one group. Countrywide Home Loans, Inc.

14   originated or acquired all of the loans in the collateral pool. CWALT 2005-32T1 Pros. Sup. S-3,

15   S-12 and S-22.

16        Lehman Mortgage Trust, Mortgage Pass-Through Certificates, Series 2005-1 was a

17   securitization in October 2005 of 2,515 mortgage loans, in six pools, eight collateral groups, and

18   nine payment components. Lehman Brothers Bank, FSB and various undisclosed originators

19   originated all of the loans in the collateral pool. Lehman Brothers Bank, FSB originated

20   approximately 97.27% of the loans in the collateral pool. LMT 2005-1 Pros. Sup. S-4, S-48, and

21   S-55.

22        Residential Asset Securitization Trust, Mortgage Pass-Through Certificates, Series 2005-

23   A15 was a securitization in December 2005 of 5,981 mortgage loans, in five groups. IndyMac

24   Bank, F.S.B. originated or acquired all of the loans in the collateral pool. RAST 2005-A15 Pros.

25   Sup. S-4 and S-18.

26

27        [1] CWALT 2005-32T1 was a prefunded securitization. On the closing date of the securitization
     there were 633 mortgage loans in the trust. After the closing date of the securitization, the trust purchased
28   an additional 41 mortgage loans.

-4-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1       Washington Mutual, Mortgage Pass-Through Certificates, WMALT Series 2006-3 was a

2   securitization in March 2006 of 1,780 mortgage loans, in five groups. GreenPoint Mortgage

3   Funding, Inc., New Century Mortgage Corp., MortgageIT, Inc., and various undisclosed

4   originators originated all of the loans in the collateral pool. GreenPoint Mortgage Funding, Inc.

5   originated 27% of the loans, New Century Mortgage Corp. originated 12.8%, and MortgageIT,

6   Inc. originated 12%. WMALT 2006-3 Pros. Sup. S-5 and S-25.

7       *Alternative Loan Trust*, Mortgage Pass-Through Certificates, Series 2006-12CB was a

8   securitization in March 2006 of 2,853 mortgage loans,[2] in one group. Countrywide Home Loans,

9   Inc. originated or acquired all of the loans in the collateral pool. CWALT 2006-12CB Pros. Sup.

10  S-39 and S-23.

11      Merrill Lynch Mortgage Investors Trust, Mortgage Loan Pass-Through Certificates,

12  Series 2006-F1 was a securitization in April 2006 of 455 mortgage loans, in one group. National

13  City Mortgage Co. originated all of the loans in the collateral pool. MLMI 2006-F1 Pros. Sup. S-

14  5 and S-19.

15      Alternative Loan Trust, Resecuritization Pass-Through Certificates, Series 2006-22R was

16  a re-securitization in May 2006 of 3,762 mortgage loans in Alternative Loan Trust, Mortgage

17  Pass-Through Certificates, Series 2006-11CB.

18      Alternative Loan Trust, Mortgage Pass-Through Certificates, Series 2006-23CB was a

19  securitization in June 2006 of 4,737 mortgage loans, in two groups. Countrywide Home Loans,

20  Inc. originated or acquired all of the loans in the collateral pool. CWALT 2006-23CB Pros. Sup.

21  S-30 and S-54.

22      MASTR Alternative Loan Trust, Mortgage Pass-Through Certificates, Series 2006-3 was

23  a securitization in June 2006 of 882 mortgage loans, in three groups. American Home Mortgage

24  Corp., Impac Funding Corporation, Wachovia Mortgage Corporation, and various undisclosed

25  originators originated all of the loans in the collateral pool. American Home Mortgage Corp.

26

27      [2] CWALT 2006-12CB was a prefunded securitization. On the closing date of the securitization

28  there were 2,853 mortgage loans in the trust. After the closing date of the securitization, the trust
    purchased an additional 217 mortgage loans.

-5-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   originated 29.45% of the loans in the collateral pool, Impac Funding Corporation originated

2   15.81%, and Wachovia Mortgage Corporation originated 13.78%. MALT 2006-3 Pros. Sup. S-10

3   and S-32.

4       First Horizon Alternative Mortgage Securities Trust, Mortgage Pass-Through Certificates,

5   Series 2006-FA4 was a securitization in June 2006 of 1,656 mortgage loans, in two pools. First

6   Horizon Home Loan Corporation originated or acquired all of the loans in the collateral pool.

7   FHAMS 2006-FA4 Pros. Sup. S-7.

8       CitiMortgage Alternative Loan Trust, REMIC Pass-Through Certificates, Series 2006-A3

9   was a securitization in August 2006 of 1,186 mortgage loans, in two pools. CitiMortgage, Inc. or

10   its affiliates and various undisclosed originators originated or acquired all of the loans in the

11   collateral pool. CitiMortgage, Inc. and its affiliates originated 74.3% of the loans of which 74%

12   were in Pool I and 77.4% were in Pool II. CMALT 2006-A3 Pros. Sup. 10 and 29 to 30.

13       Alternative Loan Trust, Mortgage Pass-Through Certificates, Series 2006-29T1 was a

14   securitization in August 2006 of 1,083 mortgage loans,[3] in three groups. Countrywide Home

15   Loans, Inc. originated or acquired all of the mortgage loans in the collateral pool. CWALT 2006-

16   29T1 Pros. Sup. S-66.

17       Residential Asset Securitization Trust, Mortgage Pass-Through Certificates, Series 2006-

18   R2 was a re-securitization in October 2006 and consists of a 74.9% percentage interest and a

19   74.64% percentage interest in the IndyMac MBS, Inc., Residential Asset Securitization Trust,

20   Mortgage Pass-Through Certificates, Series 2006-A1, Class 1-A-1 and Class 1-A-3 Certificates,

21   respectively.

22       Residential Asset Securitization Trust, Mortgage Pass-Through Certificates, Series 2006-

23   A15 was a securitization in November 2006 of 786 mortgage loans, in one group. All of the

24   mortgage loans in the collateral pool were originated or acquired by IndyMac Bank, F.S.B. RAST

25   2006-A15 Pros. Sup. S-5 and S-28.

26

27   [3] CWALT 2006-29T1 was a prefunded securitization. On the closing date of the securitization
there were 1,083 mortgage loans in the trust. After the closing date of the securitization, the trust

28   purchased an additional 162 mortgage loans.

-6-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1    *Alternative Loan Trust, Mortgage Pass-Through Certificates, Series 2006-40T1* was a

2    securitization in November 2006 of 879 mortgage loans, in two groups. Countrywide Home

3    Loans, Inc. originated or acquired all of the loans in the collateral pool. CWALT 2006-40T1 Pros.

4    Sup. S-54.

5    Alternative Loan Trust, Mortgage Pass-Through Certificates, Series 2006-43CB was a

6    securitization in December 2006 of 4,211 mortgage loans, in three groups. Countrywide Home

7    Loans, Inc. originated or acquired all of the loans in the collateral pool. CWALT 2006-43CB

8    Pros. Sup. S-71.

9    MASTR Alternative Loan Trust, Mortgage Pass-Through Certificates, Series 2007-1 was

10    a securitization in January 2007 of 656 mortgage loans, in three groups. Wachovia Mortgage

11    Company, Countrywide Home Loans, Inc., Wells Fargo Bank, N.A., and various undisclosed

12    originators originated or acquired all of the loans in the collateral pool. Wachovia Mortgage

13    Company originated 30.32%, Countrywide Home Loans, Inc. originated 26.89%, and Wells

14    Fargo Bank, N.A. originated 25.31%. MALT 2007-1 Pros. Sup. S-11 and S-36.

15    Alternative Loan Trust, Mortgage Pass-Through Certificates, Series 2007-3T1 was a

16    securitization in February 2007 of 1,164 mortgage loans, in two groups. *Countrywide Home*

17    Loans, Inc. originated or acquired all of the loans in the collateral pool. CWALT 2007-3T1 Pros.

18    Sup. S-36.

19    Residential Asset Securitization Trust, Mortgage Pass-Through Certificates, Series 2007-

20    A5 was a securitization in March 2007 of 1,275 mortgage loans, in two groups. IndyMac Bank,

21    F.S.B. originated or acquired all of the loans in the collateral pool. RAST 2007-A5 Pros. Sup. S-5

22    and S-30.

23    **(c)    Description of the certificate(s) that the Bank purchased:** UBS offered and sold

24    to the Bank a senior certificate in MASTR Resecuritization Trust 2007-1, in tranche A-1, for

25    which the Bank paid $444,485,538 plus accrued interest on October 30, 2007.

26    **(d)    Ratings of the certificate(s) when the Bank purchased them:** Moody's •    Aaa.

27    **(e)    Current ratings of the certificate(s):** Moody's •    B2.

