prospectus was amended from time to time by prospectus supplements whenever a new series of certificates was issued pursuant or traceable to that registration statement.

**Item 51.       Untrue or misleading statements about the LTVs of the mortgage loans:**

In the prospectus supplement, Merrill Lynch made the following statements about the LTVs of the mortgage loans in the collateral pool of this securitization.

(a)     As of the cut-off date, the mortgage loans in loan group 1 had a weighted-average original LTV of 72.57%. INDX 2007-FLX5 Pros. Sup. S-7.

(b)     *As of the cut-off date, the mortgage loans in loan group 2 had a weighted-average original LTV of 70.69%.* INDX 2007-FLX5 Pros. Sup. S-8.

(c)     As of the cut-off date, all of the mortgage loans in the collateral pool had a weighted-average original LTV of 71.12%. INDX 2007-FLX5 Pros. Sup. S-8.

(d)     "With respect to approximately 39.04% and 26.13% of the group 1 mortgage loans and group 2 mortgage loans, respectively, in each case by aggregate stated principal balance of the mortgage loans in the related loan group as of the cut-off date, at the time of origination of the first lien mortgage loan, the originator of the mortgage loan also originated a second lien mortgage loan that will not be included in the issuing entity and is not reflected in the loan-to-value ratio tables included in this prospectus supplement. The weighted average loan-to-value ratio of such group 1 mortgage loans and group 2 mortgage loans is approximately 77.71% and 75.63% respectively . . . ." INDX 2007-FLX5 Pros. Sup. S-31 to S-32.

(e)     "At origination, all of the Mortgage Loans had a Loan-to-Value Ratio of less than or equal to 95%." INDX 2007-FLX5 Pros. Sup. S-40.

(f)     In the section of the prospectus supplement entitled "The Mortgage Pool," Merrill Lynch presented tables of statistics about the mortgage loans in the collateral pool. INDX 2007-

-2-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1   FLX5 Pros. Sup. S-42 through S-65. Each table focused on a certain characteristic of the loans

2   (for example, current principal balance) and divided the loans into categories based on that

3   characteristic (for example current principal balances of $50,000.01 to $100,000, $100,000.01 to

4   $150,000, $150,000.01 to $200,000, etc.). Each table then presented various data about the loans

5   in each category. Among these data was the "Weighted Average Original Loan-to-Value Ratio."

6   There were 23 such tables for the mortgage loans in loan group 1. In each table, the number of

7   categories into which the loans were divided ranged from one to 33. Thus, in "The Mortgage

8   Pool" section, Merrill Lynch made hundreds of statements about the original LTVs of the loans in

9   loan group 1. INDX 2007-FLX5 Pros. Sup. S-42 to S-49.

10       (g)     "As of the Cut-off Date, the weighted average original Loan-to-Value Ratio of the

11  Group 1 Mortgage Loans was approximately 72.57%." INDX 2007-FLX5 Pros. Sup. S-43.

12       (h)     In "The Mortgage Pool" section, Merrill Lynch presented similar tables of

13  statistics about the mortgage loans in loan group 2. In these tables, Merrill Lynch similarly made

14  hundreds of statements about the original LTVs of the loans in loan group 2. INDX 2007-FLX5

15  Pros. Sup. S-50 to S-57.

16       (i)     "As of the Cut-off Date, the weighted average original Loan-to-Value Ratio of the

17  Group 2 Mortgage Loans was approximately 70.69%." INDX 2007-FLX5 Pros. Sup. S-51.

18       (j)     In "The Mortgage Pool" section, Merrill Lynch presented similar tables of

19  statistics about all of the mortgage loans in the collateral pool. In these tables, Merrill Lynch

20  similarly made hundreds of statements about the LTVs of the aggregate loans. INDX 2007-FLX5

21  Pros. Sup. S-58 to S-65.

22       (k)     "As of the Cut-off Date, the weighted average original Loan-to-Value Ratio of the

23  Mortgage Loans was approximately 71.12%." INDX 2007-FLX5 Pros. Sup. S-59.

-3-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

**Item 61.**     **Details of the results of the AVM analysis:**

| | |
|---|---:|
| Number of loans | 1,337 |
| Number of properties on which there was enough information for the model to determine a true market value | 790 |
| Number of loans on which the stated value was 105% or more of the true market value as reported by the model | 635 |
| Aggregate amount by which the stated values of those properties exceeded their true market values as reported by the model | $79,443,300 |
| Number of loans on which the stated value was 95% or less of the true market value as reported by the model | 48 |
| Aggregate amount by which the true market values of those properties exceed their stated values | $4,662,000 |
| Number of loans with LTVs over 100%, as stated by Defendants | 0 |
| Number of loans with LTVs over 100%, as determined by the model | 159 |
| Weighted-average LTV, as stated by Defendants | 71.12% |
| Weighted-average LTV, as determined by the model | 88.5% |

**Item 64.**     **Evidence from subsequent sales of refinanced properties:**

Of the 1,337 mortgage loans in the collateral pool, 1,179 were taken out to refinance, rather than to purchase, properties. For those 1,179 loans, the value (denominator) in the LTV was an appraised value rather than a sale price. Of those 1,179 properties, 70 were subsequently sold for a total of approximately $20,992,064. The total value ascribed to those same properties in the LTV data reported in the prospectus supplements and other documents sent to the Bank was $38,700,600. Thus, those properties were sold for 54.2% of the value ascribed to them, a difference of 45.8%. This difference cannot be accounted for by declines in house prices in the areas in which those properties were located.

**Item 81.**     **Untrue or misleading statements about compliance with USPAP:**

In the prospectus supplement, Merrill Lynch made the following statement about the appraisals of all of the properties that secured the mortgage loans in the collateral pool of this securitization: "[A]n appraisal is generally made of the subject property in accordance with the Uniform Standards of Profession [sic] Appraisal Practice." INDX 2007-FLX5 Pros. Sup. S-69.

-4-

1    **Item 87.       Untrue or misleading statements about owner-occupancy of the properties
2                        that secured the mortgage loans:**

3    In the prospectus supplement, Merrill Lynch made the following statements about the

4    occupancy status of the properties that secured the mortgage loans in the collateral pool of this

5    securitization.

6    (a)     In "The Mortgage Pool" section of the prospectus supplement, described in Item

7    51, Merrill Lynch presented a table entitled "Occupancy Types for the Group 1 Mortgage Loans."

8    The table divided the mortgage loans in loan group 1 into the categories "Primary Home,"

9    "Investment," and "Secondary Home." The table made untrue and misleading statements about

10   the number of mortgage loans, the aggregate principal balance outstanding, and the percent of

11   aggregate principal balance outstanding in each of these categories.. INDX 2007-FLX5 Pros. Sup.

12   S-46.

13   (b)     In the "Occupancy Types for the Group 1 Mortgage Loans" table, Merrill Lynch

14   stated that 83.45% of the mortgage loans in loan group 1 were secured by a "Primary Home,"

15

16   13.88% by an "Investment" property, and 2.67% by a "Secondary Home." INDX 2007-FLX5

17   Pros. Sup. S-46.

18

19   (c)     In "The Mortgage Pool" section, Merrill Lynch also presented a table entitled

20   "Occupancy Types for the Group 2 Mortgage Loans." The table divided the mortgage loans in

21   loan group 2 into the categories "Primary Home," "Investment," and "Secondary Home." The

22   table made untrue and misleading statements about the number of mortgage loans, the aggregate

23   principal balance outstanding, and the percent of aggregate principal balance outstanding in each

24   of these categories. INDX 2007-FLX5 Pros. Sup. S-54.

25

26   (d)     In the "Occupancy Types for the Group 2 Mortgage Loans" table, Merrill Lynch

27   stated that 96.88% of the mortgage loans in loan group 2 were secured by a "Primary Home,"

28

-5-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1.98% by an "Investment" property, and 1.14% by a "Secondary Home." INDX 2007-FLX5 Pros. Sup. S-54.

(e)     In "The Mortgage Pool" section Merrill Lynch also presented a table entitled "Occupancy Types for the Mortgage Loans." The table divided all of the mortgage loans in the collateral pool into the categories "Primary Home," "Investment," and "Secondary Home." The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. INDX 2007-FLX5 Pros. Sup. S-62.

(f)     In the "Occupancy Types for the Mortgage Loans" table, Merrill Lynch stated that 93.83% of the mortgage loans were secured by a "Primary Home," 4.68% by an "Investment" property, and 1.49% by a "Secondary Home." INDX 2007-FLX5 Pros. Sup. S-62.

**Item 95.**     **Details of properties that were stated to be owner-occupied, but were not:**

(a)     **Number of loans on which the owner of the property instructed tax authorities to send property tax bills to him or her at a different address: 84**

(b)     **Number of loans on which the owner of the property could have, but did not, designate the property as his or her homestead: 172**

(c)     **Number of loans on which the owner of the property owned three or more properties: 20**

(d)     **Number of loans that went straight from current to foreclosure or ownership by lender: 1**

(e)     **Eliminating duplicates, number of loans about which one or more of statements (a) through (d) is true: 241**

**Item 98.**     **Untrue or misleading statements about the underwriting standards of the originators of the mortgage loans:**

On pages S-68 through S-71 of the prospectus supplement, Merrill Lynch made statements about the underwriting guidelines of IndyMac Bank, F.S.B. In particular, Merrill Lynch stated that:

-6-

(a)   "Mortgage loans that do not meet IndyMac Bank's guidelines may be manually re-underwritten and approved under an exception to those underwriting guidelines." INDX 2007-FLX5 Pros. Sup. S-69.

(b)   "[E]xceptions to underwriting standards are permitted in situations in which compensating factors exist." INDX 2007-FLX5 Pros. Sup. S-70.

(c)   "Underwriting standards are applied by or on behalf of a lender to evaluate the borrower's credit standing and repayment ability, and the value and adequacy of the mortgaged property as collateral." INDX 2005-FLX5 Pros. Sup. S-36.

(d)   "Some programs place more emphasis on a borrower's credit standing and repayment ability while others emphasize the value and adequacy of the mortgaged property as collateral. The most comprehensive of the programs emphasize both." INDX 2005-FLX5 Pros. Sup. S-36.