28    **(f)    URL of prospectus supplements of underlying securitizations:**

-7-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1    *MALT 2004-9,*

2    http://www.sec.gov/Archives/edgar/data/815018/000095013604002854/file001.htm; *CWALT*

3    *2005-32TI,*

4    http://www.sec.gov/Archives/edgar/data/1269518/000095012905006798/v10087e424b5.txt;

5    *LMT 2005-1,*

6    http://www.sec.gov/Archives/edgar/data/808851/000095013605006854/file001.htm; *RAST 2005-*

7    *A15,* http://www.sec.gov/Archives/edgar/data/1090295/000095011705004972/a41102.txt;

8    *WMALT 2006-3,*

9    http://www.sec.gov/Archives/edgar/data/1317069/000095011706001458/a41627.htm; *CWALT*

10   *2006-12CB,*

11   http://www.sec.gov/Archives/edgar/data/1269518/000095013606002668/file001.htm; *MLMI*

12   *2006-F1,*

13   http://www.sec.gov/Archives/edgar/data/809940/000095012306005271/y19900e424b5.txt;

14   *CWALT 2006-22R,*

15   http://www.sec.gov/Archives/edgar/data/1269518/000095012906006008/v20908b5e424b5.txt;

16   *CWALT 2006-23CB,*

17   http://www.sec.gov/Archives/edgar/data/1269518/000095012906006952/v21591b5e424b5.txt;

18   *MALT 2006-3,*

19   http://www.sec.gov/Archives/edgar/data/815018/000116231806000890/m606combined.htm;

20   *FHAMS 2006-FA4,*

21   http://www.sec.gov/Archives/edgar/data/1362921/000095011706002836/a42286.htm; *CMALT*

22   *2006-A3,* http://www.sec.gov/Archives/edgar/data/811785/000136153006000045/cmsicmalt200-

23   a3424b5.htm;

24   *CWALT 2006-29T1,*

25   http://www.sec.gov/Archives/edgar/data/1269518/000095012406005015/v23274b5e424b5.txt;

26   *RAST 2006-A1,*

27   http://www.sec.gov/Archives/edgar/data/1090295/000112528206006708/b415396_424b5.txt;

28

GOODIN, MacBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-8-

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  *RAST 2006-A15,*

2  http://www.sec.gov/Archives/edgar/data/1090295/000112528206007558/b415899_424b5.txt;

3  *CWALT 2006-40T1,*

4  http://www.sec.gov/Archives/edgar/data/1269518/000095012406007251/v25499b5e424b5.txt;

5  *CWALT 2006 43CB,*

6  http://www.sec.gov/Archives/edgar/data/1269518/000095014807000008/v26026b5e424b5.txt;

7  *MALT 2007-1,*

8  http://www.sec.gov/Archives/edgar/data/815018/000116231807000119/combined.htm; *CWALT*

9  *2007-3T1,*

10  http://www.sec.gov/Archives/edgar/data/1269518/000114420407010646/v067211_424b5.htm;

11  and

12  *RAST 2007-A5,*

13  http://www.sec.gov/Archives/edgar/data/1090295/000089109207001233/e26600_424b5.txt.

14  **Item [49].        Untrue or misleading statements about the LTVs of the mortgage loans:**

15  *MALT 2004-9*

16  　　　In the prospectus supplement for the MALT 2004-9 Securitization, UBS and MAST made

17  the following statements about the LTVs of the mortgage loans in the collateral pool of that

18  securitization.

19  　　　(a)        The original LTVs ranged from 16.99% to 100%, with a weighted-average original

20  LTV of 82.89%. MALT 2004-9 Pros. Sup. S-9.

21  　　　(b)        "Approximately 50.93% of the Loans, by Cut-Off Date Pool Balance for all of the

22  Loans, had LTV Ratios at origination of greater than 80% . . . ." MALT 2004-9 Pros. Sup. S-28.

23  　　　(c)        In Annex B of the prospectus supplement ("Mortgage Loan Statistical

24  Information"), UBS and MAST presented tables of statistics about the mortgage loans in the

25  collateral pool. MALT 2004-9 Pros. Sup. B-1 to B-5. Each table focused on a certain

26  characteristic of the loans (for example, original principal balance) and divided the loans into

27  categories based on that characteristic (for example, loans with original principal balances of *$1*

28  *to $25,000, $25,001 to $50,000, $50,001 to $75,000, etc.*). Each table then presented various data

-9-

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  about the loans in each category. One of the tables, entitled "Original Loan-to-Value Ratios,"

2  divided the loans in the collateral pool into 11 categories of original LTV (for example, 50% or

3  less, 50.01% to 55%, 55.01% to 60%, etc.). The table made untrue and misleading statements

4  about the number of mortgage loans, the aggregate principal balance outstanding, and the percent

5  of aggregate principal balance outstanding in each of these categories. MALT 2004-9 *Pros. Sup.*

6  B-2.

7        (d)    "As of the Cut-Off Date, the weighted average original LTV Ratio of the Loans in

8  the aggregate, by Cut-Off Date Pool Balance of the Loans in the aggregate, was approximately

9  82.89%." MALT 2004-9 Pros. Sup. B-2.

10  *CWALT 2005-32T1*

11       The prospectus supplement for the CWALT 2005-32T1 Securitization presented the

12  following statements about the LTVs of the mortgage loans in the collateral pool of that

13  securitization.

14        (a)    "No Initial Mortgage Loan had a Loan-to-Value Ratio at origination of more than

15  95.00%." CWALT 2005-32T1 Pros. Sup. S-13.

16        (b)    "The Mortgage Pool" section of the prospectus supplement presented tables of

17  statistics about the mortgage loans in the collateral pool. CWALT 2005-32T1 Pros. Sup. S-15 to

18  S-19. Each table focused on a certain characteristic of the loans (for example, current mortgage

19  loan principal balance) and divided the loans into categories based on that characteristic (for

20  example, loans with current principal balances of $250,000.01 to $300,000, $350,000.01 to

21  $400,000, $400,000.01 to $450,000, etc.). Each table then presented various data about the loans

22  in each category. Among these data was the "Weighted Average Original Loan-to-Value Ratio."

23  There were 10 such tables in "The Mortgage Pool" section for the loans in the collateral pool. In

24  each table, the number of categories into which the loans were divided ranged from three to 20.

25  Thus, "The Mortgage Pool" section presented hundreds of statements about the original LTVs of

26  the loans in the collateral pool. CWALT 2005-32T1 Pros. Sup. S-13 to S-19.

27        (c)    "As of the initial cut-off date, the weighted average original Loan-to-Value Ratio

28  of the Initial Mortgage Loans is approximately 74.04%." CWALT 2005-32T1 Pros. Sup. S-17.

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*LMT 2005-1*

1  The prospectus supplement for the LMT 2005-1 Securitization presented the following statements about the LTVs of the mortgage loans in the collateral pool of that securitization.

2  (a)  The original LTVs of the mortgage loans in Pool 1 ranged from 15.56% to 80% with a weighted-average original LTV of 63.99%. LMT 2005-1 Pros. Sup. S-6.

3  (b)  The original LTVs of the mortgage loans in Pool 2 ranged from 24.07% to 87.57% with a weighted-average original LTV of 64.69%. LMT 2005-1 Pros. Sup. S-6.

4  (c)  The original LTVs of the mortgage loans in Pool 3 ranged from 17.67% to 100% with a weighted-average original LTV of 79.5%. LMT 2005-1 Pros. Sup. S-7.

5  (d)  The original LTVs of the mortgage loans in Pool 4 ranged from 27.79% to 91.85% with a weighted-average original LTV of 68.42%. LMT 2005-1 Pros. Sup. S-7.

6  (e)  The original LTVs of the mortgage loans in Pool 5 ranged from 18.82% to 95% with a weighted-average original LTV of 72.82%. LMT 2005-1 Pros. Sup. S-8.

7  (f)  The original LTVs of the mortgage loans in Pool 6 ranged from 14.36% to 90% with a weighted-average original LTV of 58.86%. LMT 2005-1 Pros. Sup. S-8.

8  (g)  The original LTVs of the mortgage loans in Collateral Group P ranged from 14.36% to 95% with a weighted-average original LTV of 62.63%. LMT 2005-1 Pros. Sup. S-10.

9  (h)  The original LTVs of the mortgage loans in Collateral Group 1 ranged from 15.56% to 80% with a weighted-average original LTV of 63.98%. LMT 2005-1 Pros. Sup. S-10.

10  (i)  The original LTVs of the mortgage loans in Collateral Group 2 ranged from 24.07% to 87.57% with a weighted-average original LTV 64.75%. LMT 2005-1 Pros. Sup. S-11.

11  (j)  The original LTVs of the mortgage loans in Collateral Group 3 ranged from 17.67% to 100% with a weighted-average original LTV of 79.5%. LMT 2005-1 Pros. Sup. S-11.

12  (k)  The original LTVs of the mortgage loans in Collateral Group 4 ranged from 27.79% to 91.85% with a weighted-average original LTV of 68.42%. LMT 2005-1 Pros. Sup. S-12.

13  (l)  The original LTVs of the mortgage loans in Collateral Group 5 ranged from 18.82% to 95% with a weighted-average original LTV of 72.82%. LMT 2005-1 Pros. Sup. S-12.

-11-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1    (m)    The original LTVs of the mortgage loans in Collateral Group 6 ranged from

2    14.36% to 90% with a weighted-average original LTV of 55.74%. LMT 2005-1 Pros. Sup. S-13.

3    (n)    The original LTVs of the mortgage loans in Collateral Group 7 ranged from

4    17.21% to 90% with a weighted-average original LTV of 61.34%. LMT 2005-1 Pros. Sup. S-13.

5    (o)    The original LTVs of the mortgage loans in the Pool AX(1) payment component

6    ranged from 15.56% to 80% with a weighted-average original LTV of 63.07%. LMT 2005-1

7    Pros. Sup. S-50.

8    (p)    The original LTVs of the mortgage loans in the Pool PAX(1) payment component

9    ranged from 17.65% to 80% with a weighted-average original LTV of 64.7%. LMT 2005-1 Pros.

10   Sup. S-50.

11   (q)    The original LTVs of the mortgage loans in the Pool AX(2) payment component

12   ranged from 26.67% to 86.96% with a weighted-average original LTV of 66.63%. LMT 2005-1

13   Pros. Sup. S-50.

14   (r)    The original LTVs of the mortgage loans in the Pool PAX(2) payment component

15   ranged from 37.93% to 87.57% with a weighted-average original LTV of 67.28%. LMT 2005-1

16   Pros. Sup. S-51.

17   (s)    The original LTVs of the mortgage loans in the Pool AX(4) payment component

18   ranged from 27.79% to 91.85% with a weighted-average original LTV of 66.81%. LMT 2005-1

19   Pros. Sup. S-51.

20   (t)    The original LTVs of the mortgage loans in the Pool PAX(4) payment component

21   ranged from 32.31% to 87.32% with a weighted-average original LTV of 72.71%. LMT 2005-1

22   Pros. Sup. S-51.

23   (u)    The original LTVs of the mortgage loans in the Pool AX(5) payment component

24   ranged from 18.82% to 95% with a weighted-average original LTV of 72.74%. LMT 2005-1

25   Pros. Sup. S-52.

26   (v)    The original LTVs of the mortgage loans in the Pool AX(6) payment component

27   ranged from 14.36% to 90% with a weighted-average original LTV of 57.98%. LMT 2005-1

28   Pros. Sup. S-52.

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-12-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1      (w)     The original LTVs of the mortgage loans in the Pool PAX(6) payment component

2  ranged from 26.53% to 80% with a weighted-average original LTV of 61.11%. LMT 2005-1

3  Pros. Sup. S-52.

4      (x)     Annex B of the prospectus supplement ("Certain Characteristics of the Mortgage

5  Loans") presented tables of statistics about the mortgage loans in the collateral pool. LMT 2005-1

6  Pros. Sup. S-B-1 to S-B-26. Each table focused on a certain characteristic of the loans (for

7  example, cut-off date scheduled principal balance) and divided the loans into categories based on

8  that characteristic (for example, loans with scheduled principal balances of *$0.01 to $50,000*,

9  *$50,000.01 to $100,000, $100,000.01 to $150,000*, etc.). Each table then presented various data

10  about the loans in each category. One of the tables, entitled "Original Loan-to-Value Ratios –

11  Collateral Group P," divided the mortgage loans in Collateral Group P into nine categories of

12  original LTV (for example, 10.01% to 20%, 20.01% to 30%, 30.01% to 40%, etc.). The table

13  made untrue and misleading statements about the number of mortgage loans, the aggregate

14  principal balance outstanding, and the percent of aggregate principal balance outstanding in each

15  of these categories. LMT 2005-1 Pros. Sup. S-B-2.