**Item 105.   Early payment defaults:**

  **(a)   Number of the mortgage loans that suffered EPDs: 12**

  **(b)   Percent of the mortgage loans that suffered EPDs: 0.9%**

  **(c)   Percent of all securitized, non-agency prime (including Alt-A) mortgage loans made at the same time as the loans in the collateral pool that experienced EPDs: 0.83%**

**Item 106.   90+ days delinquencies:**

  **(a)   Number of the mortgage loans that suffered 90+ days delinquencies: 455**

  **(b)   Percent of the mortgage loans that suffered 90+ days delinquencies: 34.0%**

  **(c)   Percent of all securitized, non-agency prime (including Alt-A) mortgage loans made at the same time as the loans in the collateral pool that suffered 90+ days delinquencies: 33.9%**

**Item 107.   30+ days delinquencies in this securitization:**

  **(a)   Number of the mortgage loans that were 30+ days delinquent on March 31, 2010: 478**

-7-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

(b)   **Percent of the mortgage loans that were 30+ days delinquent on March 31, 2010: 35.8%**

(c)   **Percent of all mortgage loans in the United States that were 30+ days delinquent on March 31, 2010: 14.7%**

**Item 114.**      **Statements about the ratings of the certificate(s) that the Bank purchased:**

On pages S-10 and S-131 to S-132 of the prospectus supplement, Merrill Lynch made statements about the ratings assigned to the certificates issued in this securitization. Merrill Lynch stated that the Bank's certificate was rated Aaa by Moody's Investors Service, Inc. and AAA by Standard & Poor's Rating Services. These were the highest ratings available from these two rating agencies.

Merrill Lynch also stated: "It is a condition to the issuance of the Offered Certificates that they be assigned ratings not lower than [AAA] by S&P and [Aaa] by Moody's." INDX 2007-FLX5 Pros. Sup. S-131.

**Item 117.**      **Summary of loans about which the Defendants made untrue or misleading statements:**

(a)   **Number of loans whose LTVs were materially understated: 635**

(b)   **Number of loans that suffered EPDs: 12**

(c)   **Number of loans in which the properties were stated to be owner-occupied but were not: 241**

(d)   **Eliminating duplicates, number of loans about which the Defendants made untrue or misleading statements: 729**

(e)   **Eliminating duplicates, percent of loans about which the Defendants made untrue or misleading statements: 54.5%**

-8-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SCHEDULE 34 TO THE AMENDED COMPLAINT

To the extent that this Schedule is incorporated by reference into allegations in the complaint, those allegations are made against Defendants *WaMu Capital Corp.* and Washington Mutual Mortgage Securities Corp.

**Item 43.** **Details of trust and certificate(s).**

    **(a)** **Dealer that sold the certificate(s) to the Bank:** WaMu Capital Corp.

    **(b)** **Description of the trust:** Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2005-5 was a securitization in June 2005 of 2,723 mortgage loans, in one group. The mortgage loans in the collateral pool of this securitization were originated or acquired by Washington Mutual Mortgage Securities Corp. WMALT 2005-5 Pros. Sup. S-4 and S-24.

    **(c)** **Description of the certificate(s) that the Bank purchased:** WaMu Capital Corp. offered and sold to the Bank a senior certificate in this securitization, in tranche CB-1, for which the Bank paid $154,430,459 plus accrued interest on June 30, 2005.

    **(d)** **Ratings of the certificate(s) when the Bank purchased them:** Standard & Poor's – AAA; Moody's – Aaa.

    **(e)** **Current ratings of the certificate(s):** Standard & Poor's – AAA; Moody's – Caa2.

    **(f)** **URL of prospectus supplement for this securitization:** http://www.sec.gov/Archives/edgar/data/314643/000095011705002573/a40038.txt

---

**SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)**

**Item 51.**       **Untrue or misleading statements about the LTVs of the mortgage loans:**

In the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made the following statements about the LTVs of the mortgage loans in the collateral pool of this securitization.

(a)       In Appendix B of the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented tables of statistics about the mortgage loans in the collateral pool. WMALT 2005-5 Pros. Sup. S-73 to S-75. Each table focused on a certain characteristic of the loans (for example, original principal balance) and divided the loans into categories based on that characteristic (for example loans with original principal balances of $50,000 or less, $50,001 to $75,000, $75,001 to $100,000, etc.). Each table then presented various data about the mortgage loans in each category. One of the tables, entitled "Current Loan-to-Value Ratios of the Mortgage Loans," divided all of the loans in the collateral pool into eight categories of current LTV (for example, 60% or less, 60.01% to 70%, 70.01% to 75%, etc.). The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2005-5 Pros. Sup. S-73.

(b)       "At origination, the weighted average loan-to-value ratio of the mortgage loans was approximately 71.1%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the mortgage loans was approximately 71.0%." WMALT 2005-5 Pros. Sup. S-73.

**Item 61.**       **Details of the results of the AVM analysis:**

| | |
|---|---:|
| Number of loans | 2,723 |
| Number of properties on which there was enough information for the model to determine a true market value | 1,127 |
| Number of loans on which the stated value was 105% or more of the true market value as reported by the model | 486 |
| Aggregate amount by which the stated values of those properties exceeded their true market values as reported by the model | $20,345,900 |

-2-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

| | |
|---|---|
| Number of loans on which the stated value was 95% or less of the true market value as reported by the model | 243 |
| Aggregate amount by which the true market values of those properties exceed their stated values | $14,202,300 |
| Number of loans with LTVs over 100%, as stated by Defendants | Not Applicable |
| Number of loans with LTVs over 100%, as determined by the model | 54 |
| Weighted-average LTV, as stated by Defendants | 71.1% |
| Weighted-average LTV, as determined by the model | 75.96% |

**Item 70.**      **Undisclosed additional liens:**

(a)      Minimum number of properties with additional liens: 698

(b)      Total reduction in equity from additional liens: $34,918,343

(c)      Weighted-average reduction in equity from additional liens: 83.8%

**Item 87.**      **Untrue or misleading statements about owner-occupancy of the properties that secured the mortgage loans:**

In the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made the following statements about the occupancy status of the properties that secured the mortgage loans in the collateral pool of this securitization.

(a)      In Appendix B of the prospectus supplement, described in Item 51, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Occupancy Status of the Mortgage Loans." This table divided all of the mortgage loans in the collateral pool into the categories "Owner Occupied," "Non-Owner Occupied," and "Owner Occupied–2nd Home." The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2005-5 Pros. Sup. S-75.

(b)      In the "Occupancy Status of the Mortgage Loans" table, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that 89.19% of the mortgage loans in the collateral pool were secured by an "Owner Occupied" residence, 8.51% by a "Non-Owner

-3-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

Occupied" property, and 2.3% by an "Owner Occupied – 2nd Home." WMALT 2005-5 Pros. Sup. S-75.

**Item 95.**    **Details of properties that were stated to be owner-occupied, but were not:**

    **(a)**    Number of loans on which the owner of the property instructed tax authorities to send property tax bills to him or her at a different address: 258

    **(b)**    Number of loans on which the owner of the property could have, but did not, designate the property as his or her homestead: 303

    **(c)**    Number of loans on which the owner of the property owned three or more properties: 21

    **(d)**    Eliminating duplicates, number of loans about which one or more of statements (a) through (c) is true: 483

**Item 98.**    **Untrue or misleading statements about the underwriting standards of the originators of the mortgage loans:**

On pages 17 through 18 of the prospectus, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made statements about the underwriting guidelines applied in the origination or acquisition of all of the mortgage loans in the collateral pool. All of those statements are incorporated herein by reference. In particular, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that:

    **(a)**    "The Company's underwriting standards are intended to evaluate the prospective Mortgagor's credit standing and repayment ability . . . ." WMALT 2005-5 Pros. 18.

**Item 105.**    **Early payment defaults:**

    **(a)**    Number of the mortgage loans that suffered EPDs: 7

    **(b)**    Percent of the mortgage loans that suffered EPDs: 0.3%

    **(c)**    Percent of all securitized, non-agency prime (including Alt-A) mortgage loans made at the same time as the loans in the collateral pool that experienced EPDs: 0.18%

-4-

**Item 114.      Statements about the ratings of the certificate(s) that the Bank purchased:**

On pages S-10, S-26, and S-69 to S-70 of the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made statements about the ratings assigned to the certificates issued in this securitization. WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that the Bank's certificate was rated Aaa by Moody's Investors Service, Inc. and AAA by Standard & Poor's Rating Services. These were the highest ratings available from these two rating agencies.

WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. also statedthat: "The offered certificates are required to receive the ratings from Standard & Poor's Ratings Services . . . and Moody's Investors Service, Inc. indicated . . . in this prospectus supplement." WMALT 2005-5 Pros. Sup. S-10.

WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp also stated that : "The offered certificates will not be issued unless they receive the ratings from Standard & Poor's Ratings Services . . . and Moody's Investors Service, Inc. (' Moody's') indicated . . . in this prospectus supplement." WMALT 2005-5 Pros. Sup. S-26.

WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. also stated that: "It is a condition to the issuance of the offered certificates that they receive [the] ratings [AAA] from S&P and [Aaa from] Moody's . . . ." WMALT 2005-5 Pros. Sup. S. 69.

**Item 117.      Summary of loans about which the Defendants made untrue or misleading statements:**

(a)      **Number of loans whose LTVs were materially understated: 486**

(b)      **Number of loans in which the owner's equity was reduced by 5% or more by undisclosed additional liens: 698**

(c)      **Number of loans that suffered EPDs: 7**

-5-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

(d)    Number of loans in which the properties were stated to be owner-occupied but were not: 483

(e)    Eliminating duplicates, number of loans about which the Defendants made untrue or misleading statements: 1,253

(f)    Eliminating duplicates, percent of loans about which the Defendants made untrue or misleading statements: 46.0%

-6-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1

## SCHEDULE 35 TO THE AMENDED COMPLAINT

To the extent that this Schedule is incorporated by reference into allegations in the complaint, those allegations are made against Defendants WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp.

**Item 43.**      **Details of trust and certificate(s).**

(a)      **Dealer that sold the certificate(s) to the Bank:** WaMu Capital Corp.

(b)      **Description of the trust:** Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2005-8 was a securitization in September 2005 of 2,713 mortgage loans, in four groups. The mortgage loans in the collateral pool of this securitization were originated or acquired by Washington Mutual Mortgage Securities Corp. WMALT 2005-8 Pros. Sup. S-4 and S-25.