16      (y)     "The weighted average original loan-to-value ratio [of the mortgage loans in

17  Collateral Group P] is approximately 62.63%." LMT 2005-1 Pros. Sup. S-B-2.

18      (z)     Annex B of the prospectus supplement ("Certain Characteristics of the Mortgage

19  Loans"), presented a table entitled "Original Loan-to-Value Ratios – Collateral Group 1." This

20  table divided the mortgage loans in Collateral Group 1 into seven categories of original LTV (for

21  example, 10.01% to 20%, 20.01% to 30%, 30.01% to 40%, etc.). The table made untrue and

22  misleading statements about the number of mortgage loans, the aggregate principal balance

23  outstanding, and the percent of aggregate principal balance outstanding in each of these

24  categories. LMT 2005-1 Pros. Sup. S-B-5.

25      (aa)     "The weighted average original loan-to-value ratio [of the mortgage loans in

26  Collateral Group 1] is approximately 63.98%." LMT 2005-1 Pros. Sup. S-B-5.

27      (bb)     Annex B of the prospectus supplement ("Certain Characteristics of the Mortgage

28  Loans"), presented a table entitled "Original Loan-to-Value Ratios – Collateral Group 2." This

-13-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   table divided the mortgage loans in Collateral Group 2 into seven categories of original LTV (for

2   example, 20.01% to 30%, 30.01% to 40%, 40.01% to 50%, etc.). The table made untrue and

3   misleading statements about the number of mortgage loans, the aggregate principal balance

4   outstanding, and the percent of aggregate principal balance outstanding in each of these

5   categories. LMT 2005-1 Pros. Sup. S-B-8.

6       (cc)   "The weighted average original loan-to-value ratio [of the mortgage loans in

7   Collateral Group 2] is approximately 64.75%." LMT 2005-1 Pros. Sup. S-B-8.

8       (dd)   Annex B of the prospectus supplement ("Certain Characteristics of the Mortgage

9   Loans"), presented a table entitled "Original Loan-to-Value Ratios – Collateral Group 3." This

10   table divided the mortgage loans in Collateral Group 3 into eight categories of original LTV (for

11   example, 10.01% to 20%, 20.01% to 30%, 30.01% to 40%, etc.). The table made untrue and

12   misleading statements about the number of mortgage loans, the aggregate principal balance

13   outstanding, and the percent of aggregate principal balance outstanding in each of these

14   categories. LMT 2005-1 Pros. Sup. S-B-11.

15       (ee)   "The weighted average original loan-to-value ratio [of the mortgage loans in

16   Collateral Group 3] is approximately 79.50%." LMT 2005-1 Pros. Sup. S-B-11.

17       (ff)   Annex B of the prospectus supplement ("Certain Characteristics of the Mortgage

18   Loans"), presented a table entitled "Original Loan-to-Value Ratios – Collateral Group 4." This

19   table divided the mortgage loans in Collateral Group 4 into eight categories of original LTV (for

20   example, 20.01% to 30%, 30.01% to 40%, 40.01% to 50%, etc.). The table made untrue and

21   misleading statements about the number of mortgage loans, the aggregate principal balance

22   outstanding, and the percent of aggregate principal balance outstanding in each of these

23   categories. LMT 2005-1 Pros. Sup. S-B-14.

24       (gg)   "The weighted average original loan-to-value ratio [of the mortgage loans in

25   Collateral Group 4] is approximately 68.42%." LMT 2005-1 Pros. Sup. S-B-14.

26       (hh)   Annex B of the prospectus supplement ("Certain Characteristics of the Mortgage

27   Loans"), presented a table entitled "Original Loan-to-Value Ratios – Collateral Group 5." This

28   table divided the mortgage loans in Collateral Group 5 into nine categories of original LTV (for

-14-

1   example, 10.01% to 20%, 20.01% to 30%, 30.01% to 40%, etc.). The table made untrue and

2   misleading statements about the number of mortgage loans, the aggregate principal balance

3   outstanding, and the percent of aggregate principal balance outstanding in each of these

4   categories. LMT 2005-1 Pros. Sup. S-B-17.

5       (ii)    "The weighted average original loan-to-value ratio [of the mortgage loans in

6   Collateral Group 5] is approximately 72.82%." LMT 2005-1 Pros. Sup. S-B-17.

7       (jj)    Annex B of the prospectus supplement ("Certain Characteristics of the Mortgage

8   Loans") presented a table entitled "Original Loan-to-Value Ratios – Collateral Group 6." This

9   table divided the mortgage loans in Collateral Group 6 into eight categories of original LTV (for

10  example, 10.01% to 20%, 20.01% to 30%, 30.01% to 40%, etc.). The table made untrue and

11  misleading statements about the number of mortgage loans, the aggregate principal balance

12  outstanding, and the percent of aggregate principal balance outstanding in each of these

13  categories. LMT 2005-1 Pros. Sup. S-B-20.

14      (kk)   "The weighted average original loan-to-value ratio [of the mortgage loans in

15  Collateral Group 6] is approximately 55.74%." LMT 2005-1 Pros. Sup. S-B-20.

16      (ll)    Annex B of the prospectus supplement ("Certain Characteristics of the Mortgage

17  Loans") presented a table entitled "Original Loan-to-Value Ratios – Collateral Group 7." This

18  table divided the mortgage loans in Collateral Group 7 into eight categories of original LTV (for

19  example, 10.01% to 20%, 20.01% to 30%, 30.01% to 40%, etc.). The table made untrue and

20  misleading statements about the number of mortgage loans, the aggregate principal balance

21  outstanding, and the percent of aggregate principal balance outstanding in each of these

22  categories. LMT 2005-1 Pros. Sup. S-B-23.

23      (mm)  "The weighted average original loan-to-value ratio [of the mortgage loans in

24  Collateral Group 7] is approximately 61.34%." LMT 2005-1 Pros. Sup. S-B-23.

25  *RAST 2005-A15*

26      The prospectus supplement for the RAST 2005-A15 Securitization presented the

27  following statements about the LTVs of the mortgage loans in the collateral pool of that

28  securitization.

-15-

SCHEDULES OF *THE* FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

(a)     Of the mortgage loans in Loan Group 1, 25.8% had a weighted-average LTV of 68.67%. RAST 2005-A15 Pros. Sup. S-13.

(b)     Of the mortgage loans in Loan Group 2, 32.17% had a weighted-average LTV of 72.35%. RAST 2005-A15 Pros. Sup. S-13.

(c)     Of the mortgage loans in Loan Group 3, 11.01% had a weighted-average LTV of 66.87%. RAST 2005-A15 Pros. Sup. S-13.

(d)     Of the mortgage loans in Loan Group 4, 13.23% had a weighted-average LTV of 75.29%. RAST 2005-A15 Pros. Sup. S-13.

(e)     Of the mortgage loans in Loan Group 5, 17.79% had a weighted-average LTV of 72.01%. RAST 2005-A15 Pros. Sup. S-13.

(f)     "At origination, all of the Mortgage Loans had a Loan-to-Value Ratio of 100% or less." RAST 2005-A15 Pros. Sup. S-20.

(g)     "The Mortgage Pool" section of the prospectus supplement presented tables of statistics about the mortgage loans in the collateral pool. RAST 2005-A15 Pros. Sup. S-18 to S-36. Each table focused on a certain characteristic of the loans (for example, current principal balance) and divided the loans into categories based on that characteristic (for example, loans with current principal balances of $40,000.01 to $60,000, $60,000.01 to $80,000, $80,000.01 to $100,000, etc.). Each table then presented various data about the loans in each category. One of the tables, entitled "Original Loan-to-Value Ratios for the Group 1 Mortgage Loans," divided the loans in Group 1 into 10 categories of original LTV (for example, 15.09% to 50%, 50.01% to 55%, 55.01% to 60%, etc.). The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. RAST 2005-A15 Pros. Sup. S-22.

(h)     "As of the Cut-off Date, the weighted average original Loan-to-Value Ratio of the group 1 mortgage loans was approximately 68.67%." RAST 2005-A15 Pros. Sup. S-22.

(i)     "The Mortgage Pool" section presented a table entitled "Original Loan-to-Value Ratios for the Group 2 Mortgage Loans." This table divided the mortgage loans in Group 2 into 11 categories of original LTV (for example, 11.08% to 50%, 50.01% to 55%, 55.01% to 60%,

-16-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1    etc.). The table made untrue and misleading statements about the number of mortgage loans, the

2    aggregate principal balance outstanding, and the percent of aggregate principal balance

3    outstanding in each of these categories. RAST 2005-A15 Pros. Sup. S-25.

4         (j)    "As of the Cut-off Date, the weighted average original Loan-to-Value Ratio of the

5    group 2 mortgage loans was approximately 72.34%." RAST 2005-A15 Pros. Sup. S-25.