(c)      **Description of the certificate(s) that the Bank purchased:** WaMu Capital Corp. offered and sold to the Bank a senior certificate in this securitization, in tranche 2-CB-3, for which the Bank paid $160,000,000 plus accrued interest on September 30, 2005.

(d)      **Ratings of the certificate(s) when the Bank purchased them:** Standard & Poor's – AAA; Moody's – Aaa.

(e)      **Current ratings of the certificate(s):** Standard & Poor's – A; Moody's –Ca.

(f)      **URL of prospectus supplement for this securitization:** http://www.sec.gov/Archives/edgar/data/314643/000095011705003813/a40575.txt

**Item 51.**      **Untrue or misleading statements about the LTVs of the mortgage loans:**

In the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made the following statements about the LTVs of the mortgage loans in the collateral pool of this securitization.

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SCHEDULES OF THE FIRST AMENDED COMPLAINT** (*Deutsche*, 497839)

(a) In Appendix B of the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented tables of statistics about the mortgage loans in the collateral pool. WMALT 2005-8 Pros. Sup. S-84 to S-91. Each table focused on a certain characteristic of the loans (for example, original principal balance) and divided the mortgage loans into categories based on that characteristic (for example loans with original principal balances of $350,001 to $400,000, $400,001 to $450,000, $450,001 to $500,000, etc.). Each table then presented various data about the mortgage loans in each category. One of the tables, entitled "Current Loan-to-Value Ratios of the Group 1 Loans," divided the mortgage loans in group 1 into six categories of current LTV (for example, 60% or less, 60.01% to 70%, 70.01% to 75%, etc.). The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2005-8 Pros. Sup. S-84.

(b) "At origination, the weighted average loan-to-value ratio of the group 1 loans was approximately 70.8%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 1 loans was approximately 70.7%." WMALT 2005-8 Pros. Sup. S-84.

(c) In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Current Loan-to-Value Ratios of the Group 2 Loans." This table divided the mortgage loans in group 2 into seven categories of current LTV (for example, 60% or less, 60.01% to 70%, 70.01% to 75%, etc.). The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2005-8 Pros. Sup. S-86.

-2-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1     (d)   "At origination, the weighted average loan-to-value ratio of the group 2 loans was

2   approximately 69.2%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the

3   group 2 loans was approximately 69.1%." WMALT 2005-8 Pros. Sup. S-86.

4

5     (e)   In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities

6   Corp. presented a table entitled "Current Loan-to-Value Ratios of the Group 3 Loans." This table

7   divided the mortgage loans in group 3 into eight categories of current LTV (for example, 60% or

8   less, 60.01% to 70%, 70.01% to 75%, etc.). The table made untrue and misleading statements

9   about the number of mortgage loans, the aggregate principal balance outstanding, and the percent

10  of aggregate principal balance outstanding in each of these categories. WMALT 2005-8 Pros.

11  Sup. S-88.

12

13    (f)   "At origination, the weighted average loan-to-value ratio of the group 3 loans was

14  approximately 75.4%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the

15  group 3 loans was approximately 75.3%." WMALT 2005-8 Pros. Sup. S-88.

16    (g)   In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities

17  Corp. presented a table entitled "Current Loan-to-Value Ratios of the Group 4 Loans." This table

18  divided the mortgage loans in group 4 into four categories of current LTV (for example, 60% or

19  less, 60.01% to 70%, 70.01% to 75%, etc.). The table made untrue and misleading statements

20  about the number of mortgage loans, the aggregate principal balance outstanding, and the percent

21  of aggregate principal balance outstanding in each of these categories. WMALT 2005-8 Pros.

22

23  Sup. S-90.

24    (h)   "At origination, the weighted average loan-to-value ratio of the group 4 loans was

25  approximately 62.7%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the

26  group 4 loans was approximately 61.9%." WMALT 2005-8 Pros. Sup. S-90.

27

28

-3-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

**Item 61.       Details of the results of the AVM analysis:**

| | |
|---|---:|
| Number of loans | 2,713 |
| Number of properties on which there was enough information for the model to determine a true market value | 1,111 |
| Number of loans on which the stated value was 105% or more of the true market value as reported by the model | 567 |
| Aggregate amount by which the stated values of those properties exceeded their true market values as reported by the model | $43,415,480 |
| Number of loans on which the stated value was 95% or less of the true market value as reported by the model | 194 |
| Aggregate amount by which the true market values of those properties exceed their stated values | $18,006,600 |
| Number of loans with LTVs over 100%, as stated by Defendants | Not Applicable |
| Number of loans with LTVs over 100%, as determined by the model | 73 |
| Weighted-average LTV, as stated by Defendants (group 2) | 69.2% |
| Weighted-average LTV, as determined by the model (group 2) | 73.9% |

**Item 70.       Undisclosed additional liens:**

(a)     Minimum number of properties with additional liens: 127

(b)     Total reduction in equity from additional liens: $12,023,684

(c)     Weighted-average reduction in equity from additional liens: 61.7%

**Item 87.       Untrue or misleading statements about owner-occupancy of the properties that secured the mortgage loans:**

In the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made the following statements about the occupancy status of the properties that secured the mortgage loans in the collateral pool of this securitization.

(a)     In Appendix B of the prospectus supplement, described in Item 51, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Occupancy Status of the Group 1 Loans." This table divided the mortgage loans in group 1 into the categories "Owner Occupied," "Non-Owner Occupied," and "Owner Occupied–2nd Home." The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2005-8 Pros. Sup. S-85.

-4-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1    (b)      In the "Occupancy Status of the Group 1 Loans" table, WaMu Capital Corp. and

2    Washington Mutual Mortgage Securities Corp. stated that 93.15% of the mortgage loans in group

3    1 were secured by an "Owner Occupied" residence, 4.03% by a "Non-Owner Occupied"

4    property, and 2.83% by an "Owner Occupied–2nd Home." WMALT 2005-8 Pros. Sup. S-85.

5

6    (c)      In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities

7    Corp. presented a table entitled "Occupancy Status of the Group 2 Loans." This table divided the

8    mortgage loans in group 2 into the categories "Owner Occupied," "Non-Owner Occupied," and

9    "Owner Occupied–2nd Home." The table made untrue and misleading statements about the

10   number of mortgage loans, the aggregate principal balance outstanding, and the percent of

11   aggregate principal balance outstanding in each of these categories. WMALT 2005-8 Pros. Sup.

12   S-87.

13

14   (d)      In the "Occupancy Status of the Group 2 Loans" table, WaMu Capital Corp. and

15   Washington Mutual Mortgage Securities Corp. stated that 88.63% of the mortgage loans in group

16   2 were secured by an "Owner Occupied" residence, 8.4% by a "Non-Owner Occupied" property,

17   and 2.97% by an "Owner Occupied–2nd Home." WMALT 2005-8 Pros. Sup. S-87.

18   (e)      In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities

19   Corp. presented a table entitled "Occupancy Status of the Group 3 Loans." This table divided the

20   mortgage loans in group 3 into the categories "Owner Occupied," "Non-Owner Occupied," and

21   "Owner Occupied–2nd Home." The table made untrue and misleading statements about the

22   number of mortgage loans, the aggregate principal balance outstanding, and the percent of

23   aggregate principal balance outstanding in each of these categories. WMALT 2005-8 Pros. Sup.

24   S-89.

25

26   (f)      In the "Occupancy Status of the Group 3 Loans" table, WaMu Capital Corp. and

27   Washington Mutual Mortgage Securities Corp. stated that 78.01% of the mortgage loans in group

28

-5-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

3 were secured by an "Owner Occupied" residence, 16.4% by a "Non-Owner Occupied" property, and 5.59% by an "Owner Occupied–2nd Home." WMALT 2005-8 Pros. Sup. S-89.

(g)     In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Occupancy Status of the Group 4 Loans." This table divided the mortgage loans in group 4 into the categories "Owner Occupied," "Non-Owner Occupied," and "Owner Occupied–2nd Home." The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2005-8 Pros. Sup. S-91.

(h)     In the "Occupancy Status of the Group 4 Loans" table, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that 88.35% of the mortgage loans in group 4 were secured by an "Owner Occupied" residence, 4.93% by a "Non-Owner Occupied" property, 6.73% by an "Owner Occupied–2nd Home." WMALT 2005-8 Pros. Sup. S-91.

Item 95.     **Details of properties that were stated to be owner-occupied, but were not:**

(a)     **Number of loans on which the owner of the property instructed tax authorities to send property tax bills to him or her at a different address: 207**

(b)     **Number of loans on which the owner of the property could have, but did not, designate the property as his or her homestead: 355**

(c)     **Number of loans on which the owner of the property owned three or more properties: 23**

(d)     **Eliminating duplicates, number of loans about which one or more of statements (a) through (c) is true: 504**

Item 98.     **Untrue or misleading statements about the underwriting standards of the originators of the mortgage loans:**

On pages 8 and 17 through 18 of the prospectus, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made statements about the underwriting guidelines applied in the origination or acquisition of all of the mortgage loans in the collateral pool. All of those

-6-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

statements are incorporated herein by reference. In particular, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that:

(a)     "[Washington Mutual Mortgage Securities Corp.]'s underwriting standards are intended to evaluate the prospective Mortgagor's credit standing and repayment ability . . . ." WMALT 2005-8 Pros. 18.

**Item 105.     Early payment defaults:**

(a)     **Number of the mortgage loans that suffered EPDs: 14**

(b)     **Percent of the mortgage loans that suffered EPDs: 0.5%**

(c)     **Percent of all securitized, non-agency prime (including Alt-A) mortgage loans made at the same time as the loans in the collateral pool that experienced EPDs: 0.18%**

**Item 107.     *30+ days delinquencies in this securitization:***

(a)     **Number of the mortgage loans that were 30+ days delinquent on March 31, 2010: 401**

(b)     **Percent of the mortgage loans that were 30+ days delinquent on March 31, 2010: 14.8%**

(c)     **Percent of all mortgage loans in the United States that were 30+ days delinquent on March 31, 2010: 14.7%**

**Item 114.     Statements about the ratings of the certificate(s) that the Bank purchased:**

On pages S-10, S-28, and S-80 of the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made statements about the ratings assigned to the certificates issued in this securitization. WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that the Bank's certificate was rated Aaa by Moody's Investors Service, Inc. and AAA by Standard & Poor's Rating Services. These were the highest ratings available from these two rating agencies.

WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that: "The offered certificates are required to receive the ratings from Standard & Poor's Ratings Services . .