6         (k)    "The Mortgage Pool" section presented a table entitled "Original Loan-to-Value

7    Ratios for the Group 3 Mortgage Loans." This table divided the mortgage loans in Group 3 into

8    11 categories of original LTV (for example, 17.21% to 50%, 50.01% to 55%, 55.01% to 60%,

9    etc.). The table made untrue and misleading statements about the number of mortgage loans, the

10   aggregate principal balance outstanding, and the percent of aggregate principal balance

11   outstanding in each of these categories. RAST 2005-A15 Pros. Sup. S-28.

12        (l)    "As of the Cut-off Date, the weighted average original Loan-to-Value Ratio of the

13   group 3 mortgage loans was approximately 66.88%." RAST 2005-A15 Pros. Sup. S-28.

14        (m)    "The Mortgage Pool" section presented a table entitled "Original Loan-to-Value

15   Ratios for the Group 4 Mortgage Loans." This table divided the mortgage loans in Group 4 into

16   11 categories of original LTV (for example, 14.94% to 50%, 50.01% to 55%, 55.01% to 60%,

17   etc.). The table made untrue and misleading statements about the number of mortgage loans, the

18   aggregate principal balance outstanding, and the percent of aggregate principal balance

19   outstanding in each of these categories. RAST 2005-A15 Pros. Sup. S-31.

20        (n)    "As of the Cut-off Date, the weighted average original Loan-to-Value Ratio of the

21   group 4 mortgage loans was approximately 75.29%." RAST 2005-A15 Pros. Sup. S-31.

22        (o)    "The Mortgage Pool" section presented a table entitled "Original Loan-to-Value

23   Ratios for the Group 5 Mortgage Loans." This table divided the mortgage loans in Group 5 into

24   10 categories of original LTV (for example, 30.56% to 50%, 50.01% to 55%, 55.01% to 60%,

25   etc.). The table made untrue and misleading statements about the number of mortgage loans, the

26   aggregate principal balance outstanding, and the percent of aggregate principal balance

27   outstanding in each of these categories. RAST 2005-A15 Pros. Sup. S-34.

28

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-17-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    (p)    "As of the Cut-off Date, the weighted average original Loan-to-Value Ratio of the

2    group 5 mortgage loans was approximately 72.02%." RAST 2005-A15 Pros. Sup. S-34.

3    *WMALT 2006-3*

4    The prospectus supplement for the WMALT 2006-3 Securitization presented the

5    following statements about the LTVs of the mortgage loans in the collateral pool of that

6    securitization.

7    (a)    As of the cut-off date, 1% of the loans in Loan Group 1 had an LTV in excess of

8    80%. WMALT 2006-3 Pros. Sup. S-41.

9    (b)    As of the cut-off date, 2.1% of the loans in Loan Group 2 had an LTV in excess of

10    80%. WMALT 2006-3 Pros. Sup. S-42.

11    (c)    As of the cut-off date, 0.9% of the loans in Loan Group 3 had an LTV in excess of

12    80%. WMALT 2006-3 Pros. Sup. S-42.

13    (d)    As of the cut-off date, 8.1% of the loans in Loan Group 4 had an LTV in excess of

14    80%. WMALT 2006-3 Pros. Sup. S-42.

15    (e)    As of the cut-off date, 2.4% of the loans in Loan Group 5 had an LTV in excess of

16    80%. WMALT 2006-3 Pros. Sup. S-42.

17    (f)    Appendix B of the prospectus supplement presented tables of statistics about the

18    mortgage loans in the collateral pool. WMALT 2006-3 Pros. Sup. S-90 to S-104. Each table

19    focused on a certain characteristic of the loans (for example, original principal balance) and

20    divided the loans into categories based on that characteristic (for example, loans with original

21    principal balances of $400,001 to $450,000, $450,001 to $500,000, $500,001 to $550,000, etc.).

22    Each table then presented various data about the loans in each category. One of the tables, entitled

23    "Current Loan-to-Value Ratios of the Group 1 Loans," divided the mortgage loans in Loan Group

24    1 into five categories of current LTV (for example, 60% or less, 60.01% to 70%, 70.01% to 75%,

25    etc.). The table made untrue and misleading statements about the number of mortgage loans, the

26    aggregate principal balance outstanding, and the percent of aggregate principal balance

27    outstanding in each of these categories. WMALT 2006-3 Pros. Sup. S-90.

28

-18-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

(g)     "At origination, the weighted average loan-to-value ratio of the group 1 loans was approximately 71.3%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 1 loans was approximately 71.3%." WMALT 2006-3 Pros. Sup. S-90.

(h)     "As of the Cut-off Date, the weighted average loan-to-value ratio of the group 1 loans originated under a reduced or no documentation program was approximately 71.8%." WMALT 2006-3 Pros. Sup. S-91.

(i)     "As of the Cut-off Date, the weighted average loan-to-value ratio of the group 1 loans originated under a no ratio program was approximately 61.9%." WMALT 2006-3 Pros. Sup. S-91.

(j)     Appendix B presented a table entitled "Current Loan-to-Value Ratios of the Group 2 Loans." This table divided the mortgage loans in Loan Group 2 into six categories of current LTV (for example, 60% or less, 60.01% to 70%, 70.01% to 75%, etc.). The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2006-3 Pros. Sup. S-93.

(k)     "At origination, the weighted average loan-to-value ratio of the group 2 loans was approximately 74.9%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 2 loans was approximately 74.9%." WMALT 2006-3 Pros. Sup. S-93.

(l)     "As of the Cut-off Date, the weighted average loan-to-value ratio of the group 2 loans originated under a reduced or no documentation program was approximately 75.5%." WMALT 2006-3 Pros. Sup. S-94.

(m)     "As of the Cut-off Date, the weighted average loan-to-value ratio of the group 2 loans originated under a no ratio program was approximately 69.2%." WMALT 2006-3 Pros. Sup. S-94.

(n)     Appendix B presented a table entitled "Current Loan-to-Value Ratios of the Group 3 Loans." This table divided the mortgage loans in Loan Group 3 into six categories of current LTV (for example, 60% or less, 60.01% to 70%, 70.01% to 75%, etc.). The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance

GOODIN, MacBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-19-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

GOODIN, MacBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   outstanding, and the percent of aggregate principal balance outstanding in each of these

2   categories. WMALT 2006-3 Pros. Sup. S-96.

3          (o)     "At origination, the weighted average loan-to-value ratio of the group 3 loans was

4   approximately 73.0%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the

5   group 3 loans was approximately 72.9%." WMALT 2006-3 Pros. Sup. S-96.

6          (p)     "As of the Cut-off Date, the weighted average loan-to-value ratio of the group 3

7   loans originated under a reduced or no documentation program was approximately 71.3%."

8   WMALT 2006-3 Pros. Sup. S-97.

9          (q)     "As of the Cut-off Date, the weighted average loan-to-value ratio of the group 3

10   loans originated under a no ratio program was approximately 73.4%." WMALT 2006-3 Pros.

11   Sup. S-97.

12          (r)     Appendix B presented a table entitled "Current Loan-to-Value Ratios of the Group

13   4 Loans." This table divided the mortgage loans in Loan Group 4 into eight categories of current

14   LTV (for example, 60% or less, 60.01% to 70%, 70.01% to 75%, etc.). The table made untrue and

15   misleading statements about the number of mortgage loans, the aggregate principal balance

16   outstanding, and the percent of aggregate principal balance outstanding in each of these

17   categories. WMALT 2006-3 Pros. Sup. S-99.

18          (s)     "At origination, the weighted average loan-to-value ratio of the group 4 loans was

19   approximately 77.3%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the

20   group 4 loans was approximately 77.2%." WMALT 2006-3 Pros. Sup. S-99.

21          (t)     "As of the Cut-off Date, the weighted average loan-to-value ratio of the group 4

22   loans originated under a reduced or no documentation program was approximately 76.7%."

23   WMALT 2006-3 Pros. Sup. S-100.

24          (u)     "As of the Cut-off Date, the weighted average loan-to-value ratio of the group 4

25   loans originated under a no ratio program was approximately 78.1%." WMALT 2006-3 Pros.

26   Sup. S-100.

27          (v)     Appendix B presented a table entitled "Current Loan-to-Value Ratios of the Group

28   5 Loans." This table divided the mortgage loans in Loan Group 5 into seven categories of current

-20-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1  LTV (for example, 60% or less, 60.01% to 70%, 70.01% to 75%, etc.). The table made untrue and

2  misleading statements about the number of mortgage loans, the aggregate principal balance

3  outstanding, and the percent of aggregate principal balance outstanding in each of these

4  categories. WMALT 2006-3 Pros. Sup. S-102.

5      (w)    "At origination, the weighted average loan-to-value ratio of the group 5 loans was

6  approximately 65.3%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the

7  group 5 loans was approximately 64.6%." WMALT 2006-3 Pros. Sup. S-102.

8      (x)    "As of the Cut-off Date, the weighted average loan-to-value ratio of the group 5

9  loans originated under a reduced or no documentation program was approximately 64.3%."

10 WMALT 2006-3 Pros. Sup. S-103.

11     (y)    "As of the Cut-off Date, the weighted average loan-to-value ratio of the group 5

12 loans originated under a no ratio program was approximately 60.0%." WMALT 2006-3 Pros.

13 Sup. S-103.

14     In the prospectus supplement for the CWALT 2006-12CB Securitization, UBS made the

15 following statements about the LTVs of the mortgage loans in the collateral pool of that

16 securitization.

17     (a)    As of the initial cut-off date, the weighted-average original LTV of the initial

18 mortgage loans in the collateral pool was 73.69%. CWALT 2006-12CB Pros. Sup. S-4.