-7-

. and Moody's Investors Service, Inc. indicated . . . in this prospectus supplement." WMALT 2005-8 Pros. Sup. S-10.

WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. also stated that: "The offered certificates will not be issued unless they receive the ratings from Standard & Poor's Ratings Services . . . and Moody's Investors Service, Inc.('Moody's') indicated . . . in this prospectus supplement." WMALT 2005-8 Pros. Sup. S-28.

WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. also stated: "It is a condition to the issuance of the offered certificates that they receive ratings [of AAA] from S&P and [Aaa from] Moody's . . . ." WMALT 2005-8 Pros. Sup. S. 80.

Item 117.    Summary of loans about which the Defendants made untrue or misleading statements:

   (a)    Number of loans whose LTVs were materially understated: 567

   (b)    Number of loans in which the owner's equity was reduced by 5% or more by undisclosed additional liens: 127

   (c)    Number of loans that suffered EPDs: 14

   (d)    Number of loans in which the properties were stated to be owner-occupied but were not: 504

   (e)    Eliminating duplicates, number of loans about which the Defendants made untrue or misleading statements: 986

   (f)    Eliminating duplicates, percent of loans about which the Defendants made untrue or misleading statements: 36.3%

-8-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

## SCHEDULE 36 TO THE AMENDED COMPLAINT

To the extent that this Schedule is incorporated by reference into allegations in the complaint, those allegations are made against Defendants WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp.

**Item 43.**     **Details of trust and certificate(s).**

(a)     **Dealer that sold the certificate(s) to the Bank:** WaMu Capital Corp.

(b)     *Description of the trust:* Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2005-AR13 was a securitization in October 2005 of 7,191 mortgage loans, in one group. The mortgage loans in the collateral pool of this securitization were originated or acquired by Washington Mutual Bank and Washington Mutual Bank fsb. WAMU 2005-AR13 Pros. Sup. S-4 and S-34.

(c)     **Description of the certificate(s) that the Bank purchased:** WaMu Capital Corp. offered and sold to the Bank a senior certificate in this securitization, in tranche A-1b3, for which the Bank paid $100,000,000 plus accrued interest on October 25, 2005.

(d)     **Ratings of the certificate(s) when the Bank purchased them:** Standard & Poor's – AAA; Moody's – Aaa.

(e)     **Current ratings of the certificate(s):** Standard & Poor's – AAA; Moody's – Baa1.

(f)     **URL of prospectus supplement for this securitization:** http://www.sec.gov/Archives/edgar/data/1317069/000095011705004039/a40660.txt

**Item 51.**     **Untrue or misleading statements about the LTVs of the mortgage loans:**

In the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made the following statements about the LTVs of the mortgage loans in the collateral pool of this securitization.

(a)      In Appendix B of the prospectus supplement, WaMu Capital Corp. and

Washington Mutual Mortgage Securities Corp. presented tables of statistics about the mortgage

loans in the collateral pool. WAMU 2005-AR13 Pros. Sup. S-81 to S-87. Each table focused on a

certain characteristic of the loans (for example, original principal balance) and divided the

mortgage loans into categories based on that characteristic (for example loans with original

principal balances of $50,000 or less, $50,001 to $75,000, $75,001 to $100,000, etc.). Each table

then presented various data about the mortgage loans in each category. One of the tables, entitled

"Current Loan-to-Value Ratios of the Mortgage Loans," divided all of the loans in the collateral

pool into seven categories of current LTV (for example, 60% or less, 60.01% to 70%, 70.01% to

75%, etc.). The table made untrue and misleading statements about the number of mortgage

loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance

outstanding in each of these categories. WAMU 2005-AR13 Pros. Sup. S-83.

(b)      "At origination, the weighted average loan-to-value ratio of the Mortgage Loans

was approximately 71.9%. As of the Cut-Off Date, the weighted average loan-to-value ratio of

the Mortgage Loans was approximately 71.7%." WAMU 2005-AR13 Pros. Sup. S-83.

**Item 61.**      **Details of the results of the AVM analysis:**

| | |
|---|---|
| Number of loans | 7,191 |
| Number of properties on which there was enough information for the model to determine a true market value | 5,176 |
| Number of loans on which the stated value was 105% or more of the true market value as reported by the model | 2,355 |
| Aggregate amount by which the stated values of those properties exceeded their true market values as reported by the model | $348,504,773 |
| Number of loans on which the stated value was 95% or less of the true market value as reported by the model | 971 |
| Aggregate amount by which the true market values of those properties exceed their stated values | $116,647,705 |
| Number of loans with LTVs over 100%, as stated by Defendants | 0 |
| Number of loans with LTVs over 100%, as determined by the model | 366 |
| Weighted-average LTV, as stated by Defendants | 71.9% |
| Weighted-average LTV, as determined by the model | 81.2% |

-2-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1   Item 70.      Undisclosed additional liens:

2        (a)      Minimum number of properties with additional liens: 1,394

3        (b)      Total reduction in equity from additional liens: $171,893,256

4        (c)      Weighted-average reduction in equity from additional liens: 56.4%

5   Item 87.      Untrue or misleading statements about owner-occupancy of the properties
6                 that secured the mortgage loans:

7        In the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage

8   Securities Corp. made the following statements about the occupancy status of the properties that

9   secured the mortgage loans in the collateral pool of this securitization.

10       (a)      In Appendix B of the prospectus supplement, described in Item 51, WaMu Capital

11  Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Occupancy

12  Status of the Mortgage Loans." This table divided the mortgage loans in the collateral pool into

13  the categories "Owner Occupied," "Non-Owner Occupied," and "Owner Occupied –2nd Home."

14  The table made untrue and misleading statements about the number of mortgage loans, the

15  aggregate principal balance outstanding, and the percent of aggregate principal balance

16  outstanding in each of these categories. WAMU 2005-AR13 Pros. Sup. S-85.

17

18       (b)      In the "Occupancy Status of the Mortgage Loans" table, WaMu Capital Corp. and

19  Washington Mutual Mortgage Securities Corp. stated that 95.05% of the mortgage loans in the

20  collateral pool were secured by an "Owner Occupied" residence, 0.45% by a "Non-Owner

21  Occupied" property, and 4.51% by an "Owner Occupied –2nd Home." WAMU 2005-AR13 Pros.

22  Sup. S-85.

23

24  Item 95.      Details of properties that were stated to be owner-occupied, but were not:

25       (a)      Number of loans on which the owner of the property instructed tax
26                authorities to send property tax bills to him or her at a different
27                address: 1,049

28

-3-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

(b)   Number of loans on which the owner of the property could have, but did not, designate the property as his or her homestead: 2,055

(c)   Number of loans on which the owner of the property owned three or more properties: 214

(d)   Eliminating duplicates, number of loans about which one or more of statements (a) through (c) is true: 2,677

Item 98.   Untrue or misleading statements about the underwriting standards of the originators of the mortgage loans:

On pages 14 and 28 through 29 of the prospectus, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made statements about the underwriting guidelines applied in the origination or acquisition of all of the mortgage loans in the collateral pool. All of those statements are incorporated herein by reference. In particular, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that:

(a)   "The mortgage loan seller's underwriting standards are intended to evaluate a prospective mortgagor's credit standing and repayment ability . . . ." WAMU 2005-AR13 Pros. 29.

Item 107.   30+ days delinquencies in this securitization:

(a)   Number of the mortgage loans that were 30+ days delinquent on March 31, 2010: 1,132

(b)   Percent of the mortgage loans that were 30+ days delinquent on March 31, 2010: 15.7%

(c)   Percent of all mortgage loans in the United States that were 30+ days delinquent on March 31, 2010: 14.7%

Item 114.   Statements about the ratings of the certificate(s) that the Bank purchased:

On pages S-16, S-37, and S-78 of the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made statements about the ratings assigned to the certificates issued in this securitization. WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that the Bank's certificate was rated Aaa by Moody's Investors Service,

-4-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1   Inc. and AAA by Standard & Poor's Rating Services. These were the highest ratings available

2   from these two rating agencies.

3       WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that: "The

4   offered certificates are required to receive the ratings from Standard & Poor's Ratings Services . .

5   . and Moody's Investors Service, Inc. ('Moody's') indicated . . .in this prospectus supplement."

6   WAMU 2005-AR13 Pros. Sup. S-16.

7

8       WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. also stated that:

9   "The offered certificates will not be issued unless they receive the ratings from Standard & Poor's

10  Ratings Services . . . and Moody's Investors Service, Inc. ('Moody's') indicated . . . in this

11  prospectus supplement." WAMU 2005-AR13 Pros. Sup. S-37.

12      WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. also stated that:

13  "It is a condition to the issuance of the offered certificates that they receive the ratings [AAA]

14  from S&P and [Aaa from] Moody's . . . ." WAMU 2005-AR13 Pros. Sup. S-78.

15

16  **Item 117.     Summary of loans about which the Defendants made untrue or misleading
17                  statements:**

18      **(a)     Number of loans whose LTVs were materially understated: 2,355**

19      **(b)     Number of loans in which the owner's equity was reduced by 5% or more by
20               undisclosed additional liens: 1,394**

21      **(c)     Number of loans in which the properties were stated to be owner-occupied
22               but were not: 2,677**

23      **(d)     Eliminating duplicates, number of loans about which the Defendants made
                 untrue or misleading statements: 4669**

24      **(e)     Eliminating duplicates, percent of loans about which the Defendants made
25               untrue or misleading statements: 64.9%**

26

27

28

**SCHEDULES OF THE FIRST AMENDED COMPLAINT** (*Deutsche*, 497839)

## SCHEDULE 37 TO THE AMENDED COMPLAINT

To the extent that this Schedule is incorporated by reference into allegations in the complaint, those allegations are made against Defendants WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp.

**Item 43.        Details of trust and certificate(s).**

    **(a)        Dealer that sold the certificate(s) to the Bank:** WaMu Capital Corp.

    **(b)        Description of the trust:** Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2006-1 was a securitization in January 2006 of 3,220 mortgage loans, in five groups. The mortgage loans in the collateral pool of this securitization were originated by GreenPoint Mortgage Funding, Inc., New Century Mortgage Corp., and MortgageIT, Inc. WMALT 2006-1 Pros. Sup. S-5 and S-30.