19     (b)    "Except for one Initial Mortgage Loan, no Initial Mortgage Loan had a Loan-to-

20 Value Ratio at origination of more than 95.00%." CWALT 2006-12CB Pros. Sup. S-25.

21     (c)    In "The Mortgage Pool" section of the prospectus supplement, UBS presented

22 tables of statistics about the mortgage loans in the collateral pool. Each table focused on a certain

23 characteristic of the loans (for example, current mortgage loan principal balance) and divided the

24 loans into categories based on that characteristic (for example, loans with current principal

25 balances of $0.01 to $50,000, $50,000.01 to $100,000, $100,000.01 to $150,000, etc.). Each table

26 then presented various data about the loans in each category. Among these data was the

27 "Weighted Average Original Loan-to-Value Ratio." There were 12 such tables in "The Mortgage

28 Pool" section for all of the loans in the collateral pool. In each table, the number of categories into

-21-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche, 497839*)

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  which the loans were divided ranged from three to 37. Thus, in "The Mortgage Pool" section,

2  UBS made hundreds of statements about the original LTVs of the loans in the collateral pool.

3  CWALT 2006-12CB Pros. Sup. S-23 to S-35.

4      (d)    "As of the initial cut-off date, the weighted average original Loan-to-Value Ratio

5  of the Initial Mortgage Loans was approximately 73.69%." CWALT 2006-12CB Pros. Sup. S-31.

6  *MLMI 2006-F1*

7      The prospectus supplement for the MLMI 2006-F1 Securitization presented the following

8  statements about the LTVs of the mortgage loans in the collateral pool of that securitization.

9      (a)    "The weighted average Original Loan-to-Value Ratio [of the mortgage loans] as of

10  the Cut-off Date was approximately 69.68%." MLMI 2006-F1 Pros. Sup. S-19.

11      (b)    "The weighted average Original Loan-to-Value Ratio at origination of the

12  Mortgage Loans was approximately 69.68%, and no Mortgage Loan had an Original Loan-to-

13  Value Ratio at origination exceeding 90.00%." MLMI 2006-F1 Pros. Sup. S-20.

14      (c)    Annex II of the prospectus supplement ("Mortgage Loan Tables") presented tables

15  of statistics about the mortgage loans in the collateral pool. MLMI 2006-F1 Pros. Sup. II-1 to II-

16  5. Each table focused on a certain characteristic of the loans (for example, cut-off date stated

17  principal balance) and divided the loans into categories based on that characteristic (for example,

18  loans with cut-off date stated principal balances of $0.01 to $100,000, $100,000.01 to $200,000,

19  $200,000.01 to $300,000, etc.). Each table then presented various data about the loans in each

20  category. One of the tables, entitled "Original Loan-to-Value Ratios" divided the mortgage loans

21  in the collateral pool into 10 categories of original LTV (for example, 10.01% to 20%, 20.01% to

22  30%, 30.01% to 40%, etc.). The table made untrue and misleading statements about the number

23  of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate

24  principal balance outstanding in each of these categories. MLMI 2006-F1 Pros. Sup. II-2.

25  *CWALT 2006-23CB*

26      The prospectus supplement for the CWALT 2006-23CB Securitization presented the

27  following statements about the LTVs of the mortgage loans in the collateral pool of that

28  securitization.

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-22-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

GOODIN, MacBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    (a)    As of the cut-off date, the weighted-average original LTV of the mortgage loans in

2    Loan Group 1 was 71.84%. CWALT 2006-23CB Pros. Sup. S-5.

3    (b)    As of the cut-off date, the weighted-average original LTV of the mortgage loans in

4    Loan Group 2 was 75.03%. CWALT 2006-23CB Pros. Sup. S-5.

5    (c)    "No mortgage loan in any loan group had a Loan-to-Value Ratio at origination or

6    on the closing date of more than 97.00%." CWALT 2006-23CB Pros. Sup. S-32.

7    (d)    "The Mortgage Pool" section of the prospectus supplement presented tables of

8    statistics about the mortgage loans in the collateral pool. CWALT 2006-23CB Pros. Sup. S-30 to

9    S-52. Each table focused on a certain characteristic of the loans (for example, current mortgage

10    loan principal balance) and divided the loans into categories based on that characteristic (for

11    example, loans with current principal balances of $0.01 to $50,000, 50,000.01 to $100,000,

12    $100,000.01 to $150,000, etc.). Each table then presented various data about the loans in each

13    category. Among these data was the "Weighted Average Original Loan-to-Value Ratio." There

14    were 12 such tables in "The Mortgage Pool" section for the loans in Loan Group 1. In each table,

15    the number of categories into which the loans were divided ranged from three to 65. Thus, "The

16    Mortgage Pool" section presented hundreds of statements about the original LTVs of the loans in

17    Loan Group 1. CWALT 2006-23CB Pros. Sup. S-35 to S-43.

18    (e)    "As of the cut-off date, the weighted-average original Loan-to-Value Ratio of the

19    mortgage loans in loan group 1 was approximately 71.84%." CWALT 2006-23CB Pros. Sup. S-

20    39.

21    (f)    "The Mortgage Pool" section presented similar tables of statistics about the

22    mortgage loans in Loan Group 2. In these tables, the prospectus supplement similarly presented

23    hundreds of statements about the original LTVs of the loans in Loan Group 2. CWALT 2006-

24    23CB Pros. Sup. S-44 to S-52.

25    (g)    "As of the cut-off date, the weighted-average original Loan-to-Value Ratio of the

26    mortgage loans in loan group 2 was approximately 75.03%." CWALT 2006-23CB Pros. Sup. S-

27    48.

28    *MALT 2006-3*

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    In the prospectus supplement for the MALT 2006-3 Securitization, UBS and MAST made

2    the following statements about the LTVs of the mortgage loans in the collateral pool of that

3    securitization.

4        (a)      The original LTVs of the mortgage loans in the aggregate ranged from 5.58% to

5    100%, with a weighted average original LTV of 70.92%. MALT 2006-3 Pros. Sup. S-14.

6        (b)      The original LTVs of the mortgage loans in Pool 1 ranged from 24.55% to 100%,

7    with a weighted average original LTV of 72.15%. MALT 2006-3 Pros. Sup. S-14.

8        (c)      The original LTVs of the mortgage loans in Collateral Group 1 ranged from

9    24.55% to 100%, with a weighted average original LTV of 69.83%. MALT 2006-3 Pros. Sup. S-

10   15.

11       (d)      The original LTVs of the mortgage loans in Collateral Group 2 ranged from

12   24.55% to 100%, with a weighted average original LTV of 74.08%. MALT 2006-3 Pros. Sup. S-

13   16.

14       (e)      The original LTVs of the mortgage loans in Collateral Group 3 ranged from 5.58%

15   to 100%, with a weighted average original LTV of 60.45%. MALT 2006-3 Pros. Sup. S-16.

16       (f)      "Approximately 4.88% of the loans by cut-off date pool balance of the loans had

17   loan to value ratios at origination in excess of 80%." MALT 2006-3 Pros. Sup. S-24.

18       (g)      "Approximately 4.88% of the Loans, by Cut-Off Date Pool Balance for all of the

19   Loan Groups, had LTV Ratios at origination of greater than 80% . . . ." MALT 2006-3 Pros. Sup.

20   S-31.

21       (h)      "[A]s of the Cut-off Date, the range of original Loan-to-Value Ratios of the Loans

22   is 5.58% to 100.00%, and approximately 4.88% of the Loans by Cut-off Date Pool Balance of the

23   Loans had Loan-to-Value Ratios at origination in excess of 80%." MALT 2006-3 Pros. Sup. S-

24   81.

25       (i)      In Annex A of the prospectus supplement ("Mortgage Loan Statistical

26   Information"), UBS and MAST presented tables of statistics about the mortgage loans in the

27   collateral pool. MALT 2006-3 Pros. Sup. A-1 to A-27. Each table focused on a certain

28   characteristic of the loans (for example, current principal balance) and divided the loans into

-24-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  categories based on that characteristic (for example, loans with current principal balances of

2  $25,000.01 to $50,000, $50,000.01 to $75,000, $75,000.01 to $100,000, etc.). Each table then

3  presented various data about the loans in each category. One of the tables, entitled "Original LTV

4  Ratios," divided the loans in Collateral Group 1 into 11 categories of original LTV (for example,

5  50% or less, 50.01% to 55%, 55.01% to 60%, etc.). The table made untrue and misleading

6  statements about the number of mortgage loans, the aggregate principal balance outstanding, and

7  the percent of aggregate principal balance outstanding in each of these categories. MALT 2006-3

8  Pros. Sup. A-2.

9       (j)   "The weighted average original LTV Ratio of the Collateral Group 1 Loans, by

10  Cut-Off Date Pool Balance of the Collateral Group 1 Loans, was approximately 69.83%." MALT

11  2006-3 Pros. Sup. A-2.

12       (k)   In Annex A ("Mortgage Loan Statistical Information"), UBS and MAST presented

13  another table entitled "Original LTV Ratios." This table divided the mortgage loans in Collateral

14  Group 2 into 11 categories of original LTV (for example, 50% or less, 50.01% to 55%, 55.01% to

15  60%, etc.). The table made untrue and misleading statements about the number of mortgage

16  loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance

17  outstanding in each of these categories. MALT 2006-3 Pros. Sup. A-7.

18       (l)   "The weighted average original LTV Ratio of the Collateral Group 2 Loans, by

19  Cut-Off Date Pool Balance of the Collateral Group 2 Loans, was approximately 74.08%." MALT

20  2006-3 Pros. Sup. A-7.

21       (m)   In Annex A ("Mortgage Loan Statistical Information"), UBS and MAST presented

22  another table entitled "Original LTV Ratios." This table divided the mortgage loans in Pool 1 into

23  11 categories of original LTV (for example, 50% or less, 50.01% to 55%, 55.01% to 60%, etc.).

24  The table made untrue and misleading statements about the number of mortgage loans, the

25  aggregate principal balance outstanding, and the percent of aggregate principal balance

26  outstanding in each of these categories. MALT 2006-3 Pros. Sup. A-13.

27       (n)   "The weighted average original LTV Ratio of the Pool 1 Loans, by Cut-Off Date

28  Pool Balance of the Pool 1 Loans, was approximately 72.15%." MALT 2006-3 Pros. Sup. A-13.

-25-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

(o)     In Annex A ("Mortgage Loan Statistical Information"), UBS and MAST presented another table entitled "Original LTV Ratios." This table divided the mortgage loans in Collateral Group 3 into eight categories of original LTV (for example, 50% or less, 50.01% to 55%, 55.01% to 60%, etc.). The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. MALT 2006-3 Pros. Sup. A-18.