    **(c)        Description of the certificate(s) that the Bank purchased:** WaMu Capital Corp. offered and sold to the Bank a senior certificate in this securitization, in tranche 5-CB-4 for which the Bank paid $184,264,799 plus accrued interest on January 31, 2006.

    **(d)        Ratings of the certificate(s) when the Bank purchased them:** Standard & Poor's – AAA; Moody's – Aaa.

    **(e)        Current ratings of the certificate(s):** Standard & Poor's – CCC; Moody's – Caa1.

    **(f)        URL of prospectus supplement for this securitization:** http://www.sec.gov/Archives/edgar/data/1317069/000095011706000384/a41199.txt

**Item 51.        Untrue or misleading statements about the LTVs of the mortgage loans:**

In the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made the following statements about the LTVs of the mortgage loans in the collateral pool of this securitization.

---

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1      (a)     In Appendix B of the prospectus supplement, WaMu Capital Corp. and

2  Washington Mutual Mortgage Securities Corp. presented tables of statistics about the mortgage

3  loans in the collateral pool. WMALT 2006-1 Pros. Sup. S-105 to S-119. Each table focused on a

4  certain characteristic of the loans (for example, original principal balance) and divided the loans

5  into categories based on that characteristic (for example loans with original principal balances of

6  $400,001 to $450,000, $450,001 to $500,000, $550,001 to $600,000, etc.). Each table then

7  presented various data about the mortgage loans in each category. One of the tables, entitled

8  "Current Loan-to-Value Ratios of the Group 1 Loans," divided the mortgage loans in group 1 into

9  four categories of current LTV (for example, 60% or less, 60.01% to 70%, 70.01% to 75%, etc.).

10  The table made untrue and misleading statements about the number of mortgage loans, the

11  aggregate principal balance outstanding, and the percent of aggregate principal balance

12  outstanding in each of these categories. WMALT 2006-1 Pros. Sup. S-105.

13      (b)     "At origination, the weighted average loan-to-value ratio of the group 1 loans was

14  approximately 62.4%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the

15  group 1 loans was approximately 61.8%." WMALT 2006-1 Pros. Sup. S-105.

16      (c)     In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage

17  Securities Corp. presented a table entitled "Current Loan-to-Value Ratios of the Group 2 Loans."

18  This table divided the mortgage loans in group 2 into eight categories of current LTV (for

19  example, 60% or less, 60.01% to 70%, 70.01% to 75%, etc.). The table made untrue and

20  misleading statements about the number of mortgage loans, the aggregate principal balance

21  outstanding, and the percent of aggregate principal balance outstanding in each of these

22  categories. WMALT 2006-1 Pros. Sup. S-108.

-2-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(d)      "At origination, the weighted average loan-to-value ratio of the group 2 loans was approximately 78.1%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 2 loans was approximately 78.0%." WMALT 2006-1 Pros. Sup. S-108.

(e)      In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Current Loan-to-Value Ratios of the Group 3 Loans." This table divided the mortgage loans in group 3 into six categories of current LTV (for example, 60% or less, 60.01% to 70%, 70.01% to 75%, etc.). The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2006-1 Pros. Sup. S-111.

(f)      "At origination, the weighted average loan-to-value ratio of the group 3 loans was approximately 71.5%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 3 loans was approximately 71.5%." WMALT 2006-1 Pros. Sup. S-111.

(g)      In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Current Loan-to-Value Ratios of the Group 4 Loans." This table divided the mortgage loans in group 4 into eight categories of current LTV (for example, 60% or less, 60.01% to 70%, 70.01% to 75%, etc.). The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2006-1 Pros. Sup. S-114.

(h)      "At origination, the weighted average loan-to-value ratio of the group 4 loans was approximately 78.5%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 4 loans was approximately 78.4%." WMALT 2006-1 Pros. Sup. S-114.

-3-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

(i)   In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Current Loan-to-Value Ratios of the Group 5 Loans." This table divided the mortgage loans in group 5 into eight categories of current LTV (for example, 60% or less, 60.01% to 70%, 70.01% to 75%, etc.). The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2006-1 Pros. Sup. S-117.

(j)   "At origination, the weighted average loan-to-value ratio of the group 5 loans was approximately 72.7%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 5 loans was approximately 72.5%." WMALT 2006-1 Pros. Sup. S-117.

**Item 61.**  **Details of the results of the AVM analysis:**

| | |
|---|---|
| Number of loans | 3,220 |
| Number of properties on which there was enough information for the model to determine a true market value | 1,518 |
| Number of loans on which the stated value was 105% or more of the true market value as reported by the model | 832 |
| Aggregate amount by which the stated values of those properties exceeded their true market values as reported by the model | $56,522,694 |
| Number of loans on which the stated value was 95% or less of the true market value as reported by the model | 269 |
| Aggregate amount by which the true market values of those properties exceed their stated values | $15,157,950 |
| Number of loans with LTVs over 100%, as stated by Defendants | 0 |
| Number of loans with LTVs over 100%, as determined by the model | 157 |
| Weighted-average LTV, as stated by Defendants | 72.7% |
| Weighted-average LTV, as determined by the model | 80.7% |

**Item 64.**  **Evidence from subsequent sales of refinanced properties:**

Of the 3,220 mortgage loans in the collateral pool, 1,363 were taken out to refinance, rather than to purchase, properties. For those 1,363 loans, the value (denominator) in the LTV was an appraised value rather than a sale price. Of those 1,363 properties, 197 were subsequently sold for a total of approximately $54,891,659. The total value ascribed to those same properties in

-4-

**SCHEDULES OF THE FIRST AMENDED COMPLAINT** (*Deutsche*, 497839)

the LTV data reported in the prospectus supplements and other documents sent to the Bank was $70,330,222. Thus, those properties were sold for 78.0% of the value ascribed to them, a difference of 22.0%. This difference cannot be accounted for by declines in house prices in the areas in which those properties were located.

**Item 81.     Untrue or misleading statements about compliance with USPAP:**

In the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made the following statement about the appraisals of the properties that were originated or acquired by Washington Mutual Bank: "At origination, all appraisals are required to conform to the Uniform Standards of Professional Appraisal Practice adopted by the Appraisal Standards Board of the Appraisal Foundation, and are made on forms acceptable to Fannie Mae and/or Freddie Mac." WMALT 2006-1 Pros. Sup. S-28.

**Item 87.     Untrue or misleading statements about owner-occupancy of the properties that secured the mortgage loans:**

In the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made the following statements about the occupancy status of the properties that secured the mortgage loans in the collateral pool of this securitization.

(a)     In Appendix B of the prospectus supplement, described in Item 51, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Occupancy Status of the Group 1 Loans." This table divided the mortgage loans in group 1 into the categories "Owner Occupied," "Non-Owner Occupied," and "Owner Occupied –2nd Home." The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2006-1 Pros. Sup. S-106.

(b)     In the "Occupancy Status of the Group 1 Loans" table, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that 76.59% of the mortgage loans in group

-5-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1 were secured by an "Owner Occupied" residence, 9.43% by a "Non-Owner Occupied"

property, and 13.99% by an "Owner Occupied –2nd Home." WMALT 2006-1 Pros. Sup. S-106.

     (c)    In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities

Corp. presented a table entitled "Occupancy Status of the Group 2 Loans." This table divided the

mortgage loans in group 2 into the categories "Non-Owner Occupied" and "Owner Occupied –

2nd Home." The table made untrue and misleading statements about the number of mortgage

loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance

outstanding in each of these categories. WMALT 2006-1 Pros. Sup. S-109.

     (d)    In the "Occupancy Status of the Group 2 Loans" table, WaMu Capital

Corp. and Washington Mutual Mortgage Securities Corp. stated that 91.55% of the mortgage

loans in group 2 were secured by a "Non-Owner Occupied" property and 8.45% by an "Owner

Occupied –2nd Home." WMALT 2006-1 Pros. Sup. S-109.

     (e)    In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities

Corp. presented a table entitled "Occupancy Status of the Group 3 Loans." This table divided the

mortgage loans in group 3 into the categories "Owner Occupied," "Non-Owner Occupied," and

"Owner Occupied –2nd Home." The table made untrue and misleading statements about the

number of mortgage loans, the aggregate principal balance outstanding, and the percent of

aggregate principal balance outstanding in each of these categories. WMALT 2006-1 Pros. Sup.

S-112.

     (f)    In the "Occupancy Status of the Group 3 Loans" table, WaMu Capital Corp. and

Washington Mutual Mortgage Securities Corp. stated that 92.87% of the mortgage loans in group

3 were secured by an "Owner Occupied" residence, 3.74% by a "Non-Owner Occupied"

property, and 3.39% by an "Owner Occupied –2nd Home." WMALT 2006-1 Pros. Sup. S-112.

-6-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

(g)     In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Occupancy Status of the Group 4 Loans." In this table, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that 100% of the mortgage loans in group 4 were secured by an "Owner Occupied" residence. WMALT 2006-1 Pros. Sup. S-116.

(h)     In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Occupancy Status of the Group 5 Loans." This table divided the mortgage loans in group 5 into the categories "Owner Occupied," "Non-Owner Occupied," and "Owner Occupied –2nd Home." The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2006-1 Pros. Sup. S-118.

(i)     In the "Occupancy Status of the Group 5 Loans" table, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that 83.14% of the mortgage loans in group 5 were secured by an "Owner Occupied" residence, 15.49% by a "Non-Owner Occupied" property, and 1.37% by an "Owner Occupied –2nd Home." WMALT 2006-1 Pros. Sup. S-118.

Item 95.     **Details of properties that were stated to be owner-occupied, but were not:**

(a)     **Number of loans on which the owner of the property instructed tax authorities to send property tax bills to him or her at a different address: 350**

(b)     **Number of loans on which the owner of the property could have, but did not, designate the property as his or her homestead: 437**

(c)     **Number of loans on which the owner of the property owned three or more properties: 35**

(d)     **Number of loans that went straight from current to foreclosure or ownership by lender: 1**

(e)     **Eliminating duplicates, number of loans about which one or more of statements (a) through (d) is true: 683**

-7-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

**Item 98.**   **Untrue or misleading statements about the underwriting standards of the originators of the mortgage loans:**

On pages S-27 through S-30 of the prospectus supplement and 43 through 45 of the prospectus, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made statements about the underwriting guidelines applied in the origination or acquisition of all of the mortgage loans in the collateral pool. All of those statements are incorporated herein by reference. In particular, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that:

(a)   "The sponsor's underwriting standards and Washington Mutual Bank's underwriting guidelines generally are intended to evaluate the prospective borrower's credit standing and repayment ability . . . ." WMALT 2006-1 Pros. Sup. S-27.