(p)     "The weighted average original LTV Ratio of the Collateral Group 3 Loans, by Cut-Off Date Pool Balance of the Collateral Group 3 Loans, was approximately 60.45%." MALT 2006-3 Pros. Sup. A-18.

(q)     In Annex A ("Mortgage Loan Statistical Information"), UBS and MAST presented another table entitled "Original LTV Ratios." This table divided all of the Loans in the Aggregate into 11 categories of original LTV (for example, 50% or less, 50.01% to 55%, 55.01% to 60%, etc.). The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. MALT 2006-3 Pros. Sup. A-24.

(r)     "The weighted average original LTV Ratio of the Loans, by Cut-Off Date Pool Balance of the Loans, was approximately 70.92%." MALT 2006-3 Pros. Sup. A-24.

*FHAMS 2006-FA4*

In the prospectus supplement for the FHAMS 2006-FA4 Securitization, UBS made the following statements about the LTVs of the mortgage loans in the collateral pool of that securitization.

(a)     The original LTVs of the mortgage loans in Pool I ranged from 8.67% to 95%, with a weighted average original LTV of 70.69%. FHAMS 2006-FA4 Pros. Sup. S-8.

(b)     The original LTVs of the mortgage loans in Pool II ranged from 3.84% to 90%, with a weighted average original LTV of 56.29%. FHAMS 2006-FA4 Pros. Sup. S-8.

(c)     "No mortgage loan has a loan-to-value ratio at origination of more than 95%." FHAMS 2006-FA4 Pros. Sup. S-29.

COODIN, MacBRIDE, SQUERI, DAY & LAMFREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

(d)     In Annexes I, II, and III of the prospectus supplement, UBS presented tables of statistics about the mortgage loans in the collateral pool. FHAMS 2006-FA4 Pros. Sup. I-1 to I-2, II-1 to II-2, and III-1 to III-2. Each table focused on a certain characteristic of the loans (for example, current mortgage loan principal balance) and divided the loans into categories based on that characteristic (for example, loans with current principal balances of less than $250,001, $250,001 to $300,000, $300,001 to $350,000, etc.). Each table then presented various data about the loans in each category. One of the tables, entitled "Original Loan-to-Value Ratios for the Mortgage Loans in Pool I," divided the loans in Pool I into 10 categories of original LTV (for example, 50% or below, 50.01% to 55%, 55.01% to 60%, etc.). The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. FHAMS 2006-FA4 Pros. Sup. I-1.

(e)     "The weighted average original loan-to-value ratio of the mortgage loans in Pool I is expected to be approximately 70.69%." FHAMS 2006-FA4 Pros. Sup. I-1.

(f)     In Annex II, UBS presented a table entitled "Original Loan-to-Value Ratios for the Mortgage Loans in Pool II." This table divided the mortgage loans in Pool II into eight categories of original LTV (for example, 50% and below, 50.01% to 55%, 55.01% to 60%, etc.). The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. FHAMS 2006-FA4 Pros. Sup. II-1.

(g)     "The weighted average original loan-to-value ratio of the mortgage loans in Pool II is expected to be approximately 56.29%." FHAMS 2006-FA4 Pros. Sup. II-1.

(h)     In Annex III, UBS presented a table entitled "Original Loan-to-Value Ratios for the Mortgage Loans in Aggregate Pool." This table divided all of the mortgage loans in the collateral pool into 10 categories of original LTV (for example, 50% and below, 50.01% to 55%, 55.01% to 60%, etc.). The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. FHAMS 2006-FA4 Pros. Sup. III-1.

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-27-
SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche, 497839*)

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   (i)  "The weighted average original loan-to-value ratio of the mortgage loans in Pool I

2 and Pool II is expected to be approximately 69.23%." FHAMS 2006-FA4 Pros. Sup. III-1.

3 *CMALT 2006-A3*

4   In the prospectus supplement for the CMALT 2006-A3 Securitization, UBS made the

5 following statements about the LTVs of the mortgage loans in the collateral pool of that

6 securitization.

7   (a)  1.28% of the mortgage loans in Pool I had an LTV at origination greater than 80%,

8 with a weighted average of 70.43%. CMALT 2006-A3 Pros. Sup. 9.

9   (b)  1.34% of the mortgage loans in Pool II had an LTV at origination greater than

10 80%, with a weighted average of 53.96%. CMALT 2006-A3 Pros. Sup. 9.

11   (c)  1.29% of the combined mortgage loans in the collateral pool, had an LTV at

12 origination greater than 80%, with a weighted average of 69.13%. CMALT 2006-A3 Pros. Sup. 9.

13   (d)  None of the mortgage loans in the combined collateral pool had an LTV at

14 origination greater than 90%. CMALT 2006-A3 Pros. Sup. 9.

15   (e)  In the Appendix to the prospectus supplement ("Detailed description of the

16 mortgage loans"), UBS presented tables of statistics about the mortgage loans in the collateral

17 pool. Each table focused on a certain characteristic of the loans (for example, size of loans) and

18 divided the loans into categories based on that characteristic (for example, loans with principal

19 balances of $149,000 and under, $150,000 to $199,999, $200,000 to $249,999, etc.). Each table

20 then presented various data about the loans in each category. One of the tables, entitled

21 "Distribution by loan-to-value at origination," divided the loans in Pool I, Pool II, and the

22 combined loans in the collateral pool into five categories of LTV (for example, 65% and below,

23 65.001% to 75%, 75.001% to 80%, etc.). The table made untrue and misleading statements about

24 the number of mortgage loans, the aggregate principal balance outstanding, and the percent of

25 aggregate principal balance outstanding in each of these categories. CMALT 2006-A3 Pros. Sup.

26 36.

27   (f)  In the Appendix ("Detailed description of the mortgage loans"), UBS presented

28 another table entitled "Distribution by FICO scores and loan to-value ratios at origination." This

-28-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1  table divided the mortgage loans in Pool I into six categories of FICO scores (for example, less

2  than 620, 620 to 649, 650 to 699, etc.). The table also divided each FICO score category into six

3  ranges of LTV (for example, 65% and below, 65.001% to 75%, 75.001% to 80%, etc.). For each

4  FICO score category, the table stated the percentage of loans in that category. In addition, this

5  table also stated the percentage of the loans in Pool I that fell into each LTV range. Thus, in the

6  "Distribution by FICO scores and loan to-value ratios at origination" table, UBS made several

7  statements about the LTVs at origination of the loans in Pool I. CMALT 2006-A3 Pros. Sup. 37.

8       (g)    The "Distribution by FICO scores and loan to-value ratios at origination" table

9  presented similar statistics about the mortgage loans in Pool II. Thus, in the "Distribution by

10  FICO scores and loan to-value ratios at origination," UBS similarly made several statements

11  about the LTVs at origination of the loans in Pool II. CMALT 2006-A3 Pros. Sup. 37.

12  *CWALT 2006-29T1*

13      The prospectus supplement for the CWALT 2006-29T1 Securitization presented the

14  following statements about the LTVs of the mortgage loans in the collateral pool of that

15  securitization.

16      (a)    As of the initial cut-off date, the weighted-average original LTV of the mortgage

17  loans in loan group 1 was 73.98%. CWALT 2006-29T1 Pros. Sup. S-6.

18      (b)    As of the initial cut-off date, the weighted-average original LTV of the mortgage

19  loans in loan group 2 was 74.68%. CWALT 2006-29T1 Pros. Sup. S-6.

20      (c)    As of the initial cut-off date, the weighted-average original LTV of the mortgage

21  loans in loan group 3 was 75.1%. CWALT 2006-29T1 Pros. Sup. S-6.

22      (d)    "No Initial Mortgage Loan in any loan group had a Loan-to-Value Ratio at

23  origination or on the closing date of more than 100.00%." CWALT 2006-29T1 Pros. Sup. S-37.

24      (e)    "The Mortgage Pool" section of the prospectus supplement presented tables of

25  statistics about the mortgage loans in the collateral pool. CWALT 2006-29T1 Pros. Sup. S-35 to

26  S-62. Each table focused on a certain characteristic of the loans (for example, current mortgage

27  loan principal balance) and divided the loans into categories based on that characteristic (for

28  example, loans with current principal balances of $400,000.01 to $450,000, $450,000.01 to

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-29-

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    $500,000, $500,000.01 to $550,000, etc.). Each table then presented various data about the loans

2    in each category. Among these data was the "Weighted Average Original Loan-to-Value Ratio."

3    There were 12 such tables in "The Mortgage Pool" section for the loans in loan group 1. In each

4    table, the number of categories into which the loans were divided ranged from two to 14. Thus,

5    "The Mortgage Pool" section presented many statements about the original LTVs of the loans in

6    loan group 1. CWALT 2006-29T1 Pros. Sup. S-40 to S-47.

7           (f)    "As of the initial cut-off date, the weighted average original Loan-to-Value Ratio

8    of the Initial Mortgage Loans in loan group 1 was approximately 73.98%." CWALT 2006-29T1

9    Pros. Sup. S-43.

10          (g)    "The Mortgage Pool" section also presented tables of statistics about the mortgage

11   loans in loan group 2. Thus, the prospectus supplement similarly presented many statements

12   about the original LTVs of the loans in loan group 2. CWALT 2006-29T1 Pros. Sup. S-48 to S-

13   55.

14          (h)    "As of the initial cut-off date, the weighted average original Loan-to-Value Ratio

15   of the Initial Mortgage Loans in loan group 2 was approximately 74.68%." CWALT 2006-29T1

16   Pros. Sup. S-51.

17          (i)    "The Mortgage Pool" section also presented similar tables of statistics about the

18   loans in loan group 3. In these tables, the prospectus supplement similarly presented many

19   statements about the original LTVs of the loans in loan group 3. CWALT 2006-29T1 Pros. Sup.

20   S-56 to S-62.

21          (j)    "As of the initial cut-off date, the weighted average original Loan-to-Value Ratio

22   of the Initial Mortgage Loans in loan group 3 was approximately 75.10%." CWALT 2006-29T1

23   Pros. Sup. S-58.

24   *RAST 2006-A15*

25          In the prospectus supplement for the RAST 2006-A15 Securitization, UBS made the

26   following statements about the LTVs of the mortgage loans in the collateral pool of that

27   securitization.