(b)   "Exceptions to the ratio guidelines may be made when compensating factors are present." WMALT 2006-1 Pros. Sup. S-28.

(c)   "Exceptions to the underwriting standards described above may be made on a case-by-case basis if compensating factors are present." WMALT 2006-1 Pros. Sup. S-29.

**Item 105.**   **Early payment defaults:**

(a)   **Number of the mortgage loans that suffered EPDs: 21**

(b)   **Percent of the mortgage loans that suffered EPDs: 0.7%**

(c)   **Percent of all securitized, non-agency prime (including Alt-A) mortgage loans made at the same time as the loans in the collateral pool that experienced EPDs: 0.44%**

**Item 107.**   **30+ days delinquencies in this securitization:**

(a)   **Number of the mortgage loans that were 30+ days delinquent on March 31, 2010: 861**

(b)   **Percent of the mortgage loans that were 30+ days delinquent on March 31, 2010: 26.7%**

(c)   **Percent of all mortgage loans in the United States that were 30+ days delinquent on March 31, 2010: 14.7%**

-8-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

**Item 114.     Statements about the ratings of the certificate(s) that the Bank purchased:**

On pages S-14, S-49, and S-99 to S-100 of the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made statements about the ratings assigned to the certificates issued in this securitization. WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that the Bank's certificate was rated Aaa by Moody's Investors Service, Inc. and AAA by Standard & Poor's Rating Services. These were the highest ratings available from these two rating agencies.

WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. also stated: "It is a condition to the issuance of the offered certificates that they receive the . . . ratings [AAA] from Standard & Poor's Ratings Services, . . . and [Aaa from] Moody's Investors Service, Inc. . . . ." WMALT 2006-1 Pros. Sup. S-14 and S-99.

WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. also stated: "The offered certificates will not be issued unless they receive the ratings from Standard & Poor's Ratings Services . . . and Moody's Investors Service, Inc. ('Moody's') indicated . . . in this prospectus supplement." WMALT 2006-1 Pros. Sup. S-49.

**Item 117.     Summary of loans about which the Defendants made untrue or misleading statements:**

(a)     Number of loans whose LTVs were materially understated: 832

(b)     Number of loans that suffered EPDs: 21

(c)     Number of loans in which the properties were stated to be owner-occupied but were not: 683

(d)     Eliminating duplicates, number of loans about which the Defendants made untrue or misleading statements: 1,321

(e)     Eliminating duplicates, percent of loans about which the Defendants made untrue or misleading statements: 41%

-9-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

BLUEBIRD (888) 477-0700
OFFICE SUPPLIES www.bluebirdonline.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SCHEDULE 38 TO THE AMENDED COMPLAINT

To the extent that this Schedule is incorporated by reference into allegations in the complaint, those allegations are made against Defendants WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp.

**Item 43.**     **Details of trust and certificate(s).**

(a)     **Dealer that sold the certificate(s) to the Bank** WaMu Capital Corp.

(b)     **Description of the trust:** Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2006-3 was a securitization in March 2006 of 1,780 mortgage loans, in five groups. The mortgage loans in the collateral pool of this securitization were originated by GreenPoint Mortgage Funding, Inc., New Century Mortgage Corp., and MortgageIT, Inc. WMALT 2006-3 Pros. Sup. S-5 and S-25.

(c)     **Description of the certificate(s) that the Bank purchased:** WaMu Capital Corp. offered and sold to the Bank a senior certificate in this securitization, in tranche 3-CB-2 for which the Bank paid $38,342,643 plus accrued interest on March 31, 2006.

(d)     **Ratings of the certificate(s) when the Bank purchased them:** Standard & Poor's – AAA; Fitch – AAA.

(e)     **Current ratings of the certificate(s):** Standard & Poor's – CCC; Fitch – BB.

(f)     **URL of prospectus supplement for this securitization:** http://www.sec.gov/Archives/edgar/data/1317069/000095011706001458/a41627.htm

**Item 51.**     **Untrue or misleading statements about the LTVs of the mortgage loans:**

In the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made the following statements about the LTVs of the mortgage loans in the collateral pool of this securitization.

---

**SCHEDULES OF THE FIRST AMENDED COMPLAINT** (*Deutsche*, 497839)

1   (a)     In Appendix B of the prospectus supplement, WaMu Capital Corp. and

2   Washington Mutual Mortgage Securities Corp. presented tables of statistics about the mortgage

3   loans in the collateral pool. WMALT 2006-3 Pros. Sup. S-90 to S-104. Each table focused on a

4   certain characteristic of the loans (for example, original principal balance) and divided the loans

5   into categories based on that characteristic (for example, loans with original principal balances of

6   $400,001 to $450,000, $450,001 to $500,000, $500,001 to $550,000, etc.). Each table then

7

8   presented various data about the mortgage loans in each category. One of the tables, entitled

9   "Current Loan-to-Value Ratios of the Group 1 Loans," divided the loans in group 1 into five

10  categories of current LTV (for example, 60% or less, 60.01% to 70%, 70.01% to 75%, etc.). The

11  table made untrue and misleading statements about the number of mortgage loans, the aggregate

12  principal balance outstanding, and the percent of aggregate principal balance outstanding in each

13  of these categories. WMALT 2006-3 Pros. Sup. S-90.

14

15  (b)     "At origination, the weighted average loan-to-value ratio of the group 1 loans was

16  approximately 71.3%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the

17  group 1 loans was approximately 71.3%." WMALT 2006-3 Pros. Sup. S-90.

18

19  (c)     In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities

20  Corp. presented a table entitled "Current Loan-to-Value Ratios of the Group 2 Loans." This table

21  divided the mortgage loans in group 2 into six categories of current LTV (for example, 60% or

22  less, 60.01% to 70%, 70.01% to 75%, etc.). The table made untrue and misleading statements

23  about the number of mortgage loans, the aggregate principal balance outstanding, and the percent

24  of aggregate principal balance outstanding in each of these categories. WMALT 2006-3 Pros.

25  Sup. S-93.

26

27

28

-11-

**SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)**

(d)     "At origination, the weighted average loan-to-value ratio of the group 2 loans was approximately 74.9%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 2 loans was approximately 74.9%." WMALT 2006-3 Pros. Sup. S-93.

(e)     In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Current Loan-to-Value Ratios of the Group 3 Loans." This table divided the mortgage loans in group 3 into six categories of current LTV (for example, 60% or less, 60.01% to 70%, 70.01% to 75%, etc.). The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2006-3 Pros. Sup. S-96.

(f)     "At origination, the weighted average loan-to-value ratio of the group 3 loans was approximately 73.0%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 3 loans was approximately 72.9%." WMALT 2006-3 Pros. Sup. S-96.

(g)     In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Current Loan-to-Value Ratios of the Group 4 Loans." This table divided the mortgage loans in group 4 into eight categories of current LTV (for example, 60% or less, 60.01% to 70%, 70.01% to 75%, etc.). The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2006-3 Pros. Sup. S-99.

(h)     "At origination, the weighted average loan-to-value ratio of the group 4 loans was approximately 77.3%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 4 loans was approximately 77.2%." WMALT 2006-3 Pros. Sup. S-99.

-12-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1      (i)      In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities

2   Corp. presented a table entitled "Current Loan-to-Value Ratios of the Group 5 Loans." This table

3   divided the mortgage loans in group 5 into seven categories of current LTV (for example, 60% or

4   less, 60.01% to 70%, 70.01% to 75%, etc.). The table made untrue and misleading statements

5   about the number of mortgage loans, the aggregate principal balance outstanding, and the percent

6   of aggregate principal balance outstanding in each of these categories. WMALT 2006-3 Pros.

7   Sup. S-102.

8

9      (j)     "At origination, the weighted average loan-to-value ratio of the group 5 loans was

10  approximately 65.3%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the

11  group 5 loans was approximately 64.6%." WMALT 2006-3 Pros. Sup. S-102.

12

**Item 61.**     **Details of the results of the AVM analysis:**

| | |
|---|---|
| Number of loans | 1,780 |
| Number of properties on which there was enough information for the model to determine a true market value | 962 |
| Number of loans on which the stated value was 105% or more of the true market value as reported by the model | 571 |
| Aggregate amount by which the stated values of those properties exceeded their true market values as reported by the model | $46,667,140 |
| Number of loans on which the stated value was 95% or less of the true market value as reported by the model | 137 |
| Aggregate amount by which the true market values of those properties exceed their stated values | $9,368,300 |
| Number of loans with LTVs over 100%, as stated by Defendants | 0 |
| Number of loans with LTVs over 100%, as determined by the model | 102 |
| Weighted-average LTV, as stated by Defendants (group 3) | 73.% |
| Weighted-average LTV, as determined by the model (group 3) | 79.1% |

**Item 64.**     **Evidence from subsequent sales of refinanced properties:**

      Of the 1,780 mortgage loans in the collateral pool, 1,028 were taken out to refinance,

rather than to purchase, properties. For those 1,028 loans, the value (denominator) in the LTV

was an appraised value rather than a sale price. Of those 1,028 properties, 143 were subsequently

sold for a total of approximately $45,213,842. The total value ascribed to those same properties in

-13-

the LTV data reported in the prospectus supplements and other documents sent to the Bank was $62,324,500. Thus, those properties were sold for 72.5% of the value ascribed to them, a difference of 27.5%. This difference cannot be accounted for by declines in house prices in the areas in which those properties were located.

**Item 81.**      **Untrue or misleading statements about compliance with USPAP:**

In the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made the following statement about the appraisals of the properties that secured the mortgage loans in the collateral pool of this securitization: "At origination, all appraisals are required to conform to the Uniform Standards of Professional Appraisal Practice adopted by the Appraisal Standards Board of the Appraisal Foundation, and are made on forms acceptable to Fannie Mae and/or Freddie Mac." WMALT 2006-3 Pros. Sup. S-23.

**Item 87.**      **Untrue or misleading statements about owner-occupancy of the properties that secured the mortgage loans:**

In the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made the following statements about the occupancy status of the properties that secured the mortgage loans in the collateral pool of this securitization.