28

-30-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

(a)     As of the cut-off date, the mortgage loans in the collateral pool had a weighted-average original LTV of 73%. RAST 2006-A15 Pros. Sup. S-6.

(b)     "With respect to approximately 40.26% of the mortgage loans, by cut-off date pool principal balance, at the time of origination of the first lien mortgage loan, the originator of the mortgage loan also originated a second lien mortgage loan that will not be included in the issuing entity and is not reflected in the loan-to-value ratio tables included in this prospectus supplement. The weighted average loan-to-value ratio of such mortgage loans is approximately 76.62% . . . ." RAST 2006-A15 Pros. Sup. S-23.

(c)     "At origination, all of the Mortgage Loans had a Loan-to-Value Ratio of 100% or less." RAST 2006-A15 Pros. Sup. S-29.

(d)     In "The Mortgage Pool" section of the prospectus supplement, UBS presented tables of statistics about the mortgage loans in the collateral pool. Each table focused on a certain characteristic of the mortgage loans (for example, current principal balance) and divided the loans into categories based on that characteristic (for example, loans with current principal balances of $50,000.01 to $100,000, $400,000.01 to $450,000, $450,000.01 to $500,000, etc.). Each table then presented various data about the mortgage loans in each category. Among these data was the "Weighted Average Loan-to-Value Ratio." There were 15 such tables in "The Mortgage Pool" section for the loans in the collateral pool. In each table, the number of categories into which the loans were divided ranged from one to 42. Thus, in "The Mortgage Pool" section, UBS made hundreds of statements about the LTVs of the loans in the collateral pool. RAST 2006-A15 Pros. Sup. S-31 to S-36.

(e)     "As of the Cut-off Date, the weighted average original Loan-to-Value Ratio of the Mortgage Loans was approximately 73.00%." RAST 2006-A15 Pros. Sup. S-32.

*CWALT 2006-40T1*

The prospectus supplement for the CWALT 2006-40T1 Securitization presented the following statements about the LTVs of the mortgage loans in the collateral pool of that securitization.

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-31-

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    (a)    As of the cut-off date, the mortgage loans in loan group 1 had a weighted-average

2    original LTV of 72.15%. CWALT 2006-40T1 Pros. Sup. S-5.

3    (b)    As of the cut-off date, the mortgage loans in loan group 2 had a weighted-average

4    original LTV of 74.07%. CWALT 2006-40T1 Pros. Sup. S-5.

5    (c)    "No mortgage loan in any loan group had a Loan-to-Value Ratio at origination or

6    on the closing date of more than 100.00%." CWALT 2006-40T1 Pros. Sup. S-33.

7    (d)    "The Mortgage Pool" section of the prospectus supplement presented tables of

8    statistics about the mortgage loans in the collateral pool. CWALT 2006-40T1 Pros. Sup. S-31 to

9    S-52. Each table focused on a certain characteristic of the loans (for example, current mortgage

10   loan principal balance) and divided the loans into categories based on that characteristic (for

11   example, loans with current principal balances of $400,000.01 to $450,000, $450,000.01 to

12   $500,000, $500,000.01 to $550,000, etc.). Each table then presented various data about the loans

13   in each category. Among these data was the "Weighted Average Original Loan-to-Value Ratio."

14   There were 13 such tables in "The Mortgage Pool" section for the loans in loan group 1. In each

15   table, the number of categories into which the loans were divided ranged from two to 14. Thus,

16   "The Mortgage Pool" section presented hundreds of statements about the original LTVs of the

17   loans in loan group 1. CWALT 2006-40T1 Pros. Sup. S-36 to S-43.

18   (e)    "As of the cut-off date, the weighted average original Loan-to-Value Ratio of the

19   mortgage loans in loan group 1 was approximately 72.15%." CWALT 2006-40T1 Pros. Sup. S-

20   38.

21   (f)    "The Mortgage Pool" section presented similar tables of statistics about the

22   mortgage loans in loan group 2. In these tables, the prospectus supplement similarly presented

23   hundreds of statements about the original LTVs of the loans in loan group 2. CWALT 2006-40T1

24   Pros. Sup. S-44 to S-52.

25   (g)    "As of the cut-off date, the weighted average original Loan-to-Value Ratio of the

26   mortgage loans in loan group 2 was approximately 74.07%." CWALT 2006-40T1 Pros. Sup. S-

27   47.

28   *CWALT 2006-43CB*

-32-

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

In the prospectus supplement for the CWALT 2006-43CB Securitization, UBS made the following statements about the LTVs of the mortgage loans in the collateral pool of that securitization.

    (a)    As of the cut-off date, the mortgage loans in loan group 1 had a weighted-average original LTV of 67.02%. CWALT 2006-43CB Pros. Sup. S-5.

    (b)    As of the cut-off date, the mortgage loans in loan group 2 had a weighted-average original LTV of 62.18%. CWALT 2006-43CB Pros. Sup. S-5.

    (c)    As of the cut-off date, the mortgage loans in loan group 3 had a weighted-average original LTV of 77.58%. CWALT 2006-43CB Pros. Sup. S-6.

    (d)    "No mortgage loan in any loan group had a Loan-to-Value Ratio at origination or on the closing date of more than 100.00%." CWALT 2006-43CB Pros. Sup. S-35.

    (e)    In "The Mortgage Pool" section of the prospectus supplement, UBS presented tables of statistics about the mortgage loans in the collateral pool. CWALT 2006-43CB Pros. Sup. S-38 to S-69. Each table focused on a certain characteristic of the loans (for example, current mortgage loan principal balance) and divided the loans into categories based on that characteristic (for example, loans with current principal balances of $0.01 to $50,000, $50,000.01 to $100,000, $100,000.01 to $150,000, etc.). Each table then presented various data about the loans in each category. Among these data was the "Weighted Average Original Loan-to-Value Ratio." There were 13 such tables in "The Mortgage Pool" section for the loans in loan group 1. In each table, the number of categories into which the loans were divided ranged from three to 112. Thus, in "The Mortgage Pool" section, UBS made hundreds of statements about the original LTVs of the loans in loan group 1. CWALT 2006-43CB Pros. Sup. S-38 to S-49.

    (f)    "As of the cut-off date, the weighted average original Loan-to-Value Ratio of the mortgage loans in loan group 1 was approximately 67.02%." CWALT 2006-43CB Pros. Sup. S-44.

    (g)    In the "The Mortgage Pool" section, UBS presented similar tables of statistics about the mortgage loans in loan group 2. In these tables, UBS similarly made hundreds of

-33-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1  statements about the original LTVs of the loans in loan group 2. CWALT 2006-43CB Pros. Sup.

2  S-50 to S-59.

3      (h)    "As of the cut-off date, the weighted average original Loan-to-Value Ratio of the

4  mortgage loans in loan group 2 was approximately 62.18%." CWALT 2006-43CB Pros. Sup. S-

5  54.

6      (i)    In "The Mortgage Pool" section, UBS presented similar tables of statistics about

7  the mortgage loans in loan group 3. In these tables, UBS similarly made hundreds of statements

8  about the original LTV of the loans in loan group 3. CWALT 2006-43CB Pros. Sup. S-60 to S-

9  69.

10     (j)    "As of the cut-off date, the weighted average original Loan-to-Value Ratio of the

11 mortgage loans in loan group 3 was approximately 77.58%." CWALT 2006-43CB Pros. Sup. S-

12 64.

13 *MALT 2007-1*

14     In the prospectus supplement for the MALT 2007-1 Securitization, UBS and MAST made

15 the following statements about the LTVs of the mortgage loans in the collateral pool of that

16 securitization.

17     (a)    The original LTV of the all of the mortgage loans in the collateral pool ranged

18 from 16.44% to 95% with a weighted average original LTV of 69.19%. MALT 2007-1 Pros. Sup.

19 S-15.

20     (b)    The original LTV of the mortgage loans in Pool 1 ranged from 16.44% to 95%,

21 with a weighted average original LTV of 70.8%. MALT 2007-1 Pros. Sup. S-16.

22     (c)    The original LTV of the mortgage loans in Collateral Group 1 ranged from

23 16.44% to 95%, with a weighted average original LTV of 69.97%. MALT 2007-1 Pros. Sup. S-

24 16.

25     (d)    The original LTV of the mortgage loans in Collateral Group 2 ranged from

26 16.44% to 95%, with a weighted average original LTV of 71.63%. MALT 2007-1 Pros. Sup. S-

27 17.

28

-34-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche, 497839*)

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1       (e)    The original LTV of the mortgage loans in Collateral Group 3 ranged from

2   18.21% to 90% with a weighted average original LTV of 64.75%. MALT 2007-1 Pros. Sup. S-17.

3       (f)    "Approximately 4.77% of the loans by cut-off date pool balance of the loans had

4   loan to value ratios at origination in excess of 80%." *MALT 2007-1 Pros. Sup. S-28.*

5       (g)    "Approximately 4.77% of the Loans, by Cut-Off Date Pool Balance for all of the

6   Loan Groups had LTV Ratios at origination of greater than 80% . . . ." MALT 2007-1 Pros. Sup.

7   S-35.

8       (h)    "[A]s of the Cut-off Date, the range of original Loan-to-Value Ratios of the Loans

9   is 16.44% to 95.00%, and approximately 4.77% of the Loans by Cut-off Date Pool Balance of the

10  Loans had Loan-to-Value Ratios at origination in excess of 80%." MALT 2007-1 Pros. Sup. S-

11  105.

12      (i)    In Annex A of the prospectus supplement ("Mortgage Loan Statistical

13  Information"), UBS and MAST presented tables of statistics about the mortgage loans in the

14  collateral pool. MALT 2007-1 Pros. Sup. A-1 to A-29. Each table focused on a certain

15  characteristic of the loans (for example, current principal balance) and divided the loans into

16  categories based on that characteristic (for example, loans with current principal balances of

17  $50,000.01 to $75,000, $75,000.01 to $100,000, $100,000.01 to $125,000, etc.). Each table then

18  presented various data about the loans in each category. One of the tables, entitled "Original LTV

19  Ratios," divided the loans in Collateral Group 1 into 10 categories of original LTV (for example,

20  50% or less, 50.01% to 55%, 55.01% to 60%, etc.). The table made untrue and misleading

21  statements about the number of mortgage loans, the aggregate principal balance outstanding, and

22  the percent of aggregate principal balance outstanding in each of these categories. MALT 2007-1

23  Pros. Sup. A-2.

24      (j)    "The weighted average original LTV Ratio of the Collateral Group 1 Loans, by

25  Cut-Off Date Pool Balance of the Collateral Group 1 Loans, was approximately 69.97%." MALT

26  2007-1 Pros. Sup. A-2.