(a)      In Appendix B of the prospectus supplement, described in Item 51, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Occupancy Status of the Group 1 Loans." This table divided the mortgage loans in group 1 into the categories "Owner Occupied," "Non-Owner Occupied," and "Owner Occupied – 2nd Home." The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2006-3 Pros. Sup. S-92.

(b)      In the "Occupancy Status of the Group 1 Loans" table, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that 94.83% of the mortgage loans in group

-14-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

1 were secured by an "Owner Occupied" residence, 1.79% by a "Non-Owner Occupied" property, and 3.37% by an "Owner Occupied – 2nd Home." WMALT 2006-3 Pros. Sup. S-92.

(c)     In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Occupancy Status of the Group 2 Loans." This table divided the mortgage loans in group 2 into the categories "Owner Occupied," "Non-Owner Occupied," and "Owner Occupied – 2nd Home." The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2006-3 Pros. Sup. S-94.

(d)     In the "Occupancy Status of the Group 2 Loans" table, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that 86.46% of the mortgage loans in group 2 were secured by an "Owner Occupied" residence, 8.98% by a "Non-Owner Occupied" property, and 4.56% by an "Owner Occupied – 2nd Home." WMALT 2006-3 Pros. Sup. S-94.

(e)     In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Occupancy Status of the Group 3 Loans." This table divided the mortgage loans in group 3 into the categories "Owner Occupied," "Non-Owner Occupied," and "Owner Occupied – 2nd Home." The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2006-3 Pros. Sup. S-97.

(f)     In the "Occupancy Status of the Group 3 Loans" table, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that 86.44% of the mortgage loans in group 3 were secured by an "Owner Occupied" residence, 11.69% by a "Non-Owner Occupied" property, and 1.87% by an "Owner Occupied – 2nd Home." WMALT 2006-3 Pros. Sup. S-97.

-15-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

(g)     In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Occupancy Status of the Group 4 Loans." This table divided the mortgage loans in group 4 into the categories "Owner Occupied," "Non-Owner Occupied," and "Owner Occupied – 2nd Home." The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2006-3 Pros. Sup. S-100.

(h)     In the "Occupancy Status of the Group 4 Loans" table, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that 92.47% of the mortgage loans in group 4 were secured by an "Owner Occupied" residence, 7.11% by a "Non-Owner Occupied" property, and 0.42% by an "Owner Occupied – 2nd Home." WMALT 2006-3 Pros. Sup. S-100.

(i)     In Appendix B, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. presented a table entitled "Occupancy Status of the Group 5 Loans." This table divided the mortgage loans in group 5 into the categories "Owner Occupied," "Non-Owner Occupied," and "Owner Occupied – 2nd Home." The table made untrue and misleading statements about the number of mortgage loans, the aggregate principal balance outstanding, and the percent of aggregate principal balance outstanding in each of these categories. WMALT 2006-3 Pros. Sup. S-103.

(j)     In the "Occupancy Status of the Group 5 Loans" table, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that 76.91% of the mortgage loans in group 5 were secured by an "Owner Occupied" residence, 21.34% by a "Non-Owner Occupied" property, and 1.75% by an "Owner Occupied – 2nd Home." WMALT 2006-3 Pros. Sup. S-103.

Item 95.     Details of properties that were stated to be owner-occupied, but were not:

(a)     Number of loans on which the owner of the property instructed tax authorities to send property tax bills to him or her at a different address: 222

-16-

(b)    Number of loans on which the owner of the property could have, but did not, designate the property as his or her homestead: 306

(c)    Number of loans on which the owner of the property owned three or more properties: 23

(d)    Number of loans that went straight from current to foreclosure or ownership by lender: 1

(e)    Eliminating duplicates, number of loans about which one or more of statements (a) through (d) is true: 456

Item 98.    Untrue or misleading statements about the underwriting standards of the originators of the mortgage loans:

On pages S-22 through S-25 of the prospectus supplement and 43 through 45 of the prospectus, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made statements about the underwriting guidelines applied in the origination or acquisition of all of the mortgage loans in the collateral pool. All of those statements are incorporated herein by reference. In particular, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that:

(a)    "The sponsor's underwriting standards and Washington Mutual Bank's underwriting guidelines generally are intended to evaluate the prospective borrower's credit standing and repayment ability . . . ." WMALT 2006-3 Pros. Sup. S-22.

(b)    "Exceptions to the ratio guidelines may be made when compensating factors are present." WMALT 2006-3 Pros. Sup. S-23.

(c)    "Exceptions to the underwriting standards described above are made on a case-by-case basis if compensating factors are present. In those cases, the basis for the exception is documented." WMALT 2006-3 Pros. Sup. S-24.

Item 105.    Early payment defaults:

(a)    Number of the mortgage loans that suffered EPDs: 15

(b)    Percent of the mortgage loans that suffered EPDs: 0.8%

-17-

(c)     Percent of all securitized, non-agency prime (including Alt-A) mortgage loans made at the same time as the loans in the collateral pool that experienced EPDs: 0.44%

Item 107.     30+ days delinquencies in this securitization:

(a)     Number of the mortgage loans that were 30+ days delinquent on March 31, 2010: 499

(b)     Percent of the mortgage loans that were 30+ days delinquent on March 31, 2010: 28.0%

(c)     Percent of all mortgage loans in the United States that were 30+ days delinquent on March 31, 2010: 14.7%

Item 114.     Statements about the ratings of the certificate(s) that the Bank purchased:

On pages S-12, S-45, and S-86 of the prospectus supplement, WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. made statements about the ratings assigned to the certificates issued in this securitization. WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. stated that the Bank's certificate was rated AAA by Standard & Poor's Rating Services and AAA by Fitch Ratings. These were the highest ratings available from these two rating agencies.

WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. also stated: "It is a condition to the issuance of the offered certificates that they receive the . . . ratings [AAA] from Standard & Poor's Ratings Services, . . . and [AAA from] Fitch Ratings.".WMALT 2006-3 Pros. Sup. S-12 and S-86.

WaMu Capital Corp. and Washington Mutual Mortgage Securities Corp. also stated: "The offered certificates will not be issued unless they receive the ratings from Standard & Poor's Ratings Services . . . and Fitch Ratings (' Fitch') indicated . . . in this prospectus supplement." WMALT 2006-3 Pros. Sup. S-45.

-18-

**Item 117.**   **Summary of loans about which the Defendants made untrue or misleading statements:**

(a)   Number of loans whose LTVs were materially understated: 571

(b)   Number of loans that suffered EPDs: 15

(c)   Number of loans in which the properties were stated to be owner-occupied but were not: 456

(d)   Eliminating duplicates, number of loans about which the Defendants made untrue or misleading statements: 859

(e)   Eliminating duplicates, percent of loans about which the Defendants made untrue or misleading statements: 48.3

-19-

SCHEDULES OF THE FIRST AMENDED COMPLAINT (*Deutsche*, 497839)

# EXHIBIT C

# Exhibit C

POS-010

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
ROBERT A. GOODIN, State Bar No. 061302
GOODIN, MacBRIDE, SQUERI, DAY & LAMPREY, LLP
505 Sansome, Suite 900
San Francisco, California  941111
TELEPHONE NO.: (415) 392-7900    FAX NO. *(Optional):* (415) 398-4321
E-MAIL ADDRESS *(Optional):* rgoodin@goodinmacbride.com
ATTORNEY FOR *(Name):* Plaintiff Federal Home Loan Bank of San Francisco

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, California
BRANCH NAME:

PLAINTIFF/PETITIONER: FEDERAL HOME LOAN BANK OF SAN
FRANCISCO
DEFENDANT/RESPONDENT: DEUTSCHE BANK SECURITIES INC., et al

**FOR COURT USE ONLY**

**FILED**
San Francisco County Superior Court

JUN 25 2010

CLERK OF THE COURT

BY: _____ Deputy Clerk

CASE NUMBER:
CGC-10-497839

PROOF OF SERVICE OF SUMMONS

Ref. No. or File No.:
3428-001

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. [x] summons
   b. [x] complaint    (First Amended)
   c. [x] Alternative Dispute Resolution (ADR) package
   d. [x] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] cross-complaint
   f. [x] other *(specify documents):* Notice to Plaintiff re Case Management Conference; Notice of Related Case;
      Notice of Hearing on Plaintiff's Applications for Admission of Counsel Pro Hac Vice; (See MC-020)

3. a. Party served *(specify name of party as shown on documents served):* Deutsche Alt-A Securities, Inc.

   b. [x] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person
      under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
      "John" Tilton (Process Agent)

4. Address where the party was served: CT CORP 111 Eighth Avenue NY NY

5. I served the party *(check proper box)*
   a. [X] by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to
      receive service of process for the party (1) on *(date):* 6/10/10        (2) at *(time):* 2:00 PM
   b. [ ] by substituted service. On *(date):*        at *(time):*        I left the documents listed in item 2 with or
      in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ] (business) a person at least 18 years of age apparently in charge at the office or usual place of business
          of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual
          place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing
          address of the person to be served, other than a United States Postal Service post office box. I informed
          him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served
          at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on
          *(date):*        from *(city):*        or [ ] a declaration of mailing is attached.

      (5) [ ] I attach a declaration of diligence stating actions taken first to attempt personal service.