27      (k)    In Annex A ("Mortgage Loan Statistical Information"), UBS and MAST presented

28  another table entitled "Original LTV Ratios." This table divided the loans in Collateral Group 2

-35-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    into 10 categories of original LTV (for example, 50% or less, 50.01% to 55%, 55.01% to 60%,

2    etc.). The table made untrue and misleading statements about the number of mortgage loans, the

3    aggregate principal balance outstanding, and the percent of aggregate principal balance

4    outstanding in each of these categories. MALT 2007-1 Pros. Sup. A-9.

5         (l)    "The weighted average original LTV Ratio of the Collateral Group 2 Loans, by

6    Cut-Off Date Pool Balance of the Collateral Group 2 Loans, was approximately 71.63%." MALT

7    2007-1 Pros. Sup. A-9.

8         (m)    In Annex A ("Mortgage Loan Statistical Information"), UBS and MAST presented

9    another table entitled "Original LTV Ratios." This table divided the mortgage loans in Pool 1 into

10   10 categories of original LTV (for example, 50% or less, 50.01% to 55%, 55.01% to 60%, etc.).

11   The table made untrue and misleading statements about the number of mortgage loans, the

12   aggregate principal balance outstanding, and the percent of aggregate principal balance

13   outstanding in each of these categories. MALT 2007-1 Pros. Sup. A-15.

14        (n)    "The weighted average original LTV Ratio of the Pool 1 Loans, by Cut-Off Date

15   Pool Balance of the Pool 1 Loans, was approximately 70.80%." MALT 2007-1 Pros. Sup. A-15.

16        (o)    In Annex A ("Mortgage Loan Statistical Information"), UBS and MAST presented

17   another table entitled "Original LTV Ratios." This table divided the loans in Collateral Group 3

18   into eight categories of original LTV (for example, 50% or less, 50.01% to 55%, 55.01% to 60%,

19   etc.). The table made untrue and misleading statements about the number of mortgage loans, the

20   aggregate principal balance outstanding, and the percent of aggregate principal balance

21   outstanding in each of these categories. MALT 2007-1 Pros. Sup. A-20.

22        (p)    "The weighted average original LTV Ratio of the Collateral Group 3 Loans, by

23   Cut-Off Date Pool Balance of the Collateral Group 3 Loans, was approximately 64.75%." MALT

24   2007-1 Pros. Sup. A-20.

25        (q)    In Annex A ("Mortgage Loan Statistical Information"), UBS and MAST presented

26   another table entitled "Original LTV Ratios." This table divided all of the mortgage loans in the

27   collateral pool into 10 categories of original LTV (for example, 50% or less, 50.01% to 55%,

28   55.01% to 60%, etc.). The table made untrue and misleading statements about the number of

-36-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate

2   principal balance outstanding in each of these categories. MALT 2007-1 Pros. Sup. A-25.

3       (r)    "The weighted average original LTV Ratio of the Loans, by Cut-Off Date Pool

4   Balance of the Loans, was approximately 69.19%." MALT 2007-1 Pros. Sup. A-25.

5   *CWALT 2007-3T1*

6       In the prospectus supplement for the CWALT 2007-3T1 Securitization, UBS made the

7   following statements about the LTVs of the mortgage loans in the collateral pool of that

8   securitization.

9       (a)    As of the cut-off date, the mortgage loans in loan group 1 had a weighted-average

10   original LTV of 73.41%. CWALT 2007-3T1 Pros. Sup. S-5.

11       (b)    As of the cut-off date, the mortgage loans in loan group 2 had a weighted-average

12   original LTV of 70.91%. CWALT 2007-3T1 Pros. Sup. S-5.

13       (c)    "No mortgage loan in any loan group had a Loan-to-Value Ratio at origination or

14   on the closing date of more than 100.00%." CWALT 2007-3T1 Pros. Sup. S-32.

15       (d)    In Annex A of the prospectus supplement ("The Mortgage Pool"), UBS presented

16   tables of statistics about the mortgage loans in the collateral pool. CWALT 2007-3T1 Pros. Sup.

17   A-1 to A-18. Each table focused on a certain characteristic of the loans (for example, current

18   mortgage loan principal balance) and divided the loans into categories based on that characteristic

19   (for example, loans with current principal balances of $400,000.01 to $450,000, $450,000.01 to

20   $500,000, $500,000.01 to $550,000, etc.). Each table then presented various data about the loans

21   in each category. Among these data was the "Weighted Average Original Loan-to-Value Ratio."

22   There were 13 such tables in Annex A for the loans in loan group 1. In each table, the number of

23   categories into which the loans were divided ranged from two to 25. Thus, in Annex A, UBS

24   made hundreds of statements about the original LTVs of the loans in loan group 1. CWALT

25   2007-3T1 Pros. Sup. A-1 to A-9.

26       (e)    "As of the cut-off date, the weighted average original Loan-to-Value Ratio of the

27   mortgage loans in loan group 1 was approximately 73.41%." CWALT 2007-3T1 Pros. Sup. A-4.

28

-37-

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    (f)    In Annex A ("The Mortgage Pool"), UBS presented similar tables of statistics

2    about the mortgage loans in loan group 2. In these tables, UBS similarly made hundreds of

3    statements about the original LTVs of the loans in loan group 2. CWALT 2007-3T1 Pros. Sup. A-

4    10 to A-18.

5    (g)    "As of the cut-off date, the weighted average original Loan-to-Value Ratio of the

6    mortgage loans in loan group 2 was approximately 70.91%." CWALT 2007-3T1 Pros. Sup. A-13.

7    *RAST 2007-A5*

8    In the prospectus supplement for the RAST 2007-A5 Securitization, UBS made the

9    following statements about the LTVs of the mortgage loans in the collateral pool of that

10    securitization.

11    (a)    As of the cut-off date, the mortgage loans in loan group 1 had a weighted-average

12    original LTV of 75.66%. RAST 2007-A5 Pros. Sup. S-6.

13    (b)    As of the cut-off date, the mortgage loans in loan group 2 had a weighted-average

14    original LTV of 71.44%. RAST 2007-A5 Pros. Sup. S-6.

15    (c)    As of the cut-off date, all of the mortgage loans in the collateral pool had a

16    weighted-average original LTV of 72.62%. RAST 2007-A5 Pros. Sup. S-6.

17    (d)    "With respect to approximately 49.96% and 33.05% of the group 1 mortgage loans

18    and group 2 mortgage loans, respectively, in each case by aggregate stated principal balance of

19    the mortgage loans in the related loan group as of the cut-off date, at the time of origination of the

20    first lien mortgage loan, the originator of the mortgage loan also originated a second lien

21    mortgage loan that will not be included in the issuing entity and is not reflected in the loan-to-

22    value ratio tables included in this prospectus supplement. The weighted average loan-to-value

23    ratios of such group 1 mortgage loans and group 2 mortgage loans are approximately 77.31% and

24    75.50%, respectively . . . ." RAST 2007-A5 Pros. Sup. S-24 to S-25.

25    (e)    "At origination, all of the Mortgage Loans had a Loan-to-Value Ratio of 95.00%

26    or less." RAST 2007-A5 Pros. Sup. S-31.

27    (f)    In "The Mortgage Pool" section, UBS presented tables of statistics about the

28    mortgage loans in the collateral pool. RAST 2007-A5 Pros. Sup. S-30 to S-50. Each table focused

-38-

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  on a certain characteristic of the mortgage loans (for example, current principal balance) and

2  divided the loans into categories based on that characteristic (for example, loans with current

3  principal balances of $50,000.01 to $100,000, $100,000.01 to $150,000, $150,000.01 to

4  $200,000, etc.). Each table then presented various data about the mortgage loans in each category.

5  Among these data was the "Weighted Average Loan-to-Value Ratio." There were 15 such tables

6  in "The Mortgage Pool" section for the loans in loan group 1. In each table, the number of

7  categories into which the loans were divided ranged from one to 34. Thus, in "The Mortgage

8  Pool" section, UBS made hundreds of statements about the LTVs of the loans in loan group 1.

9  RAST 2007-A5 Pros. Sup. S-33 to S-37.

10       (g)    "As of the Cut-off Date, the weighted average original Loan-to-Value Ratio of the

11  group 1 mortgage loans was approximately 75.66%." RAST 2007-A5 Pros. Sup. S-34.

12       (h)    In "The Mortgage Pool" section, UBS presented similar tables of statistics about

13  the mortgage loans in loan group 2. In these tables, UBS similarly made hundreds of statements

14  about the original LTVs of the loans in loan group 2. RAST 2007-A5 Pros. Sup. S-38 to S-43.

15       (i)    "As of the Cut-off Date, the weighted average original Loan-to-Value Ratio of the

16  group 2 mortgage loans was approximately 71.44%." RAST 2007-A5 Pros. Sup. S-39.

17       (j)    In "The Mortgage Pool" section, UBS presented similar tables of statistics about

18  the all of the mortgage loans in the collateral pool. In these tables, UBS similarly made hundreds

19  of statements about the original LTVs of all of the loans in the collateral pool. RAST 2007-A5

20  Pros. Sup. S-44 to S-50.

21       "As of the Cut-off Date, the weighted average original Loan-to-Value Ratio of the

22  Mortgage Loans was approximately 72.62%." RAST 2007-A5 Pros. Sup. S-45.

23  **Item [57].    Details of the results of the AVM analysis:**

24  *MALT 2004-9*

25
| Number of loans | 1,665 |
| --- | --- |
| Number of properties on which there was enough information for the model to determine a true market value | 616 |
| Number of loans on which the stated value was 105% or more of the true market value as reported by the model | 308 |

-39-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)