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Legal
Solutions
@ Plus

Page 1 of 2

Code of Civil Procedure, § 417.10

| PLAINTIFF/PETITIONER: FEDERAL HOME LOAN BANK OF SAN FRANCISCO | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: DEUTSCHE BANK SECURITIES INC., et al | CGC-10-497839 |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

   (1) on *(date):*             (2) from *(city):*

   (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)

   (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

   d. ☐ **by other means** *(specify means of service and authorizing code section):*

   ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. ☐ as an individual defendant.
   b. ☐ as the person sued under the fictitious name of *(specify):*
   c. ☐ as occupant.
   d. ☒ On behalf of *(specify):* Deutsche Alt-A Securities, Inc.
      under the following Code of Civil Procedure section:

      ☒ 416.10 (corporation)      ☐ 415.95 (business organization, form unknown)
      ☐ 416.20 (defunct corporation)      ☐ 416.60 (minor)
      ☐ 416.30 (joint stock company/association)      ☐ 416.70 (ward or conservatee)
      ☐ 416.40 (association or partnership)      ☐ 416.90 (authorized person)
      ☐ 416.50 (public entity)      ☐ 415.46 (occupant)
           ☐ other:

7. **Person who served papers**
   a. Name: Linda Coleman
   b. Address: 20 Vesey Street, NY, NY
   c. Telephone number: 212-227-9600
   d. The fee for service was: $
   e. I am:
      (1) ☒ not a registered California process server.
      (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
      (3) ☐ registered California process server:
         (i) ☐ owner ☐ employee ☐ independent contractor.
         (ii) Registration No.:
         (iii) County:

8. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   or

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: 6/15/10

Linda Coleman

_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)          (SIGNATURE)

POS-010 [Rev. January 1, 2007]        **PROOF OF SERVICE OF SUMMONS**        Page 2 of 2

| SHORT TITLE: Federal Home Loan Bank of San Francisco v. Deutsche Bank Securities, Inc., et al. | CASE NUMBER: CGC-10-497839 |
|---|---|

1  Proposed Order re: same

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  *(Required for verified pleading)* The items on this page stated on information and belief *(specify item numbers, not line numbers)*:

27  This page may be used with any Judicial Council form or any other paper filed with this court.   Page 3

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]
Optional Form

**ADDITIONAL PAGE**
Attach to Judicial Council Form or Other Court Paper

Legal
Solutions
Plus

CRC 201, 501

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>ROBERT A. GOODIN, State Bar No. 061302<br>GOODIN, MacBRIDE, SQUERI, DAY & LAMPREY, LLP<br>505 Sansome, Suite 900<br>San Francisco, California  941111<br>TELEPHONE NO.: (415) 392-7900  FAX NO. *(Optional):* (415) 398-4321<br>E-MAIL ADDRESS *(Optional):* rgoodin@goodinmacbride.com<br>ATTORNEY FOR *(Name):* Plaintiff Federal Home Loan Bank of San Francisco | FOR COURT USE ONLY<br><br>**FILED**<br>San Francisco County Superior Court<br><br>JUN 25 2010<br><br>CLERK OF THE COURT<br>BY: _____ Deputy Clerk |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco<br>STREET ADDRESS: 400 McAllister Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: San Francisco, California<br>BRANCH NAME: | |

| PLAINTIFF/PETITIONER: FEDERAL HOME LOAN BANK OF SAN FRANCISCO<br>DEFENDANT/RESPONDENT: DEUTSCHE BANK SECURITIES INC., et al | CASE NUMBER:<br>CGC-10-497839 |

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>3428-001 |

*(Separate proof of service is required for each party served.)*

1.  At the time of service I was at least 18 years of age and not a party to this action.

2.  I served copies of:
    a. [x] summons
    b. [x] complaint    (First Amended)
    c. [x] Alternative Dispute Resolution (ADR) package
    d. [x] Civil Case Cover Sheet *(served in complex cases only)*
    e. [ ] cross-complaint
    f. [x] other *(specify documents):* Notice to Plaintiff re Case Management Conference; Notice of Related Case;
        Notice of Hearing on Plaintiff's Applications for Admission of Counsel Pro Hac Vice; (See MC-020)

3.  a.  Party served *(specify name of party as shown on documents served):* DB Structured Products, Inc.

    b. [x] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person
        under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
        "John" Tilton (Process Agent)

4.  Address where the party was served: CT Corp. 111 Eighth Avenue, NY, NY

5.  I served the party *(check proper box)*
    a. [X] by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to
        receive service of process for the party (1) on *(date):* 6/10/10        (2) at *(time):* 2:00 PM
    b. [ ] by substituted service. On *(date):*        at *(time):*        I left the documents listed in item 2 with or
        in the presence of *(name and title or relationship to person indicated in item 3):*

        (1) [ ]  (business) a person at least 18 years of age apparently in charge at the office or usual place of business
            of the person to be served. I informed him or her of the general nature of the papers.

        (2) [ ]  (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual
            place of abode of the party. I informed him or her of the general nature of the papers.

        (3) [ ]  (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing
            address of the person to be served, other than a United States Postal Service post office box. I informed
            him or her of the general nature of the papers.

        (4) [ ]  I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served
            at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on
            *(date):*        from *(city):*        or [ ] a declaration of mailing is attached.

        (5) [ ]  I attach a declaration of diligence stating actions taken first to attempt personal service.

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Legal<br>Solutions<br>Plus | Code of Civil Procedure, § 417.10 |

| PLAINTIFF/PETITIONER: FEDERAL HOME LOAN BANK OF SAN FRANCISCO | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: DEUTSCHE BANK SECURITIES INC., et al | CGC-10-497839 |

5. c. [ ] **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

   (1) on *(date):*      (2) from *(city):*

   (3) [ ] with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)

   (4) [ ] to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

   d. [ ] **by other means** *(specify means of service and authorizing code section):*

   [ ] Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. [ ] as an individual defendant.
   b. [ ] as the person sued under the fictitious name of *(specify):*
   c. [ ] as occupant.
   d. [x] On behalf of *(specify):* DB Structured Products, Inc.
      under the following Code of Civil Procedure section:

   | | |
   |---|---|
   | [x] 416.10 (corporation) | [ ] 415.95 (business organization, form unknown) |
   | [ ] 416.20 (defunct corporation) | [ ] 416.60 (minor) |
   | [ ] 416.30 (joint stock company/association) | [ ] 416.70 (ward or conservatee) |
   | [ ] 416.40 (association or partnership) | [ ] 416.90 (authorized person) |
   | [ ] 416.50 (public entity) | [ ] 415.46 (occupant) |
   | | [ ] other: |

7. **Person who served papers**
   a. Name: Linda Coleman
   b. Address: 20 Vesey Street NY, NY
   c. Telephone number: 212-227-9600
   d. The fee for service was: $
   e. I am:
      (1) [X] not a registered California process server.
      (2) [ ] exempt from registration under Business and Professions Code section 22350(b).
      (3) [ ] registered California process server:
         (i) [ ] owner [ ] employee [ ] independent contractor.
         (ii) Registration No.:
         (iii) County:

8. [X] I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   or

9. [ ] I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: 6/15/10

LINDA COLEMAN        ► *Linda Coleman*

(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)      (SIGNATURE )

**PROOF OF SERVICE OF SUMMONS**

| SHORT TITLE: Federal Home Loan Bank of San Francisco v. Deutsche Bank Securities, Inc., et al. | CASE NUMBER: CGC-10-497839 |
|---|---|

1  Proposed Order re: same

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  *(Required for verified pleading)* The items on this page stated on information and belief *(specify item numbers, not line numbers):*

27  This page may be used with any Judicial Council form or any other paper filed with this court.    Page 3

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]
Optional Form

**ADDITIONAL PAGE**
Attach to Judicial Council Form or Other Court Paper

Legal
Solutions
Plus

CRC 201, 501

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
ROBERT A. GOODIN, State Bar No. 061302
GOODIN, MacBRIDE, SQUERI, DAY & LAMPREY, LLP
505 Sansome, Suite 900

San Francisco, California 94111
TELEPHONE NO.: (415) 392-7900 FAX NO. *(Optional):* (415) 398-4321
E-MAIL ADDRESS *(Optional):* rgoodin@goodinmacbride.com
ATTORNEY FOR *(Name):* Plaintiff Federal Home Loan Bank of San Francisco

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, California
BRANCH NAME:

**PLAINTIFF/PETITIONER:** FEDERAL HOME LOAN BANK OF SAN FRANCISCO

**DEFENDANT/RESPONDENT:** DEUTSCHE BANK SECURITIES INC., et al

**POS-010**

**FOR COURT USE ONLY**

**FILED**
San Francisco County Superior Court

JUN 25 2010

CLERK OF THE COURT
BY: _____ Deputy Clerk

CASE NUMBER:
CGC-10-497839

Ref. No. or File No.:
3428-001

| PROOF OF SERVICE OF SUMMONS |
|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. [X] summons
   b. [X] complaint (First Amended)
   c. [X] Alternative Dispute Resolution (ADR) package
   d. [X] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] cross-complaint
   f. [X] other *(specify documents):* Notice to Plaintiff re Case Management Conference; Notice of Related Case;

3. a. Party served *(specify name of party as shown on documents served):* Deutsche Bank Securities, Inc.

   b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   SCOTT LASCALA (PROCESS AGENT)

4. Address where the party was served: CT 1209 ORANGE ST WILMINGTON DE

5. I served the party *(check proper box)*
   a. [X] by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 6/11/10 (2) at *(time):* 2:00p
   b. [ ] by substituted service. On *(date):* at *(time):* I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ] (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):* from *(city):*

      (5) [ ] I attach a declaration of diligence stating actions taken first to attempt personal service. or [ ] a declaration of mailing is attached.

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Legal
Solutions
Plus

Page 1 of 2
Code of Civil Procedure, § 417.10

| PLAINTIFF/PETITIONER: FEDERAL HOME LOAN BANK OF SAN FRANCISCO | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: DEUTSCHE BANK SECURITIES INC., et al | CGC-10-497839 |

5. c. [ ] **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*              (2) from *(city):*

    (3) [ ] with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgment of Receipt.)* (Code Civ. Proc., § 415.30.)

    (4) [ ] to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. [ ] **by other means** *(specify means of service and authorizing code section):*

      [ ] Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. [ ] as an individual defendant.

  b. [ ] as the person sued under the fictitious name of *(specify):*

  c. [ ] as occupant.

  d. [x] On behalf of *(specify):* Deutsche Bank Securities, Inc.

    under the following Code of Civil Procedure section:

| | |
|---|---|
| [x] 416.10 (corporation) | [ ] 415.95 (business organization, form unknown) |
| [ ] 416.20 (defunct corporation) | [ ] 416.60 (minor) |
| [ ] 416.30 (joint stock company/association) | [ ] 416.70 (ward or conservatee) |
| [ ] 416.40 (association or partnership) | [ ] 416.90 (authorized person) |
| [ ] 416.50 (public entity) | [ ] 415.46 (occupant) |
| | [ ] other: |

7. **Person who served papers**

  a. Name: KEVIN S. DUNN

  b. Address:

  c. Telephone number:

  d. The fee for service was: $

  e. I am:

    (1) [x] not a registered California process server.

    (2) [ ] exempt from registration under Business and Professions Code section 22350(b).

    (3) [ ] registered California process server:

      (i) [ ] owner [ ] employee [ ] independent contractor.

      (ii) Registration No.:

      (iii) County:

8. [x] I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. [ ] I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: 6/14/10

KEVIN S. DUNN

_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ _____
(SIGNATURE.)